CLAUDIA QUIROZ (CABN 254419)
KATHERINE LLOYD-LOVETT (CABN 276256)
Assistant United States Attorneys
C. ALDEN PELKER (MD)
Trial Attorney
Computer Crime & Intellectual Property Section
United States Department of Justice

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 802-4637
    FAX: (415) 436-7234
    claudia.quiroz@usdoj.gov
    katherine.lloyd-lovett@usdoj.gov
    catherine.pelker@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 22-00256 SI |
| Plaintiff, | UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION |
| v. | Hearing Date: February 1, 2024, 3:30 p.m. |
| ALIAKSANDR KLIMENKA, | Court: The Hon. Lisa J. Cisneros |
| Defendant. | |

On January 29, 2024, Defendant Aliaksandr Klimenka made his initial appearance in this District following his arrest in Latvia. On January 30, 2024, Klimenka was arraigned on the charges in the Indictment. At that appearance, the government moved for detention based on a serious risk of flight and Klimenka was remanded to custody. The Court set a detention hearing for February 1, 2024, at 3:30 p.m. The government respectfully submits this memorandum in support of its motion for detention.

## INTRODUCTION

Klimenka is a citizen of Belarus and Cyprus. He was charged in a sealed indictment on July 12, 2022, with operating an unlicensed money services business and conspiracy to commit money

laundering. According to the indictment, between 2011 and July 2017, Klimenka controlled BTC-e, a digital currency exchange, with Alexander Vinnik and others. Klimenka also controlled Soft-FX, a technology services company, and FX Open, a financial company. BTC-e was a significant cybercrime and online money laundering entity that allowed its users to trade in bitcoin with high levels of anonymity and developed a customer base heavily reliant on criminal activity. BTC-e facilitated transactions for cybercriminals worldwide and received criminal proceeds from numerous computer intrusions and hacking incidents, ransomware scams, identity theft schemes, corrupt public officials, and narcotics distribution rings, and was used to facilitate crimes ranging from computer hacking to fraud, identity theft, tax refund fraud schemes, public corruption, and drug trafficking. BTC-e's servers, maintained in the United States, were one of the primary ways in which BTC-e and its operators effectuated their scheme. Those servers were leased to and maintained by Klimenka and Soft-FX. The indictment further alleges that despite doing substantial business in the United States, BTC-e was not registered as a money services business with the U.S. Department of Treasury, had no anti-money laundering process, no system for appropriate "know your customer" or "KYC" verification, and no anti-money laundering program as required by federal law. BTC-e was shut down by law enforcement in 2017.

Since Klimenka was indicted on July 12, 2022, efforts to locate him were unsuccessful until his arrest in December 2023. Klimenka has identifying documents issued by at least three countries, Latvia, Cyprus, and Belarus, and has used a combination of these documents to travel within recent years. Particularly the use of Latvian and Cypriot documents has rendered it difficult for investigators to monitor his travel across Europe due to the visa-free Schengen area. Although Alexander Vinnik's indictment was unsealed and made public years ago, neither Klimenka nor his companies were named in that indictment. Moreover, the indictment against Klimenka remained sealed until two days ago, so there was no way for Klimenka to know that he was facing charges in the United States relating to his involvement with BTC-e. Accordingly, any argument that Klimenka was not hiding simply holds no water because he did not know he was facing charges in this country. Moreover, there is no basis for the argument that had Klimenka known about the charges prior to his arrest he would have willingly

surrendered to the authorities.

Klimenka has significant assets and zero ties to the Bay Area. Indeed, he lacks any meaningful ties to the United States. The only person defense counsel has proposed as a potential surety is a man who lives across the country and who has never even met Klimenka. Klimenka faces a lengthy prison sentence if convicted and could flee if he wished to do so. The presence of an ankle monitor, as proposed by counsel, is meaningless. Ankle monitors can be cut off and do not provide GPS capabilities—they only alert pretrial if a defendant is outside the restricted area set by the monitor. If Klimenka were to be released on a curfew, Klimenka would have the ability to abscond during the times when he is free to go wherever he pleases without triggering the monitoring alert. Furthermore, Klimenka has access to significant funds outside the United States that could be used to assist his flight and provide the means for him to live in a part of the world where the United States would lack the ability to extradite him. Moreover, the government lacks treaty arrangements with one of Klimenka's country of citizenship—Belarus. If Klimenka fled to that country, he would be beyond the reach of this Court. Indeed, the United States would not be able to recapture the defendant were he even to enter the Belarusian embassy or consular facilities during his pre-trial release, as law enforcement is prohibited from entering inviolable diplomatic facilities.

