JULIA JAYNE (State Bar No. 202753)
Email: *julia@jaynelawgroup.com*
JAYNE LAW GROUP, P.C.
803 Hearst Ave.
Berkeley, CA 94710
Telephone: (415) 623-3600
Facsimile: (415) 623-3605

PAUL W. VERNER (*Pro Hac Vice*)
Email: *pwverner@vernerlaw.com*
30 Wall Street, 8th Floor
New York, NY 10005
Telephone: (212) 502-5500

Attorneys for Defendant
ALIAKSANDR KLIMENKA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALIAKSANDR KLIMENKA,<br><br>　　　　Defendant. | Case No. CR 22-256 SI<br><br>**DEFENDANT'S RESPONSE TO UNITED STATES' SUPPLEMENTAL BRIEF REGARDING DETENTION**<br><br>Date:　February 23, 2024<br>Time: 2:00 p.m.<br>Courtroom: Mag. Lisa J. Cisneros |

### INTRODUCTION

On February 15, 2024, this Court held a status conference regarding Mr. Klimenka's request for pretrial release. At that conference, the Court questioned Mr. Klimenka's representation that his company, XPS New Zealand ("XPS NZ"), froze and subsequently reported the seizure of Alexander Vinnik and BTC-e's assets. This short memorandum will address the Court's inquiry, correct the sequence of events as alleged by the government, and provide additional context.

# ARGUMENT

## A. MR. KLIMENKA TOOK AFFIRMATIVE AND IMMEDIATE STEPS TO FREEZE AND TRANSFER VINNIK AND BTC-e FUNDS

This Court need look no further than the Affidavit of barrister and solicitor David Raymond Grant Campbell dated May 28, 2020 to corroborate the sequence of events that led to the seizure of Vinnik and BTC-e funds. *See* Exhibit A, Campbell Declaration, with attached Exhibit 1. As documented in his affidavit "in support of a without notice application for restraining order and further orders," the purpose of this 2020 affidavit was to seek a restraining order from the court in New Zealand to officially authorize the seizure and transfer of Vinnik/BTC-e electronic wallet funds held by XPS to a bank in New Zealand.

Of significance to the present proceedings, the Affidavit includes the following:

4.6  Within the eWallet Solution, XPS NZ undertakes all anti-money laundering (**AML**) and countering financing of terrorism identity verification requirements for all clients of FXOpen. XPS NZ has its own AML policy which is updated annually in compliance with both local (New Zealand) and international requirements.

5.5  At the time of the transfer, XPS NZ undertook a comprehensive verification process in accordance with its AML and "know your customer" procedures and requirements….

5.7  XPS NZ ensured that Canton's directors and beneficial ownership were verified by documentation provided by the company…

6.1  On or around 26 July 2017, the then director of XPS NZ, Mr Peganov, froze the eWallet accounts of Canton and Mr Vinnik and all of the funds in them.

6.2  This decision was made after XPS NZ became aware through the media of a United States Northern District of California seizure order relating to Canton and Mr Vinnik. As a result, XPS NZ became concerned about the source of the eWallet Funds. It was also concerned that the declared beneficial owner of Canton, Mr Golovanov, may not have been the true beneficial owner, or that there may have been other beneficial owners.

6.3  Under its AML policies, any misrepresentation to XPS NZ regarding the source of the funds or the identity of the beneficial owner of Canton would constitute misleading information provided by the customer. Accordingly, XPS NZ exercised its contractual right to freeze the accounts in accordance with the terms agreed to by Canton and Mr. Vinnik.

9.3  The most convenient way for the eWallet Funds to be transferred out of XPS NZ's Alfa-Bank account is for them first to be transferred to other accounts held in the name of XPS NZ in New Zealand. Accordingly, **if served with a Court order granting restraint of funds,** XPS NZ intends to instruct Alfa-Bank to effect the transfer of the eWallet Funds…. (emphasis added).

*See* Exh. 1 to Campbell Decl. To give further clarity, Mr. Campbell's February 19, 2024 Declaration specifies that he understood the seizure and reporting instructions came directly from Mr. Klimenka, owner of XPS, well before any Court orders were issued. *See* Exh A. Mr. Campbell further recalls that Mr. Klimenka and XPS's legal department took "affirmative proactive steps to recover accounts which were located in Russian banks and to repatriate those funds for transfer to the New Zealand XPS NZ accounts precisely so those funds could be segregated and then turned over to the authorities." *Id.* at ¶ 5c. As such, it was only *after* Mr. Campbell's request for a restraining order that one was granted and the funds were transferred from Russia to New Zealand, and ultimately, to the control of U.S. authorities.

