JULIA M. JAYNE (State Bar No. 202753)
JAYNE LAW GROUP, P.C.
803 Hearst Avenue
Berkeley, CA 94710
Phone: (415) 623-3600
E-Mail: julia@jaynelawgroup.com

PAUL W. VERNER (*Pro Hac Vice*)
VERNER SIMON
30 Wall Street, 8th Floor
New York, NY 10005
Phone (212) 502-5500
E-Mail: pwverner@vernerlaw.com

Attorneys for Defendant
ALIAKSANDR KLIMENKA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>ALIAKSANDR KLIMENKA,<br><br>            Defendant. | CASE NO. CR 22-00256 SI<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT FOR LACK OF NOTICE AND LACK OF VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   November 15, 2024<br>Time:  10:00 a.m.<br>Courtroom: Hon. Susan Illston |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 15, 2024 at 11:00 a.m., or as soon thereafter as the matter may be heard before the above-entitled court, defendant Aliaksandr Klimenka, by counsel, will and hereby does respectfully move the Court pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure to dismiss the Indictment for failure to provide fair notice of the charges against him. In the alternative, Mr. Klimenka moves for an order instructing the

government to provide a bill of particulars. Additionally, Mr. Klimenka moves this Court to dismiss the Indictment due to a lack of venue in the Northern District of California and to dismiss Count 2 on the additional ground of a lack of jurisdiction in the United States.

This motion is based on the papers, pleadings, and files of this action, the attached Memorandum of Points and Authorities, and on such oral and documentary evidence as may be presented at the time of the hearing.


Dated: October 11, 2024                    Respectfully submitted,


_____/s/_____ _____

Julia Jayne
Paul W. Verner
Attorneys for ALIAKSANDR KLIMENKA

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... **4**

**PROCEDURAL BACKGROUND** .................................................................................... **4**

**ARGUMENT** .................................................................................................................... **5**

**I.      THE INDICTMENT AGAINST MR. KLIMENKA IS UNCONSTITUTIONALLY VAGUE                                                                                   7**

        **A.      The Alleged Control of BTC-e is a Fact the Indictment Must Identify  8**

        **B.      The Indictment's Failure to Identify the Alleged "Control" of BTC-e Renders it Unconstitutionally Vague                                                                  10**

        **C.      Count Two Is Also Unconstitutionally Vague                                             11**

**II.     AT A MINIMUM, THE COURT SHOULD ORDER A BILL OF PARTICULARS. 12**

**III.    THE INDICTMENT MUST BE DISMISSED FOR LACK OF VENUE                      14**

        **A.      Venue is Proper in a District Only if the Essential Conduct Elements of the Offense Occurred There                                                                                 14**

                1.      No Essential Conduct of Count 1 Occurred in this District ............ 15

                2.      No Essential Conduct of the Alleged Money Laundering Conspiracy Count Occurred in this District ......................................................... 17

**III.    THE COURT LACKS EXTRATERRITORIAL JURISDICTION OVER COUNT 2 BECAUSE NO CONDUCT OCCURRED WITHIN THE UNITED STATES          19**

**CONCLUSION** ................................................................................................................ **20**

# TABLE OF AUTHORITIES

## Cases

*Russell v. United States*, 369 U.S. 749, 763-66 (1962 .................................................... 5

*United States v. All Assets Held at Bank Julius*, 251 F.Supp. 3d 82, 93 (D.D.C. 2017) ................ 19

*United States v. Anderson,* 328 U.S. 699, 703 (1946) .................................................. 14

*United States v. Auernheimer,* 748 F.3d 525, 532 (3d Cir. 2014) ...................................... 13

*United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) .................................... 13

*United States v. Bortonovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ...................................... 13

*United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982) .......................................... 9

*United States v. Cabrales,* 524 U.S. 1, 6 & n. 1 (1988) ............................................... 14

*United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) .......................................... 5

*United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) .......................................... 6

*United States v. Elfgee*, 515 F.3d 100, 133 (2nd Cir. 2008) ........................................... 10

*United States v. Eziyi*, 2023 WL 6318118 (D. Utah) ................................................... 14

*United States v. Feil*, 2010 WL 1525263, at *4 (N.D. Cal. Apr. 15, 2010) ............................. 12

*United States v. Ghanem,* 993 F.3d 1113, 1119 (9th Cir. 2021) ........................................ 13

*United States v. Johnson*, 323 U.S. 273, 276 (1944) .................................................. 14

*United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) ........................................... 12

*United States v. Keuylian*, 23 F. Supp. 3d 1126, 1129 (C.D. Cal. 2014) ................................ 9

*United States v. King*, 587 F.2d 956, 963 (9th Cir. 1978) ............................................. 8

*United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 947 (4th Cir. 1986) ....................... 18

*United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) .......................................... 12

*United States v. Pace,* 314 F.3d 344, 349 (9th Cir. 2002) ............................................. 14

*United States v. Pirro* 212 F.3d 86, 92 (2d Cir. 2000) ............................................... 5

*United States v. Rodriguez- Moreno,* 526 U.S. 275, 279 (1999) ........................................ 14

*United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011) ........................................ 15

*United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) ....................................... 9

*United States v. Valdez-Santos*, 457 F.3d 1044, 1047-48 (9th Cir. 2006) ...................................... 16

*Will v. United States*, 389 U.S. 90, 99 (1967) ............................................................................... 12