These facts amply demonstrate, and pretrial services agrees, that Klimenka presents a serious risk of flight and that no conditions or combination of conditions will reasonably assure his appearance. The Court should order that he be detained pending trial.

## **ARGUMENT**

### I. **LEGAL STANDARD**

The Court may order a defendant be detained pending trial if it finds, by a preponderance of evidence, that the defendant presents a serious risk of flight and that "no condition or combination of conditions will reasonably assure [his] appearance." 18 U.S.C. § 3142(e); *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985) (holding preponderance of evidence standard applies to bail determinations based on flight risk); *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (same).

In determining whether there are conditions of release that will reasonable assure the appearance

of a defendant, the Court considers: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his character, family and community ties, past conduct, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## II. KLIMENKA PRESENTS A SERIOUS RISK OF FLIGHT AND NO SET OF CONDITIONS WILL REASONABLY ASSURE THE DEFENDANT'S APPEARANCE

The factors set forth in 18 U.S.C. § 3142(g) demonstrate by a preponderance of evidence that there are no conditions which will reasonably assure Klimenka's appearance.

### A. Nature and Seriousness of the Offense Charged and Weight of the Evidence

Klimenka is charged with involvement in "sophisticated criminal conduct, whose successful completion required the ability to travel internationally, to adapt easily to foreign countries, and to move assets and individuals quickly from one country to another." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). The indictment alleges both a money laundering conspiracy and the operation of an unlicensed money services business involving an illicit cryptocurrency exchange whose business was derived from criminal activity and that processed millions of dollars in bitcoin. Dkt. No. 1 ¶ 7.

Klimenka was a partner in BTC-e's operations, providing BTC-e's technical infrastructure and financial accounts. At the time, Klimenka owned FXOpen, a Foreign Exchange Market (forex) broker that provided financial services on the international currency market, as well as SOFT-FX, a financial technology (fintech) software company that provided software services to financial institutions and cryptocurrency exchanges. BTC-e was heavily integrated into SOFT-FX and held significant assets through FXOpen – two very different business areas, all tied to Klimenka-controlled companies. Klimenka himself played a significant role in BTC-e's operations and had administrator-level accounts on BTC-e.

BTC-e used a network of payment providers and shell companies to facilitate its business and conceal its illicit proceeds. Two of the most frequently used shell companies were Canton Business Corporation and Always Efficient LLP. Through Canton Business Corporation and Always Efficient

LLP, BTC-e held several accounts at Klimenka's company FXOpen, which in turn held accounts at the closely related eWallet provider XPS Solutions. At the time of BTC-e's takedown in 2017, BTC-e related shell companies held over $100 million in accounts at FXOpen. These assets were ultimately controlled by XPS Solutions, which was based in New Zealand.

Based on documents associated with shell companies and laundering schemes found on Vinnik's Macbook, Klimenka also was the beneficial owner of one such shell company, the corporate structure of which was designed to evade scrutiny. Specifically, Klimenka was the beneficial owner of CRC Markets (registered in Panama and Saint Kitts & Nevis) that utilized a nominee director based in Saint Kitts & Nevis to hide Klimenka's association with the company. Klimenka knew how BTC-e operated, and its real name, but his companies sheltered assets in numerous fictitious front company names.

Analysis of the BTC-e servers revealed that Klimenka controlled administrator-level accounts at BTC-e. Specifically, the investigation identified two administrator accounts—out of the 41 total identified administrator accounts on BTC-e—registered with the email addresses alexander.klimenka@fxopen.org and alexander.klimenka@soft-fx.com. The two accounts held a combined total of approximately $5.31 Million USD, 24 BTC, 2233 LTC, 144 NMC, 74,000,000 RUR, 1,045,000 EUR, 11 DSH, and 279 ETH. In addition, Klimenka was in direct and frequent communication with Vinnik during the operation of BTC-e.

The maximum penalties here reflect the seriousness of the offense. Klimenka is charged with conspiracy to commit money laundering carrying a maximum term of 20 years. The loss amount involved in this matter—at the very least, in the hundreds of millions—would result in a total offense level higher than the maximum prison term available. Accordingly, the nature and seriousness of the offenses charged weigh in favor of detention.