Further, corroboration that XPS took proactive steps to sequester BTC-e funds and to freeze all Vinnik/BTC-e trading operations is memorialized in the August 27, 2017 correspondence between Mr. Klimenka's appointed Director of XPS, Denis Peganov, to the New Zealand Federal Police Authority's Financial Intelligence Unit. *See* Exh. B. Mr. Peganov's letter, a snapshot of reality in time, and not mere speculation or conjecture, memorializes several important points. First, it was the New Zealand government's position that XPS did *not* have to lodge a suspicious transaction report regarding the alleged improper BTC-e transactions under New Zealand's version of the Patriot Act[1]. *Id.* Nevertheless, XPS, at the direction of Mr. Klimenka, decided to do so.

> Because at this stage of the company's development we have been informed that the company falls outside the territorial scope of the New Zealand AML/CFT legislation and cannot register on GoAML and therefore cannot (and apparently does not need to) lodge a suspicious transaction report.
>
> However, even though this appears to be the current position of the New Zealand legislation the company believes that it is under a duty to lodge notification regardless of the territorial scope and its ability to register on the platform.

*Id.* at 2. More importantly, directly relevant to the issues germane to Mr. Klimenka's and his company's proactive cooperation with the authorities in relation to BTC-e and Vinnik, in order to

---

[1] It is also noteworthy even if beyond the scope of this Court-requested brief, that Mr. Peganov detailed the Klimenka companies' know your customer ("KYC") compliance protocols which were compliant with the then- existing regulations to the New Zealand authorities. *See* Exh. B at 3.

protect and insulate XPS/FXOpen and the 9000 other legitimate worldwide financial clients serviced by Mr. Klimenka's companies, Mr. Peganov, at Mr. Klimenka's instruction, voluntarily provided a list of all Vinnik/BTC-e/Canton accounts and amounts on deposit. *Id.* at 3. Further, as stated by Mr. Peganov in August 2017:

> As noted above all funds in all accounts **have been frozen and all trades closed. This has been actioned on the basis that, subject to any potential investigation by authorities, it appears that the declared beneficial owner of Canton may not be the actual beneficial owner or that there may be other beneficial owners**. This would constitute misleading information provided during the account opening and verification procedure and has necessitated this course of action and notification.

Exh. B at 4 (emphasis added).

The Campbell declaration as well as the 2017 XPS/FXOpen correspondence to New Zealand Police authorities should give this Court confidence that Mr. Klimenka's companies have attempted to stay on the right side of the law in every aspect: from reporting to and cooperating with law enforcement, complying with anti-money laundering policies, to screening its customers. Mr. Klimenka intends to continue on the same path when it comes to complying with all orders of this Court.

### B.  MR. KLIMENKA CANNOT EVER TRAVEL TO BELARUS

At prior hearings, the government alleged that Mr. Klimenka could flee to Belarus. Despite the impossibility of this – having no passport – and the improbability of it, there are practical reasons why Mr. Klimenka could not step foot in Belarus.

First, there is the risk to Mr. Klimenka's life were he to go to Belarus, which is effectively controlled by Russia. He faces grave danger due to the actions he took to repatriate the BTC-e monies in 2017-2020 (as evidenced by the 2020 Campbell Affidavit). He faced threats in Latvia as a result of those actions, but he would be risking imprisonment or even death – especially given the publicity of the present case – were he to set foot in Belarus.[2] He would never put himself or

---

[2] The prosecution's accusatory references to Mr. Klimenka's security measures at his home in Jurmala, Latvia belie the prosecution's circular logic. Mr. Klimenka required added security due to his proactive actions to freeze, sequester and recover (even from Russian Banks) BTC-e and Vinnik funds in 2017-2020. Arguably, without Klimenka, the DOJ would not have recovered over $100 million in potential restitution from otherwise-untouchable Russian banks.

his family at such risk. Second, it is now widely reported that anyone in the IT sector should stay far away from Belarus. Since 2020, IT companies have relocated out of Belarus for fear of arrests, unwarranted searches, violence, and of course, the authoritarian regime.[3] Practically speaking, no rational person would enter Belarus since the Russian invasion of Ukraine. The danger is self-evident.

Finally, given that his Belorussian passport is due to expire in Summer 2024, he would not only have no way to enter the country, but he will also lose access to his Russian bank accounts, albeit their limited value.

## CONCLUSION

For all of the reasons stated herein, and at the prior and upcoming hearings, Mr. Klimenka respectfully requests that this Court grant his request for release on conditions.

Respectfully Submitted,

Dated:  February 23, 2024

_/s/Julia Jayne_____
Julia Jayne

_/s/Paul Verner_____
Paul Verner

Attorneys for Defendant
ALIAKSANDR KLIMENKA

---

[3] See Politico, September 2, 2020, "Belarus Crackdown's Next Victim: Its booming IT sector." Located at: https://www.politico.eu/article/belarus-crackdown-it-sector/