<u>Statutes</u>

18 U.S.C. § 1956(h) ........................................................................................................................ 11

18 U.S.C. § 1960 ............................................................................................................................... 8

18 U.S.C. § 3237(a) ........................................................................................................................ 15

18 U.S.C. § 3282 ............................................................................................................................... 4

Fed. R. Crim. P. 7(c)(1) ................................................................................................................... 8

Fed. R. Crim. P. 7(f) ...................................................................................................................... 12

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3

The Indictment against Mr. Klimenka covers various allegations pertaining to a company

4

called BTC-e but lacks sufficient detail as to Mr. Klimenka himself. Broadly, the Indictment

5

charges Mr. Klimenka with operating an unlicensed money service business (namely, BTC-e) and

6

with conspiracy to commit money laundering, spanning the course of six years. Dkt. 1. The

7

Indictment presents these charges in seven pages, including a long recitation of the digital

8

currency exchange BTC-e and how it allegedly operated. And though the Indictment recites the

9

language of the statutes (§§ 1960 and 1956(h)) and vaguely alleges in a single phrase that Mr.

10

Klimenka "controlled" BTC-e with Alexander Vinnik (Dkt. 1 at ¶ 4), it does not identify how,

11

when, or in what capacity he did so.

12

Instead, the only factual assertion regarding Mr. Klimenka is that BTC-e leased its servers

13

from SoftFX a company "maintained" by Mr. Klimenka. Dkt. 1 at ¶ 13. With such limited

14

information in the charging document, Mr. Klimenka does not know what he is defending against.

15

The defense cannot reasonably prepare to defend a case with this large a scope based on a bare

16

bones Indictment that has little to do with Mr. Klimenka or SoftFX.

17

Importantly, the government's sparse Indictment fails the Constitution's requirement that a

18

defendant receive fair notice of the charges against him. As such, the Indictment must be

19

dismissed; at a minimum, the government should be required to provide a bill of particulars.

20

Further, the Indictment reveals that venue in this district is improper. All essential elements

21

of the offenses are alleged to have occurred outside the Northern District of California. This itself

22

provides a sufficient basis to dismiss the Indictment.

23

## PROCEDURAL BACKGROUND

24

Mr. Klimenka was indicted in the present case on July 12, 2022, just 13 days before the

25

five-year statute of limitations was to run. 18 U.S.C. § 3282. On May 24, 2023, an extradition

26

request for Mr. Klimenka's arrest was issued to Latvian authorities. It is unclear when exactly the

27

28

1    authorities received or began to act upon the warrant. In any event, Mr. Klimenka was arrested in

2    Latvia on a provisional warrant on December 21, 2023. Immediately after being arrested, he

3    waived all formal proceedings in Latvia and agreed to extradition. He remained in custody in

4    Latvia until he was transported to the Northern District of California and made his first appearance

5    on January 28, 2024. On February 26, 2024, he was released on bond conditions. Dkt. 29.

6                                                    **ARGUMENT**

7            Rule 7 mandates that an indictment contain "a plain, concise, and definite written

8    statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). That

9    requirement codifies and enforces "basic principles of fundamental fairness" inherent in the Fifth

10   and Sixth Amendments. *Russell v. United States*, 369 U.S. 749, 763-66 (1962). To pass

11   constitutional muster, an indictment must include a "description of the charges" sufficiently

12   detailed to (1) "enable [the defendant] to prepare his defense," (2) "ensure that the defendant is

13   prosecuted on the basis of facts presented to the grand jury," (3) "enable him to plead jeopardy

14   against a later prosecution," and (4) "inform the court of the facts alleged so that it can determine

15   the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per

16   curiam); *see also Russell*, 369 U.S. at 764 (indictment must "sufficiently apprise the defendant of

17   what he must be prepared to meet" (internal quotation marks omitted)). "Because the requirement

18   of a sufficient indictment serves these important purposes, the indictment must be considered as it

19   was actually drawn, not as it might have been drawn." *United States v. Pirro* 212 F.3d 86, 92 (2d

20   Cir. 2000).

21           In *Russell*, the defendants were convicted of refusing to answer certain questions posed by

22   a congressional subcommittee. 369 U.S. at 752. The indictment, however, failed to identify the

23   subject matter under congressional subcommittee inquiry. *Id.* This, the Supreme Court concluded,

24   was a constitutional violation because the underlying charge depended on the subject-matter of the

25   questions. *Id.* at 764, 768. The indictment's failure to contain the subject-matter that was under

26   inquiry resulted in two main problems: (1) the defendant would be forced to proceed to trial with a

27   "cryptic" indictment that leaves the "chief issue[s] undefined" and (2) the prosecution could **fill in**

28                                                                         MOTION TO DISMISS
                                                                           Case No. CR 22-0256 SI

1  **the gaps** of an indictment by "surmise or conjecture." *Id.* at 766 (emphasis added). The Supreme

2  Court thus held that the indictment failed the constitutional requirement of fair notice and was

3  unconstitutionally vague. *Id.*

4       *Cecil* involved a case where defendants were charged with conspiracies relating to the

5  importation and distribution of marijuana. 608 F.2d at 1294. The defendants challenged the

6  sufficiency of the indictment as being too factually imprecise, and moved to dismiss, but the trial

7  court denied the motion, directing the defendants instead to the government's "open file"

8  discovery.[1] *Id.* at 1296. The Ninth Circuit disagreed.