The Bail Reform Act also expressly directs the Court to consider the weight of the evidence. 18 U.S.C. § 3142(g)(2). Klimenka, like all defendants, must be presumed innocent. Notwithstanding the presumption of innocence, if the weight of the evidence against the alien defendant is objectively strong, the defendant may perceive a likelihood of conviction, giving him or her a greater incentive to flee. That is true here. The government's evidence will show that, as noted above, Klimenka was enmeshed in the

operation of BTC-e and held administrator accounts for the entity. Moreover, a Skype account attributed to Klimenka communicated frequently, exchanging thousands of lines of chats, with a Skype account controlled by Alexander Vinnik, also charged for his role in the operation of BTC-e in a related case, 16-CR-00227 SI. This factor weighs in favor of detention.

### B. History and Characteristics of the Defendant

Section 3142(g) also requires consideration of the defendant's "history and characteristics" including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. §3142(g)(3)(A). "When assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." *Townsend*, 897 F.2d at 995. In affirming the denial of bail based on flight risk, the Ninth Circuit has emphasized (1) the defendant's lack of ties to the forum district, (2) the defendant's residence abroad, and (3) the defendant's access to large sums of cash. *Aitken*, 898 F.2d at 107. The Ninth Circuit also has emphasized that "[c]onsideration of a defendant's record concerning appearance at court proceedings and other past conduct is proper." *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015).

This factor weighs in favor of detention. Klimenka has no meaningful ties to the United States. He has never lived here, he has not worked here, and he owns no property here. Instead, Klimenka has significant ties to Latvia, Belarus, and Cyprus. Should Klimenka elect to flee to Belarus, where he is a citizen, he could place himself beyond the reach of the Court, as Belarus has no extradition treaty with the United States. In addition, Klimenka was a member of Russian speaking cybercrime forums since the early 2000s where he has access to a community of cybercriminals who offer a number of cybercrime services such as providing counterfeit passports and other documents. If he chose to flee, he would likely have ability to secure false identification documents.

Moreover, the government and the Court lack insight into the defendant's finances abroad and

cannot rule out the possibility that he has access to significant funds outside of the United States that could be used to assist his flight and provide the means for him to live in a part of the world where the United States would lack the ability to extradite him. During his initial pretrial interview, Klimenka failed to disclose significant financial assets, including real estate in Cyprus, stock holdings, and cryptocurrency holdings. Although defense counsel later advised pretrial of these holdings, the Court should view Klimenka's self-reporting of his assets with skepticism given the government's inability to verify his statements about accounts and property held abroad. In addition, Latvian authorities seized devices from Klimenka at the time of his arrest suggesting that he has multiple Russian bank accounts.

Although the Court cannot be certain of the full extent of Klimenka's finances, it does have some indication that he has significant financial resources. He has disclosed several million Euros' worth of real property, bank accounts, and stock. According to Latvian authorities, Klimenka's fenced-in residence in Latvia was expensive, and he had private security and a private driver. Below are two photographs of the residence taken at the time of his arrest, the second of which appears to show a private security booth.




Furthermore, Klimenka has not been forthcoming in the bail report regarding his current employment status and income. Klimenka stated only that he is a "businessman," while his wife stated

U.S.' MEM. RE MOT. FOR DETENTION         7
CR 22-00256 SI

that she was unsure of the nature of his employment. Klimenka's companies, FX-Open and Soft-FX, are central to the charges in the indictment.

Klimenka's proposed conditions and surety do not ameliorate the risk that he will flee abroad. The proposed surety has never met Klimenka and apparently only knows of Klimenka through a relative. The loss of this surety's house, if offered to secure Klimenka's bond, will not offer any moral suasion over Klimenka, given that he does not even know the proposed surety.

## CONCLUSION

For the reasons set forth above, the government submits that Klimenka poses a serious risk of flight and no conditions will reasonably assure his appearance pending trial.

Dated: February 1, 2024

ISMAIL J. RAMSEY
United States Attorney

_____
CLAUDIA QUIROZ
KATHERINE LLOYD-LOVETT
Assistant United States Attorneys
C. ALDEN PELKER
Trial Attorney, CCIPS