9       Instead, the Ninth held that the indictment's "glaring lack of factual particularity" ran afoul

10  of the fair notice requirement and that a bill of particulars could not save an invalid indictment.

11  608 F.2d at 1294. Indeed, the "rather barren" indictment mostly tracked the text of the relevant

12  conspiracy statutes. *Id.* at 1296. It only made "two specific allegations concerning the

13  conspiracies:" (1) it identified the locations of the conspiracy and (2) it stated the names of the

14  alleged conspirators. *Id.* at 1297. This, according to the Ninth Circuit, failed to place the

15  conspiracies within any timeframe or provide any facts or circumstance about the conspiracy. *Id.*

16  Relying on the principles and inquiry outlined in *Russell*, the *Cecil* court concluded that the

17  complete lack of factual allegations prevented the defendants from understanding the charges and

18  preparing a defense.

19       And in *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974), involving a mail fraud

20  prosecution, the Tenth Circuit concluded that the indictment was so vague that "the grand jury

21  may have had a concept of the scheme essentially different from that relied upon by the

22  government before the trial jury." 506 F.2d at 989. There, the defendant founded a dating service.

23  *Id.* at 986–87. All the indictment alleged was that the service was a sham but it provided no detail

24  as to *why* it was a sham. *Id.* Thus, on appeal, the court concluded that the indictment was

25  unconstitutionally vague because it contained no language about *what* conduct formed the scheme.

26

---

[1] Indeed, in the present case, the government provided the defendant with a reverse proffer. This
does not cure a deficient indictment, however, as those discussions and presentation are not
27  evidence or in the record, nor did it address the infirmities raised herein.

28
                                      MOTION TO DISMISS
                                      Case No. CR 22-0256 SI

1    *Id.* at 992. The indictment's lack of sufficiency as to these details caused the Tenth Circuit to

2    reverse and remand with directions to dismiss the indictment. *Id.*

3        Here, the Indictment comes nowhere close to providing Mr. Klimenka with the fair notice

4    required by the Constitution. It is "cryptic" as to Mr. Klimenka's role with BTC-e, it fails to

5    "provide any facts or circumstances about the conspiracy," as it pertains to Mr. Klimenka's

6    conduct, and it is so vague that the grand jury may have issued the indictment on a basis *entirely*

7    *different* from what the government may rely on at trial.

8    **I.    The Indictment against Mr. Klimenka is Unconstitutionally Vague**

9        Commencing in 2007, Mr. Klimenka built and then  owned and ran several financial

10   technology businesses that achieved worldwide commercial success by attracting thousands of

11   clients and employing hundreds of people. Those businesses include FXOpen, SoftFX and XPS.

12   BTC-e and one of its principals[2], Alexander Vinnik, were just one of thousands of clients of these

13   financial technology companies.

14       Significant to the facts here, when the indictment against Mr. Vinnik (who recently pled

15   guilty to operating BTC-e as an unlicensed money transmitting business), was made public and

16   Mr. Vinnik arrested in Greece, there was much publicity about the matter. In response to learning

17   of the U.S. Indictment, Mr. Klimenka took immediate affirmative action to facilitate the transfer of

18   Canton Business Corporation ("CBC")[3] and Vinnik's funds which were frozen and held in bank

19   accounts owned by XPS in Russia to New Zealand, and thereafter, U.S. law enforcement. *See* Dkt.

20   21 and the filed attachments 1 & 2.[4] Mr. Vinnik and CBC were trading clients, since 2008 and

21   2012, respectively, of FXOpen and XPS (which held the e-wallets for all FXOpen customers).

22       The prosecution now ignores Mr. Klimenka's assistance as a good world citizen in

23   recovering the Vinnik funds in 2017-2019, at great peril to his own safety.  Ironically, using

24

25   [2] The exact nature of BTC-e's upper management structure remains murky to the present day.
     [3] CBC purportedly owned BTC-e.

26   [4] Mr. Klimenka's Motion for Bond (Dkt.14) and Supplemental Memo Regarding Detention (Dkt

27   21) fully briefed the cooperation and extensive undertaking by Mr. Klimenka and his general
     counsel to seize and transfer $100 million of Vinnik's funds from a Russian bank account to New
     Zealand, and subsequently, to U.S. law enforcement (the IRS).

28                                  MOTION TO DISMISS
                                                                          Case No. CR 22-0256 SI

1   Klimenka's access and recovery of the Vinnik funds against him, the Indictment goes further to

2   charge that Mr. Klimenka purportedly "controlled" his client's business, BTC-e, and thus, claims

3   he not only operated an unauthorized money service business, but that he conspired to engage in

4   money laundering. In laying out such an expansive theory of Mr. Klimenka's criminality, the

5   government bears the onus, but fails in the indictment, to delineate the contours of the alleged

6   illegality.

7        The factual allegations here, as they pertain to Mr. Klimenka, are inadequate. The

8   Indictment neglects to identify a <u>single manner</u> in which Mr. Klimenka allegedly controlled or

9   otherwise operated BTC-e. In omitting this and other critical information, the Indictment falls well

10  short of the standards set by the Constitution and the Federal Rules. *See* Fed. R. Crim. P. 7(c)(1).

11  Because it is unclear how Mr. Klimenka is supposed to defend this case with such voids, the

12  Indictment must be dismissed.

13       **A.    The Alleged Control of BTC-e is a Fact the Indictment Must Identify**

14       To prevail on a charge of 18 U.S.C. § 1960, the government must prove that the defendant

15  knowingly conducted, controlled, managed, supervised, directed, or owned all or part of an

16  unlicensed money transmitting business. 18 U.S.C. § 1960(a). It is not enough to simply claim that

17  Mr. Klimenka (in his individual capacity) did it.

18       An indictment must adequately allege each element of the offense. *See United States v. Du*

19  *Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999); *see also United States v. King*, 587 F.2d 956, 963 (9th

20  Cir. 1978) ("It is of paramount importance to the rights of the accused that the indictment contain

21  an adequate recitation of each component of the crime that the [g]overnment must establish.").

22  Although statutory language setting forth the elements "may be used in the general description of

23  the offense," that description "must be accompanied with such a statement of the facts and

24  circumstances as will inform the accused of the specific offense, coming under the general

25  description, with which he is charged." *Russell*, 369 U.S. at 765; *see also King*, 587 F.2d at 963

26  (indictment must contain "the elements of the offense . . . *and* sufficiently apprise[] the defendant

27  of what he must be prepared to meet" (emphasis added) (internal quotation marks omitted)). In

28

1   other words, the indictment must set forth "the minimum facts required to fulfill the purposes of

2   indictments." *Cecil*, 608 F.2d at 1297; *see also* p. 5, *supra* (discussing those purposes).

3       The level of particularity required to fulfill the purposes of indictments varies depending

4   on the statutory text and the nature of the alleged crime. An indictment must provide greater

5   particularity where the statue defines elements of the offense in "generic terms." *Russell*, 369 U.S.

6   at 765.

7       For example, courts have recognized the need to include factual particularity above and

8   beyond the generic statutory language in indictments charging wire fraud because of the generic

9   nature of the term "scheme to defraud." "[A]n indictment [that] alleges a scheme to defraud under

10  the . . . wire fraud statute[] . . . must specify facts not merely in the general words of the statute,

11  but with such reasonable particularity as will apprise the defendant, with reasonable certainty, of

12  the nature of the accusation." *United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012)

13  (alterations and internal quotation marks omitted) (noting that the definition of fraud is "not

14  capable of precise definition"); *see Curtis*, 506 F.2d at 992 (citing *Russell* in holding that wire

15  fraud indictment needs to provide a "fair indication of the nature and character of the scheme or

16  artifice relied upon, or the false pretense, misrepresentations, or promises forming a part of it");

17  *accord United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982) ("Indictments alleging a

18  scheme to defraud must provide sufficient facts to fulfill the purposes of the indictment.").

19      Similarly, Section 1960 includes a laundry list of generic verbs that generally assign

20  responsibility to a defendant to the alleged unlicensed money transmitting business. Use of a

21  generic verb such as "control" does not sufficiently apprise the defendant certainty as to the

22  accusation. Thus, like wire fraud, factual particularity beyond the use of statutory language is

23  necessary to apprise Mr. Klimenka, with reasonable certainty, the nature of the accusations.

24  *Steffen*, 687 F.3d at 1113.

25      Having contractual ownership, managerial duties, or even a C-level role in a company

26  versus, for example, <u>servicing</u> a corporate client, are essential demarcations when evaluating a

27  violation of Section 1960. Because such differences mark the line between criminality and an

28

1    innocent business relationship, an indictment <u>must</u> specify in detail the particular "control" that

2    makes up an alleged violation of Section 1960.  *See, e.g. United States v. Keuylian*, 23 F. Supp. 3d

3    1126, 1129 (C.D. Cal. 2014) (dismissing wire fraud indictment that failed to identify "the false

4    pretenses, misrepresentations, or promises forming a part of" the scheme to defraud).

5         Additionally, though the Indictment is silent on this point, the government will have to

6    prove that Mr. Klimenka had knowledge not only that BTC-e was a money transmitting business

7    but also, **that it was unlicensed**. *United States v. Elfgeeh*, 515 F.3d 100, 133 (2nd Cir. 2008). This

8    is an essential element of this offense which is wholly lacking any notice or specificity in the

9    Indictment.[5] Mr. Klimenka has no notice as to how he supposedly knew that BTC-e was

10   unlicensed, which further renders the Indictment wholly insufficient and subject to dismissal.[6]

11        **B.    The Indictment's Failure to Identify the Alleged "Control" of BTC-e Renders**
            **it Unconstitutionally Vague**

12

13        The Indictment is unconstitutionally vague because it does not identify any facts

14   whatsoever that would support a finding that Mr. Klimenka "controlled" an unlicensed money

15   transmitting business or conspired to engage in money laundering through an unlicensed money

16   transmitting business; namely, BTC-e. The sum of the allegations in the Indictment related to Mr.

17   Klimenka states that "From in or around 2011 to in or around July 2017, BTC-e was a digital

18   currency exchange controlled by Alexander Vinnik, ALIAKSANDR KLIMENKA, and others."

19   *See* Indictment at ¶ 4. Beyond the statutory word "control," the factual allegations in the

20   Indictment say nothing of how Mr. Klimenka allegedly "controlled" BTC-e. In fact, the

21   Indictment seems to contradict itself and instead, alleges that Mr. Klimenka's company, SoftFX,

22   <u>leased servers</u> to BTC-e. *Id.* at ¶ 13. Leasing servers (like hosting a website or email account) says

23   nothing about whether an individual controlled a particular company.[7]

24   _____

[5] There is no pattern 9th Circuit instruction for 18 U.S.C. § 1960 (nor could pattern instructions be
found in other circuits).

25   [6] Though beyond the scope of this motion, it bears noting that before doing business with BTC-e,
FXOpen *required* CBC (which owned BTC-e) to verify its AML (anti-money laundering) and

26   KYC ("know your customer") protocols. CBC provided those to FXOpen, which cleared all
monthly and annual checks by FXOpen.

27   [7] Moreover, the leasing of servers began *after* Vinnik's sealed indictment was filed and thereafter
lasted only another 9 months.

28                                                                    MOTION TO DISMISS
                                                                     Case No. CR 22-0256 SI

1    For example, the Indictment fails to specify *how* Mr. Klimenka controlled BTC-e, what his

2  official or unofficial role was at BTC-e, what actions he took to control BTC-e, and how he was in

3  a position to have knowledge over whether BTC-e was licensed or unlicensed as a money

4  transmitting business. The Indictment lacks any information as to Mr. Klimenka's knowledge

5  whatsoever as to BTC-e's customers or the <u>source of their funds</u> so as to support a conspiracy to

6  launder funds. All the defendant knows from the Indictment is that one of his companies provided

7  services for less than a year – <u>leasing web hosting servers</u> – to BTC-e.  That commercial arms-

8  length transactional relationship is not dispositive of any allegation of criminality. If providing

9  web hosting services was sufficient to establish control of a company, then Google, Amazon,

10  Salesforce, Meta, countless other technology companies, and even BTC-e's prior server-provider,

11  would be indicted any time their clients were accused of wrongdoing.

12    To be sure, the Indictment recites the bare bones language of the statute in Count 1. But it

13  does so in such generic terms that it does nothing to give content to the allegations and notice to

14  Mr. Klimenka.

15    In sum, the Indictment's breadth in time combined with its dearth of factual allegations

16  undermine the core purposes that indictments serve under the Constitution. *See, e.g.*, *Cecil*, 608

17  F.2d at 1297. And neither the defense nor the Court can be confident that the grand jury passed

18  upon whatever evidence the government ultimately attempts to offer at trial when the Indictment

19  does not give any hint as to what that evidence is. The Indictment should be dismissed.

20    **C.    Count Two Is Also Unconstitutionally Vague**

21    Count 2 alleges a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The

22  elements of this offense are as follows:

23    First, there was an agreement to commit money laundering;

24    Second, the defendant knew the objective of the agreement;

25    Third, the defendant joined the agreement with the intent to further its unlawful purpose.

26  *See* Ninth Circuit Manual of Model Criminal Jury Instructions 18.7A.

27

28

1   The Indictment infers that this Count is entirely dependent on Count 1, operation of the

2   unlicensed money transmitting business. In other words, BTC-e is alleged to have laundered

3   funds, and those who operated, controlled or managed BTC-e are thus somehow necessarily

4   accused of engaging in conspiracy to launder money.

5   But, like Count 1, the money laundering conspiracy lacks any specificity as to how Mr.

6   Klimenka either owned, operated, controlled or managed BTC-e, or even how he willfully and

7   knowingly conspired with Vinnik to engage in money laundering. It gives no information as to

8   how or when Mr. Klimenka *agreed* with Mr. Vinnik to further the conspiracy, how he knew of its

9   purpose, or how he even joined it. Nor does the Indictment give any indication of how Mr.

10  Klimenka was to know that BTC-e's clients (or sources of funds) were engaged in alleged

11  criminal activity when it does not describe how he could have possibly had access to client details

12  or funds. A cryptocurrency exchange by itself does not impute knowledge of money laundering.

13  Indeed, the Indictment is devoid of any specificity whatsoever because, as described in the

14  previous section, the Indictment fails to identify the "control" element at issue. As such, Count 2

15  of the Indictment must also be dismissed.

16  **II.      At a Minimum, the Court Should Order a Bill of Particulars.**

17  Although a "bill of particulars cannot save an invalid indictment," *United States v. Keith*,

18  605 F.2d 462, 464 (9th Cir. 1979), a bill of particulars is warranted here in the event that the Court

19  does not dismiss the Indictment. *See* Fed. R. Crim. P. 7(f). A bill of particulars is "appropriate

20  where a defendant requires clarification in order to prepare a defense." *United States v. Long*, 706

21  F.2d 1044, 1054 (9th Cir. 1983). The principal purpose of a bill of particulars is "to apprise the

22  defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in

23  preparation and to protect against double jeopardy." *Id.* Courts have "very broad discretion" to

24  order a bill of particulars. *Will v. United States*, 389 U.S. 90, 99 (1967).

25  Several considerations unique to this case impede Mr. Klimenka's ability to prepare his

26  defense and weigh in favor of ordering a bill of particulars as a (less desirable) alternative to

27  dismissal:

28

MOTION TO DISMISS
Case No. CR 22-0256 SI

First, as set forth above, the government has failed to identify the alleged "control" at the heart of the case.[8] Second, the charged conspiracy spans a long period of time, eight years. *See, e.g.*, *United States v. Feil*, 2010 WL 1525263, at *4 (N.D. Cal. Apr. 15, 2010) (ordering bill of particulars for a conspiracy lasting over three years). Third, discovery in this case is voluminous. While discovery may weigh against a bill of particulars in some cases, *see United States v. Giese*, 597 F.2d 1170, 1170 (9th Cir. 1979), courts recognize that there is a point at which voluminous discovery cuts strongly in favor of particularization, *see, e.g.*, *United States v. Bortonovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam) ("mountains of documents" totaling 4,000); *Feil*, 2010 WL 1525263, at *4 ("70,000 pages of discovery"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) ("200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims"); *see also United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) ("[I]t is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy."). Here, the government's discovery productions contain approximately 155,000 pages of documents.[9] More are still expected.

That volume of documents weighs in favor of a bill of particulars because Mr. Klimenka cannot reasonably be expected to glean from that mountain of documents the particulars of the government's case. *See, e.g.*, *Bortonovsky*, 820 F.2d at 575 (reversing mail fraud conviction based on erroneous denial of request for particulars where government "provid[ed] mountains of documents to defense counsel who were left unguided as to which documents" were evidence of falsity).

Mr. Klimenka thus requests an order compelling the government to provide details concerning his alleged control over BTC-e and details concerning how he was engaged in a money laundering conspiracy.

---

[8] The government's reverse proffer did not answer the question of how Mr. Klimenka owned or operated BTC-e.

[9] From these hundreds of thousands of pages, the defense has not identified a single document demonstrating ownership or control or an agreement between Klimenka and BTC-e's principals to engage in criminal activity.

**III.     The Indictment Must be Dismissed for Lack of Venue**

"A criminal defendant enjoys a constitutional right to a trial in the correct place." *United States v. Ghanem,* 993 F.3d 1113, 1119 (9th Cir. 2021) (*citing* U.S. Const. art. III, § 2, cl. 3; amend. VI); *United States v. Auernheimer,* 748 F.3d 525, 532 (3d Cir. 2014) ("The proper place of colonial trials was so important to the founding generation that it was listed as a grievance in the Declaration of Independence . . . . It was of such concern that the Constitution of the United States 'twice safeguards the defendant's venue right.'" (citations omitted)). One of the colonists' complaints against the King of Britain was exactly what happened here – the government's "transportation of [defendants] 'beyond Seas to be tried for pretended offenses.'" *United States v. Cabrales,* 524 U.S. 1, 6 & n. 1 (1988). The Supreme Court has recognized that "[q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276 (1944). "They raise deep issues of public policy" and implicate "the fair administration of criminal justice and the public confidence in it[.]." *Id.* The Federal Rules of Criminal Procedure "echo[] the constitutional commands," *id.,* by providing that "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

**A.     Venue is Proper in a District Only if the Essential Conduct Elements of the Offense Occurred There**

To decide the correct venue for a criminal trial, courts must determine the *locus delecti* of the crime, or where the offense was committed. *Auernheimer*, 748 F.3d at 532. That determination requires an analysis of the nature of the crime alleged and the location of the act or acts constituting it. *Id.* (*citing United States v. Anderson,* 328 U.S. 699, 703 (1946)). The Supreme Court has instructed that courts must distinguish between the "essential conduct elements" of the crime from the "circumstance" elements. *Auernheimer*, 748 F.3d at 533 (*quoting United States v. Rodriguez- Moreno,* 526 U.S. 275, 279 (1999)); *United States v. Pace,* 314 F.3d 344, 349 (9th Cir. 2002).

1.    <u>No Essential Conduct of Count 1 Occurred in this District</u>

The essential conduct elements of Section 1960 for purposes of venue were scrutinized just last year by the District of Utah in *United States v. Eziyi*, 2023 WL 6318118 (D. Utah). There, the defendant was charged with a violation of § 1960 in the District of Utah, though his business operated out of Georgia. The defendant moved to dismiss on venue grounds.

The Court first evaluated the essential conduct elements of the offense: that is, that "punishment under 18 U.S.C. § 1960 can only be meted out upon those who 'knowingly conduct[ ], control[ ], manage[ ], supervise[ ], direct[ ], or own[ ] all or part of an unlicensed money transmitting business. 18 U.S.C. § 1960(a).'" *Id.* at *4. The Court then concluded that venue must lie only where the defendant can be "shown to have *done* such conducting, controlling, managing, supervising, directing, or owning." *Id.* (original emphasis).

In response to the government's "continuing offense" rebuttal, the Court explained that "determining whether an offense is a continuing one for *venue* purposes is very different than a similar determination under *statute of limitations* purposes." *Id.* (original emphasis). The Court further rejected the argument that conducting a business is, by nature, a continuing offense. *Id.* Instead, the Court resolved that the "proper analysis under the continuing violation doctrine" is found in 18 U.S.C. § 3237(a), under which an offense "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." *Id.* at *4. It thus followed that if the crime began, continued and was completed "only in one district, it must be prosecuted in that district." *Id.* (cites omitted).

Relying on *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011), and in regards to a violation of § 1960, the District Court held that "even if a proscribed act has *effects* in other jurisdictions, venue is only proper where such acts begin and end." *Id.* (original emphasis). Thus, venue will only stand where the defendant *committed* the crime, not where the effect of the crime's commission was felt. *Id.*

From this analysis, the District Court found that the defendant could only be culpable under § 1960, and that venue only could lie, in the district where he "can be shown to have *done*

1  such conducting, controlling, managing, supervising, directing, or owning." *Id.* And just because

2  the business operated in the District of Utah, that was "insufficient as a matter of law. Venue lies

3  in the *locus delicti* – that is, the place of the misdeed, where such bad acts occurred that gave rise

4  to the prosecution – and nowhere else, not even the *locus effecti*." *Id.* at *5.

5      As a result, "mailing checks to addresses in the District of Utah or wiring funds to bank

6  accounts in the District of Utah" does not constitute the conducting of business in Utah for

7  purposes of § 1960. *Id.* The Court further explained that, "[e]ven though Mr. Uchendu may have

8  done many things that affected Utah, it does not necessarily follow that the conducting began,

9  continued, or ended in Utah." *Id.* Taking it one step further, the Court reasoned that there "is

10  simply no logical route that the government can take through which Mr. Uchendu's conducting of

11  a business operation could be said to begin where he is and yet somehow end where the business

12  is. Such an argument begs the court to engage in **metaphysical gymnastics to find venue**

13  **generously in clear contravention of a tradition of conservative venue jurisprudence**

14  **beginning with the Constitution**." *Id.* (emphasis added). The Court thus concluded that the

15  defendant was alleged to have violated § 1960 in Georgia, and as such, venue should lie in that

16  district. *Id.* at *6.[10]

17      Here, the Indictment does not allege that Mr. Klimenka did *anything* in the Northern

18  District of California. Certainly, whatever operations were involved in controlling, owning and

19  operating BTC-e took place outside of the United States. And, according to *Eziyi*, even if the

20  *effects* of its business operations were *felt* in the Northern District of California, that is not the

21  proper analysis for § 1960 venue purposes. This Court should certainly not engage in

22

23  ───────────────────

24  [10] The District Court of Utah also evaluated whether venue would lie under an aiding and abetting
   theory. It found that it could only *if* a proper instruction was given as to the acts of the principal.
   However, the Ninth Circuit does not endorse a "broad and sweeping theory of venue any time an

25  individual is charged with aiding and abetting..." *United States v. Valdez-Santos*, 457 F.3d 1044,
   1047-48 (9th Cir. 2006). Instead, it instructs courts to focus on the facts of the case to determine

26  whether venue is proper under an aider and abettor theory. *Id.* Regardless, in Mr. Klimenka's case,
   the purported principal (Vinnik) is alleged to have controlled, managed, operated and conducted

27  the activities of BTC-e from abroad and not in the Northern District of California. *Eziyi*, 2023 WL
   6318118 at *8. Thus, even under an aiding and abetting theory, venue does not lie in NDCA.

28                                                                    MOTION TO DISMISS
                                                                      Case No. CR 22-0256 SI

1    "metaphysical gymnastics" to find venue where no conducting or controlling "began, continued,

2    or ended" in this district. *Eziyi*, 2023 WL 6318118 at *4.

3        In sum, there is simply no rational interpretation of the Indictment that suggests Mr.

4    Klimenka began, continued, or ended the alleged operation of the unlicensed money services

5    business in the Northern District of California. Accordingly, Mr. Klimenka must be

6    "safeguard[ed] against the unfairness and hardship involved when an accused is prosecuted in a

7    remote place." *United States v. Cores*, 356 U.S. 405, 407(1958). And here, the hardship is even

8    greater than in an intra-national case within the U.S. states because Mr. Klimenka has been

9    dragged here from Latvia, forced to take up a residence in San Francisco, and leave behind his

10   wife and son. This violates fundamental notions of fairness and public policy.

11       As a result, Count 1 of the Indictment must be dismissed for lack of venue.

12

13           2.    <u>No Essential Conduct of the Alleged Money Laundering Conspiracy Count
                   Occurred in this District</u>

14       The essential conduct elements of a money laundering conspiracy under §§ 1956(h) are:

15   (1) there was an agreement to commit money laundering; (2) the defendant knew the objective of

16   the agreement; and (3) the defendant joined the agreement with the intent to further its unlawful

17   purpose. Ninth Cir. Model Criminal Instruction 18.7A.

18       In turn, the definitions of the substantive money laundering offenses charged in the

19   Indictment, the elements of § 1956(a)(1)(A)(i) are: (1) the defendant conducted or intended to

20   conduct a financial transaction involving property that represented the proceeds of specified

21   unlawful activity; (2) the defendant knew that the property represented the proceeds of some form

22   of unlawful activity; and (3) the defendant acted with the intent to promote the carrying on of the

23   specified unlawful activity. Ninth Cir. Model Criminal Instruction 18.3.

24       The elements under related § 1956(a)(1)(B)(i) are: 1) the defendant conducted or intended

25   to conduct a financial transaction involving property that represented the proceeds of specified

26   unlawful activity; (2) the defendant knew that the property represented the proceeds of some form

27   of unlawful activity; and (3) the defendant knew that the transaction was designed in whole or in

28

1    part to conceal or disguise the nature, location, source, ownership or control of the proceeds Ninth

2    Cir. Model Criminal Instruction 18.4.

3        Turning to venue: § 1956(i) provides a venue rule for prosecutions under Section 1956 and

4    allows for venue in "any district in which the financial or monetary transaction is conducted" or

5    "where an act in furtherance of the … conspiracy took place."

6        Here, none of the "essential conduct elements" of the money laundering *conspiracy* alleged

7    in Count 2 occurred in the Northern District of California. Though the Indictment is silent on this

8    point, we can surmise that any alleged "agreement" between Mr. Vinnik and Mr. Klimenka would

9    have to be alleged to have occurred entirely *outside* the United States, and certainly outside the

10   Northern District of California. During the time period of the conspiracy, both of them were

11   located outside of the United States. Moreover, even where contacts with a particular judicial

12   district are "belated and only ancillary to the primary purpose of the conspiracy," venue is

13   improper in that district. *United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 947 (4th Cir.

14   1986). Accordingly, none of the essential elements of the money laundering conspiracy occurred

15   within the Northern District of California.

16       Further, § 1956(i)(3) specifies that when it comes to a transfer of funds from one place to

17   another, by wire, or any other means, this constitutes a continuing transaction, and any person who

18   "conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be

19   charged in any district in which the transaction takes place." "Conducting" pursuant to the statute

20   means initiating or concluding or participating in initiating or concluding. § 1956(c)(2). The

21   Indictment thus fails on this ground as well, because the Indictment does not allege that Mr.

22   Klimenka initiated, concluded, or even participated or conspired in initiating or concluding any

23   wire transactions in the Northern District of California.

24       If the government alleges that Vinnik permitted BTC-e clients to send funds from the

25   Northern District of California, it will nonetheless fail to show that Mr. Klimenka knew,

26   understood, or agreed that BTC-e should service U.S. clients. In fact, the correspondence between

27   Vinnik and Mr. Klimenka shows that Mr. Klimenka – when discussing the addition of a separate

28

MOTION TO DISMISS
Case No. CR 22-0256 SI

18

trading platform to the BTC-e exchange[11] – advised Vinnik to avoid, filter out, and not have anything to do with U.S. customers. Thus, if anything, the evidence will show that Mr. Klimenka – who of course had nothing to do with the operations of BTC-e – in any event had absolutely no idea that BTC-e allegedly accepted U.S. (and Northern District of California) clients. Unlike in other instances where venue could be upheld due to the venue of the communications between co-conspirators, there is no such evidence here.[12]

In short, unless there is evidence of a conspiratorial agreement between Mr. Vinnik and Mr. Klimenka *in this district* or some overt act *in this district* conducted by one of them, there is no venue over the conspiracy count alleged in Count 2 and it must be dismissed for lack of venue.

### III.    The Court Lacks Extraterritorial Jurisdiction Over Count 2 Because No Conduct Occurred Within the United States

Section 1956(f)(1) requires that "in the case of a non-United States citizen," the conduct over which extraterritorial jurisdiction is to be exerted must have "occur[ed] in part in the United States." Congress enacted the Money Laundering Control Act "to criminalize the use of United States financial institutions as clearinghouses for criminal money laundering and conversion into United States currency." *United States v. All Assets Held at Bank Julius*, 251 F.Supp. 3d 82, 93 (D.D.C. 2017) (cites omitted). Critical to this jurisdictional analysis is the definition of the term "conduct." In the statute itself, as noted above, the meaning of "'conducts' includes initiating, concluding, or participating in initiating or concluding a transaction[.]" 18 U.S.C. § 1956(c)(2).

Yet absolutely nothing in the Indictment alleges that Mr. Klimenka initiated, concluded or participated in initiating or concluding *any* transaction, let alone a transaction in the United States. The conduct Mr. Klimenka is alleged to have engaged in – operating an unlicensed money transmitting business that laundered criminal proceeds – is not alleged to have occurred in the

---

[11] Metatrader4 was a sophisticated trading platform (a software download) that BTC-e offered to its clients for a relatively short period of time. Mr. Klimenka helped with the connectivity and installation of Metatrader (owned by a company called Metaquotes). No actual funds passed through Metatrader4.

[12] *See United States v. Polyanskyy*, 22-0428 JSW (Dkt. 100) (Judge White held that "participated in initiating" a wire was sufficient for venue purposes if the defendants talked about the wire being sent from NDCA to a foreign country; the defendants communicated with agents in NDCA).

United States since, as noted above, even Mr. Vinnik is alleged to have run BTC-e from abroad.[13] Indeed, Mr. Klimenka has never set foot in the United States prior to his extradition. Though physical presence is not required for jurisdictional purposes, at a minimum, the agreement or overt acts must have occurred, in part, in the U.S. If neither co-conspirator ever conducted any overt act within the United States, there can be no jurisdiction over Mr. Klimenka, a non-citizen. *Even if* the Indictment included facts supporting explicit agreements to launder criminal proceeds, all of these interactions would have occurred in countries other than the United States.

Not surprisingly, the Indictment alleges no conduct whatsoever to support extraterritorial jurisdiction over Mr. Klimenka. It seems that in bringing this Indictment, the government simply reached too far, and in the Indictment's intentional vagueness and overbreadth, hoped that the jurisdictional element would go unnoticed.

As such, Count 2 must be dismissed.

### CONCLUSION

For the numerous reasons stated herein, the Indictment against Mr. Klimenka must be dismissed.

Dated: October 11, 2024                         Respectfully submitted,

                                    _____/s/_____

                                    Julia Jayne
                                    Paul W. Verner
                                    Attorneys for ALIAKSANDR KLIMENKA

---

[13] Mr. Vinnik pled guilty and thus, we cannot speculate why he chose not to litigate any venue or jurisdictional issues.

MOTION TO DISMISS
Case No. CR 22-0256 SI