1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  KATHERINE LLOYD-LOVETT (CABN 276256)
   Assistant United States Attorney
5  CLAUDIA QUIROZ (CABN 254419)
   C. ALDEN PELKER (MD)
6  JONAS LERMAN (CABN 274733)
   Trial Attorneys
7  Computer Crime & Intellectual Property Section
   United States Department of Justice
8
        450 Golden Gate Avenue, Box 36055
9       San Francisco, California 94102-3495
        Telephone: (415) 802-4637
10      Fax: (415) 436-7234
        claudia.quiroz2@usdoj.gov
11      katherine.lloyd-lovett@usdoj.gov
        catherine.pelker@usdoj.gov
12      jonas.lerman@usdoj.gov

13 Attorneys for United States of America

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                SAN FRANCISCO DIVISION

17
   UNITED STATES OF AMERICA,              )   NO. CR 22-00256 SI
18                                        )
           Plaintiff,                     )   UNITED STATES' OPPOSITION TO
19                                        )   DEFENDANT'S MOTION TO DISMISS
        v.                                )   INDICTMENT OR FOR A BILL OF
20                                        )   PARTICULARS
   ALIAKSANDR KLIMENKA,                   )
21                                        )
           Defendant.                     )
22                                        )
                                          )
23 _____)

24

25

26

27

28

## <u>CONTENTS</u>

INTRODUCTION ................................................................ **ERROR! BOOKMARK NOT DEFINED.**

BACKGROUND ...........................................................................................................2

I.       Indictment and relevant procedural history ......................................................2

II.      Discovery, government's "reverse proffer," and defense presentation ...............2

DISCUSSION ..............................................................................................................3

I.       The indictment provides Klimenka more than adequate notice....................4

II.      Klimenka's bill-of-particulars motion is untimely and meritless ...................8

         A.      The motion is untimely .....................................................................8

         B.      The motion also fails on the merits, as Klimenka has no right to a bill of
                 particulars ..........................................................................................9

III.     As alleged in the indictment, venue is proper in this district .......................13

         A.      Venue is proper on Count One (18 U.S.C. § 1960) ...........................14

         B.      Venue is proper on Count Two (18 U.S.C. § 1956(h)) .....................16

IV.      Count Two raises no extraterritoriality concerns .......................................17

CONCLUSION............................................................................................................21

1

# TABLE OF AUTHORITIES

2

Page(s)

3

4

Cases

5

*Dzhinchveladze v. United States*,
   No. 06-CV-9415 (LAP), 2007 WL 576136 (S.D.N.Y Feb. 21, 2007) .................................. 6

6

*Hamling v. United States*,
   418 U.S. 87 (1974)........................................................................................................ 4, 6

7

*Russell v. United States*,
   369 U.S. 749 (1962)........................................................................................................ 5, 6

8

*U.S. v. Approximately $25,829,681.80 in Funds, plus Interest, in Court Registry Investment System*,
   1999 WL 1080370 (S.D.N.Y. Nov. 30, 1999)................................................................... 21

9

*United States v. 280 Virtual Currency Accounts*,
   No. 20-CV-2396 (TJK), 2024 WL 2049002 n.3 (D.D.C. May 8, 2024) ........................... 20

10

*United States v. All Assets Held at Bank Julius*,
   251 F. Supp. 3d 82 (D.D.C. 2017) .............................................................................. 17, 21

11

*United States v. Abouammo*,
   No. 19-CR-00621-EMC-1, 2021 WL 718842 (N.D.Cal., 2021) ....................................... 5

12

*United States v. Armstrong*,
   909 F.2d 1238 (9th Cir. 1990) .......................................................................................... 5

13

*United States v. Ayers*,
   924 F.2d 1468 (9th Cir. 1991) .......................................................................................... 11

14

*United States v. Ballestas*,
   795 F.3d 138 (D.C. 2015) ................................................................................................. 17

15

*United States v. Black*,
   469 F. Supp. 2d 513 (N.D. Ill. 2006) ............................................................................... 21

16

17

*United States v. Bodmer*,
   342 F. Supp. 2d 176 (S.D.N.Y. 2004)............................................................................... 19

18

*United States v. Buckley*,
   689 F.2d 893 (9th Cir. 1982) ........................................................................................... 5

19

*United States v. Budovsky*,
   No. 13-CR-368 (DLC), 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) ............................ 18

20

*United States v. Butler*,
   822 F.2d 1191 (D.C. Cir. 1987) ........................................................................................ 11

21

*United States v. Cecil*,
   608 F.2d 1294 (9th Cir. 1979) ....................................................................................... 5, 6

22

*United States v. Chi Tong Kuok*,
   671 F.3d 931 (9th Cir. 2012) ........................................................................................... 17

23

*United States v. Cochrane*,
   985 F.2d 1027 (9th Cir. 1993) .......................................................................................... 5

24

25

*United States v. Curtis*,
   506 F.2d 985 (10th Cir. 1974) ....................................................................................... 5, 7

26

*United States v. Danhong Chen*,
   2020 WL 2995576 (N.D.Cal., 2020) ................................................................................ 5

27

*United States v. DiCesare*,
   765 F.2d 890 (9th Cir.1985) ....................................................................................... 5, 10

28

*United States v. Eziyi,*
   2023 WL 6318118 (D.Utah, 2023) ........................................................................ 15

*United States v. Feil,*
   2010 WL 1525263 (N.D.Cal.,2010) ..................................................................... 13

*United States v. Firtash,*
   392 F. Supp. 3d 872 (N.D. Ill. 2019) ................................................................... 16

*United States v. Galecki,*
   2018 WL 2390062 (D.Nev., 2018) .................................................................. 12,13

*United States v. Geise,*
   597 F.2d 1170 (9th Cir. 1979) ................................................................... 10, 11, 13

*United States v. Gessen,*
   2024 WL 171361 (N.D.Cal., 2024) ..................................................................... 14

*United States v. Gonzalez,*
   683 F.3d 1221 (9th Cir. 2012) ......................................................................... 16, 17

*United States v. Harmon,*
   474 F. Supp. 3d 76 (D.D.C. 2020) ......................................................................... 5

*United States v. Holmes,*
   2020 WL 666563 (N.D.Cal., 2020) ........................................................................ 5

*United States v. Homaune,*
   898 F. Supp. 2d 153 (D.D.C. 2012) ....................................................................... 9

*United States v. Hsuan Bin Chen,*
   2011 WL 332713 (N.D.Cal.,2011) ...................................................................... 11

*United States v. Iossifov,*
   45 F.4th 899 (6th Cir. 2022) ............................................................................... 20

*United States v. Jensen,*
   93 F.3d 667 (9th Cir. 1996) ................................................................................ 13

*United States v. Keuylian,*
   23 F. Supp. 3d 1126 (C.D. Cal. 2014) ............................................................... 5, 7

*United States v. Kiselev,*
   2023 WL 4771179 (N.D. Cal. July 25, 2023) ...................................................... 13

*United States v. Lemay,*
   No. 21-CR-573 (MKV), 2022 WL 1498961 (S.D.N.Y. May 12, 2022) ............................ 12

*United States v. Long,*
   706 F.2d 1044 (9th Cir. 1983) ....................................................................... 10, 11

*United States v. Lutton,*
   2021 WL 3493674 (N.D.Cal., 2021) ...................................................................... 9

*United States v. Mancuso,*
   718 F.3d 780 (9th Cir. 2013) ................................................................................. 5

*United States v. Martinez,*
   No. 22-CR-251 (LJL), 2023 WL 2403134 (S.D.N.Y. Mar. 8, 2023) .................... 12

*United States v. Moran-Garcia,*
   966 F.3d 966 (9th Cir. 2020) ............................................................................... 14

*United States v. Ojedokun,*
   16 F.4th 1091 (4th Cir. 2021) .............................................................................. 20

*United States v. Patel,*
   No. 23-CR-166 (DLF), 2024 WL 1856409 (D.D.C. Apr. 24, 2024) ..................... 17

*United States v. Perez-Trevino,*
   No. 15-CR-2037, 2016 WL 1367187 (N.D. Iowa Apr. 5, 2016) ............................ 9

*United States v. Rafoi*,
  60 F.4th 982 (5th Cir. 2023) .................................................................. 18, 21
*United States v. Resendiz-Ponce*,
  549 U.S. 102 (2007).................................................................................... 6
*United States v. Rogas*,
  547 F. Supp. 3d 357 (S.D.N.Y. 2021)..................................................... 13
*United States v. Romm*,
  455 F.3d 990 (9th Cir. 2006) ..................................................................... 9
*United States v. Ryland*,
  806 F.2d 941 (9th Cir. 1986) ................................................................... 10
*United States v. Stein*, Crim. A.,
  No. 93-375, 1994 WL 285020 (E.D. La. June 23, 1994)...................... 20, 21
*United States v. Stinson*,
  647 F.3d 1196 (9th Cir. 2011) ................................................................. 13
*United States v. Sweet*,
  107 F.4th 944 (10th Cir. 2024) .................................................................. 7
*United States v. Taylor*,
  17 F. Supp. 3d 162 (E.D.N.Y. 2014) ........................................................ 9
*United States v. Young*,
  No. 23-CR-241 (GMH), 2024 WL 2891620 (D.D.C. June 10, 2024)........ 9
*United States, v. Lorenzana-Cordon*,
  130 F. Supp. 3d 172 (D.D.C. 2015)......................................................... 12
*USA v. Ross*,
  2014 WL 3750452 (N.D.Cal., 2014) ......................................................... 6
*Whitfield v. United States*,
  543 U.S. 209 (2005).................................................................................. 20
*Yeargain v. United States*,
  314 F.2d 881 (9th Cir. 1963) ................................................................... 10

Statutes

2 U.S.C. § 192 ........................................................................................... 6
18 U.S.C. § 641 ....................................................................................... 16
18 U.S.C. § 1030 ..................................................................................... 16
18 U.S.C. § 1956 ................................................................................ 17, 21
18 U.S.C. § 1956(a)(1)(B) ...................................................................... 16
18 U.S.C. § 1956(a)(2) ........................................................................... 19
18 U.S.C. § 1956(f) ........................................................................... 18, 19
18 U.S.C. § 1956(h) ........................................................................ 2,16,17
18 U.S.C. § 1956(i)(2) ............................................................................ 17
18 U.S.C. § 1960 ........................................................................... 8, 14, 15
18 U.S.C. § 1960(b)(1)(A) ...................................................................... 14
18 U.S.C. § 1957 ..................................................................................... 21
18 U.S.C. § 1960(b)(1)(B) ................................................................ 14, 15
21 U.S.C. § 841 ....................................................................................... 16

Rules

Fed. R. Crim. P. 7(c)(1) ......................................................................... 2, 4

Fed. R. Crim. P. 7(f) ........................................................................................................ 8, 10
Fed. R. Crim. P. 12(b)(1) .................................................................................................. 4, 13
Fed. R. Crim. P. 18 .............................................................................................................. 14

1

**INTRODUCTION**

2    The Court should deny Defendant Aliaksandr Klimenka's motion to dismiss the indictment or for

3    a bill of particulars. Dkt. 63 (Mot.). The seven-page indictment charging Klimenka with operating an

4    unlicensed money services business and with conspiracy to commit money laundering is neither sparse

5    nor vague—far from it. As required by the federal rules, the indictment is a plain, concise, and definite

6    written statement of the essential facts constituting the offenses charged. It lists the relevant individuals

7    and entities. It describes BTC-e and its illicit operations in detail. And it spells out the two counts, citing

8    the relevant statutes and explaining what Klimenka did to violate each.

9    What's more, Klimenka has received extensive discovery, with a searchable index. The

10   government has also distilled that discovery for the defense by summarizing the government's case and

11   highlighting some of the strongest evidence, with explanations about the connections between and the

12   significance of that evidence. In June 2024, the government made a detailed "reverse proffer" presentation

13   to Klimenka and his counsel, walking them through a 60-slide PowerPoint deck for more than two hours.

14   Between the indictment, discovery, the government's other filings (including a detailed detention memo,

15   Dkt. 20), and the reverse proffer, Klimenka has ample information with which to prepare his defense.

16   In fact, Klimenka has already prepared it: Last month, Klimenka's attorneys made a long

17   presentation to the government—complete with a 67-slide PowerPoint deck of their own that included

18   screenshots drawn from discovery—laying out Klimenka's defense theories and arguing that the

19   government's case lacks merit. Klimenka cannot now credibly claim that the charging document against

20   him is vague or that he "does not know what he is defending against." Mot. 6.

21   For the same reasons, Klimenka has no right to a bill of particulars. The combination of

22   information provided to the defense to date is more extensive than typical. And it more than suffices to

23   inform Klimenka of the government's theory of this case and allow him to prepare for trial.

24   Klimenka's two fallback challenges to the indictment—lack of venue on both counts and

25   extraterritorial jurisdiction on Count Two—fare no better. As alleged in both counts, venue is proper in

26   this district. And Count Two raises no extraterritoriality concerns because the count alleges domestic

27   conduct, and, in any event, the charged statute expressly reaches extraterritorial conduct. Accordingly,

28

Klimenka's motion should be denied. No evidentiary hearing is needed, nor does Klimenka request one.

**BACKGROUND**

## I.   Indictment and relevant procedural history

In July 2022, a grand jury in this district returned a two-count indictment charging Klimenka with operation of, and aiding and abetting the operation of, an unlicensed money transmitting business under 18 U.S.C. §§ 1960 and 2 (Count One) and conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count Two). Dkt. 1. As alleged, between 2011 and July 2017, Klimenka and others conspired to operate BTC-e, a digital currency exchange that facilitated transactions for cybercriminals worldwide, including hackers, ransomware rings, fraudsters, corrupt public officials, and narcotics-distribution networks. Klimenka "controlled" BTC-e with Alexander Vinnik "and others." *Id.* ¶ 4.[1] And BTC-e "maintained its servers in the United States," which were "one of the primary ways in which BTC-e and its operators effectuated their scheme." *Id* ¶ 13. Those servers "were leased to and maintained by" Klimenka and his company Soft-FX, and "BTC-e used other third-party companies, including companies within the Northern District of California, to effectuate its operations." *Id.* Counts One and Two each include additional allegations, track the statutory language, and incorporate the indictment's narrative introduction.[2] *Id.* ¶¶ 22, 24.

Shortly after his arrest, Klimenka agreed to waive extradition from Latvia and was transported to the United States. In January 2024, he had his initial appearance and arraignment here. Dkt. 7. Over the United States' objection, Magistrate Judge Cisneros released him pending trial on a $3 million bond.

More than eight months after his arraignment, on October 11, 2024, Klimenka moved to dismiss the indictment or for a bill of particulars—the motion now before the Court.

## II.   Discovery, government's "reverse proffer," and defense presentation

The government has produced extensive discovery, including the paper and electronic documents that were obtained from various sources through the course of the investigation. Between April 5, 2024,

---

[1] Vinnik and four codefendants were charged in *United States v. BTC-e et al.*, No. 16-CR-227-SI (N.D. Cal.). Vinnik pleaded guilty in May 2024 to conspiracy to commit money laundering under 18 U.S.C. § 1956(h) and is scheduled to be sentenced January 17, 2025.

[2] Fed. R. Crim. P. 7(c)(1) allows for a count to "incorporate by reference an allegation made in another count."

1    and October 4, 2024, the government made five productions of processed discovery, which included some

2    native files, and three more productions of solely native files. These productions included search warrants

3    and related records, business and financial records, images of unencrypted devices seized from Klimenka,

4    chats, and emails, among other documents.

5    The government has gone well beyond those discovery productions. On June 27, 2024, the

6    government sent a letter to defense counsel offering to make available for viewing and inspection various

7    devices seized from Klimenka and Vinnik, as well as servers belonging to BTC-e. The next day, June 28,

8    the government gave a "reverse proffer" presentation to Klimenka and his counsel. That meeting lasted

9    two and a half hours. The government outlined its case and the evidence against Klimenka, using a 60-

10   slide PowerPoint presentation—which the government had carefully prepared for this purpose—

11   containing examples and excerpts of the evidence. The presentation included a background and

12   explanation of BTC-e's operations; details of the partnership between Klimenka and Vinnik; Klimenka's

13   cybercriminal roots (including the criminal forums and monikers he used); Klimenka's involvement in

14   and position within the BTC-e administrative team; Klimenka's control over BTC-e domains; BTC-e

15   financials and excerpts from Klimenka's communications with Vinnik about them; relevant invoices in

16   the name of Klimenka's company FXOpen; Klimenka's role in opening BTC-e accounts and

17   troubleshooting financials with Vinnik; advertising and promotion of BTC-e; discussions with Vinnik

18   about BTC-e revenue; and more. The government produced a sanitized copy of these PowerPoint slides

19   to defense counsel on July 12, 2024.

20   About two months later, on September 19, 2024, Klimenka's counsel gave a presentation to the

21   government, with a 67-slide PowerPoint deck of their own, describing Klimenka's defenses to the

22   indictment and purporting to establish his innocence based on the evidence in discovery.

23   **DISCUSSION**

24   Klimenka raises four claims in his motion—one untimely, all meritless. His arguments depend on

25   asserted facts outside the indictment's four corners. *E.g.*, Mot. 7 (Klimenka describing himself as "a good

26   world citizen"). But at this stage, in considering a pretrial Rule 12 motion to dismiss, the Court assumes

27   the indictment's allegations as true. Those allegations foreclose Klimenka's pretrial motion.

28

1    **I.      The indictment provides Klimenka more than adequate notice**

2        Rule 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court

3    can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant may move to dismiss

4    an indictment "lacking in specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii). But as the Supreme Court has

5    long recognized, "an indictment is sufficient if it, first, contains the elements of the offense charged and

6    fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead

7    an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*,

8    418 U.S. 87, 117 (1974) (citations omitted). To satisfy those requirements, "[i]t is generally sufficient that

9    an indictment set forth the offense in the words of the statute itself"—which this one does—"accompanied

10   with such a statement of the facts and circumstances as will inform the accused of the specific offence,

11   coming under the general description, with which he is alleged." *Id.* (quotation marks omitted).

12       Rule 7 likewise says that an indictment "must be a plain, concise, and definite written statement

13   of the essential facts constituting the offense charged and must be signed by an attorney for the

14   government." Fed. R. Crim. P. 7(c)(1). The indictment "need not contain a formal introduction or

15   conclusion" (although this one does). *Id.* A count "may allege that the means by which the defendant

16   committed the offense are unknown or that the defendant committed it by one or more specified means."

17   *Id.* And the indictment "must give the official or customary citation of the statute, rule, regulation, or other

18   provision of law that the defendant is alleged to have violated." *Id.*

19       Here, the seven-page-long two-count indictment more than satisfies all these pleading

20   requirements. Dkt. 1. Klimenka argues that the Court should dismiss the indictment because it does not

21   specify *how* he controlled BTC-e. But no such pleading requirement exists. The indictment alleges that

22   Klimenka, Vinnik, and others "controlled" BTC-e. *Id.* ¶ 4. The indictment need not allege precisely *how*

23   they exercised that control. Moreover, and contrary to Klimenka's claim, neither of the counts requires

24   the government to allege (or prove) that he personally controlled BTC-e. For example, an aider or abettor

25   in an unlicensed money transmitting service (Count One) need not control that service. And although

26   "[a]iding and abetting is implied in every federal indictment for a substantive offense" and need not be

27   expressly alleged, *United States v. Armstrong*, 909 F.2d 1238, 1241–42 (9th Cir. 1990), here aiding and

28   abetting *is* expressly alleged in Count One. *See* Dkt. 1 at 5 (alleging violations of "Title 18, United States

Code, Section 1960 & 2"). As for Count Two, a co-conspirator in a money-laundering conspiracy need not exercise control of any entity. Thus, control of BTC-e is not an essential fact for either count charged here—so the indictment cannot be constitutionally defective for not detailing the exact *level* of control that Klimenka exercised.

Allegations in an indictment "are presumed to be true," *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982), and an indictment "need not specify the theories or evidence upon which the government will rely to prove" its case, *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993) (per curiam). Thus, while Klimenka has a right to notice of the charges he faces, he has no right "to know all of the evidence the government would use to prove the charges against him." *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013).[3] Yet that is precisely what he asks for here. He demands a level of specificity from the indictment to which he has no right under the federal rules and binding precedent. *See, e.g.*, Mot. 11 (complaining that indictment "fails to specify *how* Mr. Klimenka controlled BTC-e").

By demanding more "proof" from the indictment, Klimenka "either misreads [it] or misconstrues the standard to which indictments are held." *United States v. Harmon*, 474 F. Supp. 3d 76, 105 (D.D.C. 2020) (in cryptocurrency prosecution, rejecting defendant's motion to dismiss on vagueness grounds). Klimenka points to other indictments that courts found defective in *Russell v. United States*, 369 U.S. 749 (1962); *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (per curiam); *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974); and *United States v. Keuylian*, 23 F. Supp. 3d 1126, 1129 (C.D. Cal. 2014). But those indictments bear no resemblance to this one. Courts have distinguished those decisions while rejecting claims like Klimenka's. *See, e.g.*, *United States v. Holmes*, No. 18-CR-258-EJD, 2020 WL 666563, at *5–*6 (N.D. Cal. Feb. 11, 2020) (detailing why the defendants "misread" all these cases).[4]

*Russell*, for example, held that an indictment under 2 U.S.C. § 192—a statute prohibiting witnesses before congressional committees from "refus[ing] to answer any question pertinent to the question under

---

[3] *See, e.g.*, *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir.1985) (indictment sufficiently specific and bill of particulars not needed to specify (1) names of any unknown coconspirators, (2) exact date on which the conspiracy began, or (3) all other overt acts that made up the charged activity).

[4] *See also, e.g.*, *United States v. Abouammo*, No. 19-CR-621-EMC, 2021 WL 718842, at *3 (N.D. Cal. Feb. 24, 2021) (distinguishing *Cecil*, *Curtis*, and *Keuylian*); *United States v. Danhong Chen*, No. 19-CR-111-LHK-2, 2020 WL 2995576, at *6 (N.D. Cal. June 4, 2020) (distinguishing *Cecil* and *Curtis*); *United States v. Ross*, No. 13-CR-638-JST-1, 2014 WL 3750452, at *5–*6 (N.D. Cal. July 29, 2014) (rejecting defendant's *Cecil*-based argument in a money-laundering case).

inquiry"—was deficient because it failed to identify the question under inquiry. The Supreme Court held that an indictment under that statute "must state the question under congressional committee inquiry as found by the grand jury," 369 U.S. at 771, since the "very core of criminality under" that statute "is pertinency to the subject under inquiry of the questions which the defendant refused to answer," *id.* at 764.

*Russell*'s holding has no relevance here. Indeed, circuit courts "have repeatedly distinguished the holding in *Russell* based upon the unique circumstances of the case, the critical nature of the fact omitted from the charge, and the history of 'unfairness and uncertainty' in prosecutions under the specific statutory provision charged in the indictment in *Russell*." *Dzhinchveladze v. United States*, No. 06-CV-9415 (LAP), 2007 WL 576136, at *11 (S.D.N.Y Feb. 21, 2007) (collecting cases). And the Supreme Court itself has distinguished *Russell* when, as here, indictments alleging violations of other statutes satisfy Rule 7's pleading requirements. *United States v. Resendiz-Ponce*, 549 U.S. 102, 109–10 (2007) (citing Russell and holding that indictment alleging attempted illegal reentry into the United States did not need to allege a particular overt act); *Hamling*, 418 U.S. at 117–18 (reiterating that it "is generally sufficient that an indictment set forth the offense in the words of the statute itself," and holding that the indictment did not need to allege "the various component parts of the constitutional definition of obscenity").

Klimenka's reliance on *Cecil*, *Curtis*, and *Keuylian* is similarly misplaced. In *Cecil*, the "rather barren" short indictment charged a drug conspiracy. 608 F.2d at 1296. Yet "[a]side from tracking the language of the pertinent statutes in setting out the elements of the offenses with which defendants were charged," that indictment made "only two specific allegations concerning the conspiracies": It stated that the conspiracies "occurred in Arizona, Mexico, and elsewhere," and it offered "the names of some of the alleged co-conspirators." *Id.* at 1296–97. That indictment "fail[ed] to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof." *Id.* at 1297. "More importantly," that indictment "fail[ed] to place the conspiracies within any time frame." *Id.* Not so here. The cursory indictment in *Cecil* bears no resemblance to the seven-page-long speaking indictment here.

*Curtis* is just as distinguishable. There, the Tenth Circuit found the indictment unconstitutionally vague because it alleged only that the defendant's dating service was a sham, without providing any detail about why it was a sham or what conduct formed the illegal scheme. 506 F.2d at 989. The Tenth Circuit reversed the defendant's mail-fraud convictions "because the indictment set forth 'little more than the

statutory language,' with only bald references to a 'scheme and artifice to defraud' that did not provide 'any fair indication of the nature or character' of the fraudulent scheme." *United States v. Sweet*, 107 F.4th 944, 959 (10th Cir. 2024) (quoting and distinguishing *Curtis*, 506 F.3d at 989–92). *Keuylian* is similarly distinguishable: The wire-fraud indictment there "simply track[ed] the statutory language without any fair indication of the scheme to defraud, or the false pretenses, misrepresentations, or promises forming a part of it." *Keuylian*, 23 F. Supp. 3d at 1129. Again, Klimenka's indictment contains no such defects.

Klimenka's remaining arguments fall just as flat. He claims that the indictment "is 'cryptic' as to [his] role with BTC-e." Mot. 9. Not so. The indictment's narrative introductory section explains that the BTC-e servers "were leased to and maintained by SOFT FX and ALIAKSANDR KLIMENKA." Dkt. 1 ¶ 13. And Count One charges that Klimenka, together with "others known and unknown to the Grand Jury," "knowingly conducted, controlled, managed, supervised, directed, and owned all and part of a money transmitting business affecting interstate and foreign commerce" (BTC-e) and "aided and abetted the same." Count Two, in turn, charges that Klimenka "willfully and knowingly did combine, conspire, confederate, and agree together and with individuals known and unknown, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of" six types of specified unlawful activity, which the indictment lists. Count Two also alleges that Klimenka acted "with the intent to promote the carrying on of the specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." The indictment did not have to say anything more about the role Klimenka played in the charged crimes.

Klimenka claims that the alleged control of BTC-e "is a fact the indictment must identify." Mot. 10. And he argues that, as to Count One, "[h]aving contractual ownership, managerial duties, or even a C-level role in a company versus, for example, servicing a corporate client, are essential demarcations when evaluating a violation of Section 1960." Mot. 9. But as already discussed, the charge in Count One, 18 U.S.C. § 1960, does not require an indictment to specify the exact role or level of control that a defendant played in an unlicensed money transmitting business. Nor does the charge in Count Two impose

such a requirement. And in any event, the indictment *does* allege (at ¶ 4) that Klimenka, Vinnik, and others "controlled" BTC-e. Klimenka's level of control is not an element the indictment must allege in either count. Nor does Klimenka have a right to any more notice of the government's theory of the case than the indictment provides. Each count's allegations, together with the narrative details in the indictment's introduction, more than sufficed to satisfy Rule 7 and constitutional notice requirements.

At trial, of course, Klimenka will be able to argue—and, if he chooses, present supporting evidence—that the government failed to prove each count's elements beyond a reasonable doubt. But the government need not pre-prove its case now. And as discussed in the next section, Klimenka has more than enough information to prepare his defense. According to defense counsel, in fact, they have *already* prepared the defense: Last month, they made a long presentation to the government laying out their theory of the case, complete with a 67-page PowerPoint. They raised no vagueness concerns about the indictment, focusing instead on the supposed insufficiency of the evidence against Klimenka.

## II.    Klimenka's bill-of-particulars motion is untimely and meritless

For two independent reasons, Klimenka's motion for a bill of particulars fails. First, the motion is untimely and should be rejected on that basis alone. Second, the motion also fails on the merits, given the details in the indictment and the discovery produced and distilled by the government.

### A.    The motion is untimely

Rule 7(f) allows a defendant to "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). Klimenka has not complied with that timing requirement. He was arraigned on January 30, 2024. Dkt. 7. He then waited *255 days* before filing his October 11, 2024 motion for a bill of particulars. And he has never sought leave of the Court to file the motion for a bill of particulars outside Rule 7(f)'s 14-day window.

Nor is Klimenka's motion accompanied by any request to file outside that 14-day window. In fact, his motion refers to Rule 7(f) only once, without quoting it or mentioning the 14-day timing requirement. Mot. 12. And his motion fails to explain why it took him more than eight months after arraignment to move for a bill of particulars. *See United States v. Young*, No. 23-CR-241 (GMH), 2024 WL 2891620, at *2 (D.D.C. June 10, 2024) (denying as untimely a motion for bill of particulars filed 290 days after defendant's arraignment, where defendant "did not seek permission from the Court to file an untimely

1   motion and failed to provide any reason in her opening brief that would support such a request," and

2   collecting cases); *United States v. Homaine*, 898 F. Supp. 2d 153, 165 (D.D.C. 2012) (denying untimely

3   motion for bill of particulars filed "fifty-two days after arraignment—far beyond Rule 7(f)'s fourteen-day

4   default—with no explanation for why [defendant's] request took so long to lodge").

5        The Court should therefore deny Klimenka's bill-of-particulars motion as untimely without

6   reaching the merits. Klimenka may respond that he could not have moved for a bill of particulars within

7   14 days of arraignment because he needed to review discovery before bringing the motion. But the Court

8   should not consider any such new arguments that Klimenka might raise for the first time on reply, as such

9   arguments are "waived." *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006); *see, e.g.*, *United States*

10  *v. Lutton*, No. 05-CR-394-SI, 2021 WL 3493674, at *2 (N.D. Cal. Aug. 9, 2021) (declining to consider an

11  argument raised by defendant for the first time on reply).

12       Even if not waived, the Court should reject any such excuse for Klimenka's untimeliness. *See,*

13  *e.g.*, *United States v. Perez-Trevino*, No. 15-CR-2037, 2016 WL 1367187, at *1–*2 (N.D. Iowa Apr. 5,

14  2016) (rejecting defendant's explanation that his motion for bill of particulars was untimely because

15  defense counsel "had waited until he had reviewed the 'voluminous' discovery file" and found "little

16  evidence tying Defendant to the alleged conspiracy"). A defendant has no right to delay his request for

17  bill of particulars by more than eight months while he reviews discovery.

18       **B.    The motion also fails on the merits, as Klimenka has no right to a bill of particulars**

19       Even if the Court decides to consider Klimenka's bill-of-particulars motion despite its

20  untimeliness, the motion fails on the merits.[5] Between the discovery and the indictment, Klimenka has

21  everything he needs to prepare his defense. Indeed, as noted, he has already prepared it: On September

22  19, 2024—nearly a month before filing the present motion—Klimenka's counsel made a detailed

23  presentation to the prosecution team, complete with a 67-page PowerPoint deck. Their presentation

24  purported to lay out Klimenka's defense and their view of the government's evidence, and they expressed

25

26       [5] *See Young*, 2024 WL 2891620, at *2–*3 (denying motion for bill of particulars "for two
    independent reasons"—because "it is untimely" and because it "fails on the merits"); *United States v.*

27  *Taylor*, 17 F. Supp. 3d 162, 179 (E.D.N.Y. 2014) (finding that because "the Court did not grant defendant
    permission to move for a bill of particulars after fourteen days had passed, [defendant's] failure to move

28  timely justifies denial of his request for a bill of particulars," but deciding "[n]onetheless" to consider and
    deny the motion "on its merits").

1    confidence that Klimenka is innocent of the charges. Their PowerPoint slides included various screenshots

2    from the discovery (some bearing Bates numbers). And defense counsel expressed no concerns about the

3    indictment's clarity. Thus, any claim that Klimenka needs a bill of particulars to prepare for trial is refuted

4    by his own counsel's recent conduct.

5         Rule 7(f) grants courts discretion to "direct the government to file a bill of particulars." Fed. R.

6    Crim. P. 7(f). The "three functions" served by the bill of particulars are to (1) "inform the defendant of

7    the nature of the charges with sufficient precision to enable him to prepare for trial," (2) "avoid or

8    minimize the danger of surprise at the time of trial," and (3) "enable him to plead his conviction or acquittal

9    in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for

10   such purposes." *United States v. Geise*, 597 F.2d 1170, 1180–81 (9th Cir. 1979). In deciding whether to

11   order a bill of particulars, courts consider "the indictment and all other disclosures made by the

12   government," *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983), including discovery.

13        Rule 7(f) does not give the defendant the right "to know all the evidence the government intends

14   to produce"—"only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882

15   (9th Cir. 1963). Thus, a bill of particulars does not permit a defendant to obtain "complete discovery of

16   the government's evidence," such the "'when, where, and how' of every act in furtherance of the

17   conspiracy," *Geise*, 597 F.2d at 1181, or all the overt acts, *id.* at 1180, or "the names of any unknown

18   coconspirators," *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985). Nor is a defendant "entitled

19   to know the content of the testimony of each of the government witnesses before trial." *United States v.

20   Ryland*, 806 F.2d 941, 942 (9th Cir. 1986).

21        Put another way, "a bill of particulars, unlike discovery, is not intended to provide the defendant

22   with the fruits of the government's investigation. Rather, it is intended to give the defendant only that

23   minimum amount of information necessary to permit the defendant to conduct his own investigation."

24   *United States v. Hsuan Bin Chen*, No. 09-CR-110 SI, 2011 WL 332713, at *4 (N.D. Cal. Jan. 29, 2011)

25   (quotation marks, brackets, and citation omitted). Thus, a reasonably detailed indictment—like the seven-

26   page indictment here—makes a bill of particulars "unnecessary." *Geise*, 597 F.2d at 1180 (quotation

27   marks omitted).

28   //

Moreover, if the government provides "[f]ull discovery," that "obviates the need for a bill of particulars." *Geise*, 597 F.2d at 1180. Information can also come in other forms. *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) ("[If] the requested information is available in some other form, then a bill of particulars is not required."); Charles Alan Wright et al., *Federal Practice and Procedure: Criminal* § 130 (4th ed. 2012) ("[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner."). Here, even if the indictment were vague, Klimenka would have no right to a bill of particulars, given the other information he has received in discovery, along with the information he received in the government's June 2024 "reverse proffer" presentation and in the government's other filings.

### 1. Discovery and searchable index

By Klimenka's own account, the government has produced "voluminous" discovery. Mot. 15.[6] Yet Klimenka tries to use the discovery productions to support his bid for a bill of particulars. He claims that "courts recognize that there is a point at which voluminous discovery cuts strongly in favor of particularization." *Id.* But none of the four decisions he cites for that proposition is from the Ninth Circuit. Under Ninth Circuit precedent,"[f]ull discovery . . . obviates the need for a bill of particulars." *Geise*, 597 F.2d at 1180; *see Long*, 706 F.2d at 1054 (same); *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (no bill of particulars where government's "significant" discovery disclosures enabled defendant "to prepare his defense for trial"). That precedent forecloses Klimenka's claim.

And the government has not just produced extensive discovery here. The government has also supplied Klimenka's counsel with a searchable discovery index to help them review that discovery—a factor courts have cited when denying motions like this one. *See, e.g.*, *United States v. Martinez*, No. 22-CR-251 (LJL), 2023 WL 2403134, at *2 (S.D.N.Y. Mar. 8, 2023) (denying defense request for bill of particulars where the "Government has provided extensive discovery to date, with an index of the items produced identified by category and Bates number range"); *United States v. Lemay*, No. 21-CR-573 (MKV), 2022 WL 1498961, at *4 (S.D.N.Y. May 12, 2022) (denying defense request for bill of particulars even though the "discovery in this case includes almost one million 'records,'" where for each discovery

---

[6] The government has produced roughly 9,800 individual documents of varying lengths and sizes to date, along with three separate productions of native files.

production, the government "included an index of the items produced, identified by category and Bates number range"); *United States v. Galecki*, No. 2:15-CR-285-APG-PAL, 2018 WL 2390062, at \*6 (D. Nev. May 24, 2018) ("Although the discovery in this case is voluminous the government furnished a searchable discovery index to defense counsel to aid their review of the discovery.").

### 2.    Other government filings

The government's other filings have also helped Klimenka understand the government's case and prepare his defense. In particular, the government's detention motion in Klimenka's case (Dkt. 20) and its filings in co-conspirator Vinnik's case, *United States v. BTC-e*, No. 16-CR-227-SI (N.D. Cal.), provide Klimenka an additional "'roadmap' of the Government's case." *United States, v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015). The detention memo, for example, described BTC-e administrator accounts controlled by Klimenka, Klimenka's ownership of a named BTC-e shell company, the connections between FXOpen and BTC-e, and more.

### 3.    The government's June 2024 "reverse proffer"

Besides producing discovery and supplying the defense with a searchable index of it, the government has also carefully prepared and delivered a "reverse proffer" presentation explaining and laying out highlights of the government's case. That presentation highlighted, for example, conversations between the BTC-e administrative team—including Klimenka. The government also highlighted records of Klimenka's leasing servers and setting up financial accounts for BTC-e. The government provided its PowerPoint presentation to defense counsel upon request.

### 4.    The defense's September 2024 presentation

As noted above, Klimenka's counsel met with the government again in September 2024 and delivered a presentation of their own that purported to lay out Klimenka's defenses based on the evidence.

Even in jurisdictions where "the sheer volume of discovery can be a basis for granting a motion for a bill of particulars," courts recognize that "that need is obviated if there is sufficient time for the defendant to review the materials and when the Government has produced its discovery in an organized manner," *United States v. Rogas*, 547 F. Supp. 3d 357, 366 (S.D.N.Y. 2021)—as here. Klimenka's counsel has had plenty of time to review the discovery. Indeed, they have had enough time to prepare a 67-page defense PowerPoint presentation for the government based on their view of the evidence.

* * *

In sum, Klimenka has more than enough information to prepare for trial and to "enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes." *Geise*, 597 F.2d at 1180–81. And Klimenka identifies no case in which any court has ordered a bill of particulars on a record remotely like this one. *See* Mot. 13. For instance, he cites *United States v. Feil*, No. 09-CR-863 JSW, 2010 WL 1525263, at *4 (N.D. Cal. Apr. 15, 2010). There, the district court ordered the government to produce a bill of particulars concerning certain information about a drug conspiracy but rejected the defendants' requests for other information. The court ruled that the defendants were "not entitled," for example, "to details on 'the circumstances under which, and the words or conduct by means of which' they and every other alleged co-conspirator entered into the alleged conspiracies." *Id.* Moreover, unlike here, the court in *Feil* noted that "it is not clear . . . that all discovery disputes between the parties have been resolved." *Id.* at *3. No such discovery disputes exist here. Thus, even if his request were timely, Klimenka has no right to a bill of particulars.

## III. As alleged in the indictment, venue is proper in this district

When a defendant moves pretrial to dismiss for lack of venue, the district court must "presume the truth of the allegations in the charging instruments" and decide whether venue is proper based only on those allegations. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996); *see United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011); *see* Fed. R. Crim. P. 12(b)(1), (3)(A)(i). Thus, if a defendant's motion depends on facts beyond the indictment's face—as Klimenka's does—the motion must fail. *See, e.g.*, *United States v. Kiselev*, 2023 WL 4771179, at *5–*6 (N.D. Cal. July 25, 2023) (rejecting defendants' venue challenge to section 1956 charges because the indictment "sufficiently *alleges*" proper venue in the Northern District of California).

Here, the indictment's allegations more than suffice to establish at this stage that venue is proper in this district on both counts. The indictment alleges that Klimenka and others together committed the offense conduct in each count "in the Northern District of California and elsewhere." Dkt. 1 ¶¶ 23, 25. The indictment also alleges, for example, that:

- BTC-e was "one of the world's largest digital currency exchanges" and was "one of the primary ways by which cyber criminals around the world transferred, laundered, and stored the criminal proceeds of their illegal activities" (*id.* ¶¶ 5–6);

- BTC-e "served over one million users worldwide, including numerous customers in the United States and customers in the Northern District of California" (*id.* ¶ 5);

- BTC-e accounts were "easily opened anonymously, including by customers in the United States within the Northern District of California" (*id.* ¶ 9); and

- BTC-e "maintained its servers in the United States," Klimenka leased and maintained the servers, and BTC-e "used other third-party companies, including companies within the Northern District of California, to effectuate its operations" (*id.* ¶ 13)

Those allegations—which the Court at this stage assumes are true—establish that the government is "prosecut[ing] an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

Klimenka's contrary arguments rely on assertions beyond the face of the indictment. At trial, he will get the chance to raise his claims and to argue that the government has failed to establish venue. "Venue is a jury question." *United States v. Gessen*, No. 22-CR-276-JSC-1, 2024 WL 171361, at *7 (N.D. Cal. Jan. 16, 2024) (citing *United States v. Moran-Garcia*, 966 F.3d 966, 969 (9th Cir. 2020)). But Klimenka's present arguments provide no grounds for dismissing either count pretrial.

### A.    Venue is proper on Count One (18 U.S.C. § 1960)

Section 1960 makes it illegal to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business, while section 2 makes it illegal to aid or abet such a crime. Both statutes are charged in Count One of the indictment. Dkt. 1 ¶ 23.

Section 1960 defines three alternate forms of an "unlicensed money transmitting business." A money transmitting business is unlicensed if it affects interstate or foreign commerce and (1) operates without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or felony, 18 U.S.C. § 1960(b)(1)(A); (2) fails to comply with the money-transmitting-business registration requirements under section 5330 of Title 31 and the implementing regulations, 18 U.S.C. § 1960(b)(1)(B); or (3) involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity, *id.* § 1960(b)(1)(C).

The government has elected to proceed under the second and third prongs here. And the allegations in the indictment—which the Court at this stage accepts as true—establish that venue is proper in the Northern District of California. *See* Dkt. 1 ¶¶ 5, 9, 13, 23. Those allegations should end the inquiry.

But if the Court looks beyond the four corners of the indictment, the government provides the

1    following summary of the anticipated trial evidence establishing venue on this count. The government

2    intends to establish venue on Count One at trial through (among other things) evidence that (1) BTC-e

3    was not registered with FinCEN, as federal law requires, during the relevant period; (2) a criminal used

4    BTC-e from Francisco; (3) another criminal laundered more than $200,000 in criminal proceeds through

5    BTC-e, and those proceeds stemmed from a fraud he perpetrated against another criminal who was based

6    in San Francisco at the time; (4) BTC-e used services such as CloudFlare (based in the Northern District

7    of California) for its proxy hosting of its servers; (5) BTC-e used Google (based in the Northern District

8    of California) for its internal company communications; (6) undercover agents conducted transactions

9    from the Northern District of California; and (7) other users of BTC-e and Wex were based in the Northern

10   District of California and conducted transactions from this district.

11        Klimenka cites no authority that would justify dismissing Count One on venue grounds pretrial.

12   He relies (Mot. 15–17) on *United State v. Eziyi*, No. 22-CR-160-JNP-2, 2023 WL 6318118 (D. Utah Sept.

13   28, 2023). That nonbinding order is distinguishable in a host of ways. Moreover, the district court there

14   ultimately *denied* the motion to dismiss. The court recognized that "[a]t the pretrial stage, 'it suffices for

15   the government to allege with specificity that the charged acts support venue,'" and that in "reviewing a

16   pretrial motion to dismiss, the court accepts all well-pleaded factual allegations in the indictment as true

17   and makes all reasonable inferences of fact from the indictment in the light most favorable to the

18   Government." *Id.* at *2 (citations omitted). And the court rule that venue would exist in the District of

19   Utah under an aiding-and-abetting theory if the government could "prove to the jury at trial that the

20   substantive offense was committed by some third party in the District of Utah, and that [defendant] aided

21   and abetted such offense." *Id.* at *9. If that case has any relevance here, it undercuts Klimenka's claim.

22        In a footnote, Klimenka argues that "even under an aiding and abetting theory, venue does not lie

23   in [the Northern District of California]" because his co-conspirator Vinnik "is alleged to have controlled

24   managed, operated and conducted the activities of BTC-e from abroad and not in the Northern District of

25   California." Mot. 16 n.10. But in fact, the indictment alleges that Klimenka acted not just with Vinnik but

26   with others, too, and that the charged offenses occurred in the Northern District of California and

27   elsewhere. Dkt. 1. Klimenka also claims that the indictment should be dismissed on venue grounds

28   because it does not "suggest[] Mr. Klimenka began, continued, or ended the alleged operation of the

1    unlicensed money services business in the Northern District of California." Mot. 17. Klimenka again

2    battles a straw man: No such allegation is required in the indictment to establish venue for Count One.

3    **B.    Venue is proper on Count Two (18 U.S.C. § 1956(h))**

4    Klimenka's venue-based attack on Count Two fares no better. Mot. 17–19. He claims that "we can

5    surmise that any alleged 'agreement' between Mr. Vinnik and Mr. Klimeka would have to be alleged to

6    have occurred entirely *outside* the United States, and certainly outside the Northern District of California."

7    Mot. 18. But Klimenka ignores the actual allegations in the indictment—which, again, the Court at this

8    stage presumes to be true—in favor of his own "surmis[ing]" of what he imagines the trial evidence will

9    be. Klimenka also misstates the requirements for establishing venue on this count. Neither the

10    conspiratorial agreement nor any overt act needs to have occurred in this district for venue to exist here.

11    "[V]enue for a continuous crime, such as conspiracy, lies in any district where the 'offense was

12    begun, continued, or completed.'" *United States v. Gonzalez*, 683 F.3d 1221, 1224 (9th Cir. 2012) (quoting

13    18 U.S.C. § 3237(a)). Section 1956(h) makes it a crime for "any person who conspires to commit any

14    offense defined in this section [1956] or section 1957." Section 1956(a)(1)(B), in turn, prohibits the

15    laundering of proceeds from "specified unlawful activity" (SUA). The statute identifies several types of

16    crimes that qualify as specified unlawful activities. As relevant here, SUAs can include 18 U.S.C. § 1030

17    computer hacking, 21 U.S.C. § 841 drug crimes, 18 U.S.C. § 641 theft of government property, and 18

18    U.S.C. § 1960 operation of an unregistered money service business.

19    Congress enacted section 1956 "to criminalize the use of United States financial institutions as

20    clearinghouses for criminal money laundering and conversion into United States currency." *United States*

21    *v. Firtash*, 392 F. Supp. 3d 872, 886 (N.D. Ill. 2019) (citations and quotation marks omitted). The

22    "extraterritorial trigger in Section 1956(f) . . . effectuate[s] this purpose," and courts have recognized that

23    "a transfer from a foreign account to an account in a U.S. financial institution and a transfer from a U.S.

24    account to a foreign financial institution occur in part in the United States under 18 U.S.C. § 1956(f)."

25    *Id.* (citation and quotation marks omitted).

26    Venue for Count Two exists in the Northern District of California for multiple independent

27    reasons. First, certain underlying SUAs (including computer hacking, theft of government property, and

28    drug trafficking) relate to transactions in this district. *Cf. Gonzalez*, 683 F.3d at 1225 (in drug case, holding

that a confidential informant's presence in the Northern District of California during phone calls with the defendant "sufficed to establish venue there on the conspiracy charge"); *United States v. Chi Tong Kuok*, 671 F.3d 931, 937–38 (9th Cir. 2012) (agreeing with the government that venue was proper in the Southern District of California because an undercover ICE agent withdrew funds in a San Diego bank from the defendant's money transfer, and rejecting defendant's argument that government had "manufactured venue"). Second, venue for a section 1956 prosecution also exists "in any other district where an act in furtherance of the attempt or conspiracy took place." 18 U.S.C. § 1956(i)(2). Here, acts in furtherance of the money-laundering conspiracy took place in the Northern District of California. One example is BTC-e's setting up and use of proxy server services with CloudFlare in San Francisco—an act in furtherance of the conspiracy. The indictment alleges a sufficient nexus to this district. *See* Dkt. 1 ¶¶ 5, 9, 13, 25.

## IV. Count Two raises no extraterritoriality concerns

At the end of his 20-page motion, Klimenka includes a cursory argument that Count Two should be dismissed on extraterritoriality grounds. Mot. 19–20.[7]

But the Court need not decide whether 18 U.S.C. § 1956(h)—the statute charged in Count Two—applies extraterritorially, because the indictment alleges domestic conduct. *Cf. United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 97 (D.D.C. 2017) (an offense "takes place" in the United States under 18 U.S.C. § 1957 where it involves "transfers to accounts in U.S. financial institutions"). And again, the Court at this stage must assume the truth of the indictment's allegations, including "with regard to whether the [defendant] was subject to the jurisdiction of the United States." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. 2015); *see United States v. Patel*, No. 23-CR-166 (DLF), 2024 WL 1856409, at *2 (D.D.C. Apr. 24, 2024) (in denying a pretrial extraterritoriality-based motion to dismiss in a cryptocurrency prosecution, assuming "the truth of the government's allegations that [defendant's] unlawful activity occurred, at least in part, in the United States").

Thus, any contrary factual assertions that Klimenka advances in his motion—facts beyond the indictment's four corners—are irrelevant at this stage. *See, e.g.*, Mot. 20 (Klimenka asserting that he "has never set foot in the United States prior to his extradition" and that any "interactions [supporting explicit agreements to launder criminal proceeds] would have occurred in countries other than the United

---

[7] Klimenka asserts no extraterritoriality claim on Count One (18 U.S.C. § 1960).

1  States").[8] Because the indictment alleges domestic conduct, no extraterritoriality analysis is needed.

2        But even if extraterritoriality analysis were required, Klimenka's attack on Count Two would fail

3  based on the allegations in the indictment. "Assuming that the Government is required to state the nexus

4  of the alleged crimes to the United States in an indictment, the Indictment includes several allegations that

5  establish a sufficient nexus with the United States." *United States v. Budovsky*, No. 13-CR-368 (DLC),

6  2015 WL 5602853, at *5 (S.D.N.Y. Sept. 23, 2015); *see also United States v. Rafoi*, 60 F.4th 982, 999

7  (5th Cir. 2023) ("[F]or now, the allegations that Defendants engaged in conduct that occurred in part in

8  the Southern District of Texas satisfy the money-laundering statute's extraterritorial provision. The district

9  court erred in concluding otherwise.").

10       The statute charged in Count Two—conspiracy to commit money laundering under 18 U.S.C.

11  ¶ 1956(h)—explicitly provides for "extraterritorial jurisdiction over the conduct prohibited by this section

12  if" two conditions are met: "(1) the conduct is by a United States citizen or, in the case of a non-United

13  States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related

14  transactions involves funds or monetary instruments of a value exceeding $10,000." 18 U.S.C. § 1956(f).

15       The legislative history of this provision also shows that Congress intended for section 1956 to have

16  extraterritorial reach:

17                 Section 1956(f) is intended to clarify the jurisdiction of U.S. courts over
                 extraterritorial acts that could be construed to fall within the scope of section
18                 1956. It is not the Committee's intention to impose a duty on foreign citizens
                 operating wholly outside of the United States to become aware of U.S. laws.
19                 Section (f) avoids this by limiting extraterritorial jurisdiction over the
                 offense to situations in which the interests of the United States are involved,
20                 either because the defendant is a U.S. citizen or because the transaction
                 occurred in whole or in part in the United States.
21

22  S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986). Courts have long recognized that § 1956(f)

23  provides   for   extraterritorial   criminal   jurisdiction   against   foreign   persons   that   have   violated

24

_____

25       [8] Klimenka's conversations in discovery reveal that he was fully aware of and concerned with U.S.
     potential legal exposure. In 2012, Klimenka's company FXOpen was fined by the U.S. Commodity
26   Futures Trading Commission for its unregistered activities in the United States. In a 2013 conversation
     with Vinnik, Klimenka wrote that "[t]he problems with Americans will approximately arise in six months
27   to a year," but he noted that "the fine there is not big - 140K," referencing the CFTC's prior $140,000
     civil monetary penalty imposed on FXOpen. Defense counsel has an alternative explanation for the
28   meaning of this post, but they can hardly claim that Klimenka could not reasonably foresee the U.S.
     connection.

§§ 1956(a)(2)(A) and (h). *See, e.g.*, *United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004). In *Bodmer*, the defendant was a Swiss national charged with conspiring to commit international promotion money laundering under section 1956(a)(2)(A) and (h). *Id.* at 190. In holding that nonresident foreign nationals did not have immunity from the money-laundering statutes, the district court determined that Congress had a "[c]learly articulated intention to include foreigners within the scope of the money laundering statute." *Id.* at 191 (citing 18 U.S.C. § 1956(f)).

Congress's intent for extraterritorial application could hardly be clearer. The plain language of the money-laundering statute shows that Congress focused on enacting provisions that criminalized the transmission of monetary instruments and funds into, out of, or through the territory of the United States. *See* 18 U.S.C. § 1956(a)(2) (providing for criminal punishment of anyone who "transports, transmits, or transfers … a monetary instrument or funds" into or out of the United States); *see also, e.g.*, *United States v. Garcia*, 533 Fed. App'x 967, 982 (11th Cir. 2013) (affirming extraterritorial jurisdiction over transfer of drug proceeds from U.S. to Mexico and on to Colombia because even though most activity occurred outside U.S., initial transfer occurred in U.S., which is all that section 1956(f) requires).

Here, the allegations satisfy section 1956(f)'s requirements. The value of the charged transactions far exceeds $10,000, and at least some the conduct charged in this money-laundering conspiracy "occur[red] in part in the United States." 18 U.S.C. § 1956(f). Thus, despite Klimenka's Belarusian and Cypriot citizenships, he can be charged under section 1956(h), and the Court need not and should not and should not look beyond the indictment's allegations.

But if the Court looks beyond the indictment, Klimenka's arguments also fail. Indeed, however "the conduct" is defined here, extraterritorial jurisdiction extends to Klimenka and his co-conspirators. If "the conduct" includes the specified unlawful activity (SUA), then the jurisdictional analysis is straightforward; for example, the section 641 SUA and the narcotics-distribution SUA were accomplished in the United States, and certain ransomware victims paid ransoms in the United States. If, by contrast, "the conduct" refers to the actual conspiracy to launder money, the government intends to prove at trial that BTC-e set up its servers in the United States and engaged with U.S.-based proxy services such as CloudFlare in furtherance of the conspiracy.

Klimenka's contrary arguments lack merit. He claims that "nothing in the Indictment alleges that

*Mr. Klimenka*" conducted a money-laundering transaction in the United States. Mot. 19 (emphasis added). But no such allegation is required. This is a money-laundering *conspiracy* charge—not a substantive charge. And "'a conspiratorial agreement to launder money in contravention of § 1956(h) is conduct,'" so "the extraterritoriality provision of section 1956(f) applies to a money-laundering conspiracy offense under § 1956(h)." *United States v. 280 Virtual Currency Accounts*, No. 20-CV-2396 (TJK), 2024 WL 2049002, at *4 n.3 (D.D.C. May 8, 2024) (quoting *United States v. Ojedokun*, 16 F.4th 1091, 1102–05 (4th Cir. 2021)). This indictment need not allege that Klimenka himself conducted a money-laundering transaction in the United States—or anywhere.

Klimenka next asserts that "at a minimum, the agreement or overt acts must have occurred, in part, in the U.S." Mot. 20. But he cites no authority so holding because there is none. As the Supreme Court made clear two decades ago, section 1956(h) includes no overt-act requirement. *Whitfield v. United States*, 543 U.S. 209, 214 (2005). Nor does the statute require Klimenka and his co-conspirators to have reached an agreement while within the United States. *See United States v. Iossifov*, 45 F.4th 899, 914 (6th Cir. 2022) (rejecting extraterritoriality claim of Bulgarian defendant "who had never set foot in the United States before his extradition," a fact that did "not mitigate the fact that his conspiracy charges were grounded in conduct that was sufficiently tied to the United States"); *Ojedokun*, 16 F.4th at 1107–08.[9]

Courts have rejected arguments like Klimenka's and recognized that section 1956 was enacted to reach conduct outside the United States but involving funds generated from U.S.-based conduct. For example, in *United States v. Stein*, Crim. A. No. 93-375, 1994 WL 285020, at *4–*5 (E.D. La. June 23, 1994), the district court found that it was "plain from both the purpose of section 1956 and its legislative history that Congress did not intend to limit section 1956 so that it would only apply to defendants who are actually present in the United States." Rather, the focus is on the entire transaction, and jurisdiction would be proper where "a defendant, who never enters this country, initiates a transfer of funds from a place within the United States to a place outside the United States." *Id.* at *5.

//

In the years since *Stein*, courts have cited it approvingly. The Fifth Circuit, for example, cited *Stein*

---

[9] In both *Iossifov* and *Ojedokun*, the courts rejected extraterritoriality challenges like Klimenka's *after trial*. Both cases only underscore why Klimenka's *pretrial* extraterritoriality claim is misguided.

and other caselaw when recognizing that "[t]he text of 18 U.S.C. § 1956 demonstrates Congress's clear and specific intent for the statute to apply extraterritorially in a case like this, where a foreign citizen engages in money-laundering activity in part in the United States. There is no physical-presence requirement." *United States v. Rafoi*, 60 F.4th 982, 998 (5th Cir. 2023). Similarly, in *United States v. Approximately. $25,829,681.80 in Funds, plus Interest, in Court Registry Inv. Sys.*, No. 98 CIV. 2682 (LMM), 1999 WL 1080370, at 3 (S.D.N.Y. Nov. 30, 1999), the district court cited *Stein* when holding that the court had jurisdiction for money-laundering offenses, where parties initiating fund transfers "acted electronically" within the United States.

Other caselaw further undercuts Klimenka's extraterritoriality claim. *See, e.g.*, *United States v. Black*, 469 F. Supp. 2d 513, 538–39 (N.D. Ill. 2006) (where defendant argued that no jurisdiction existed for 18 U.S.C. § 1957 money-laundering charge "because the transaction at issue originated outside the United States and [he] is not a United States person," rejecting his argument and holding that engaging in a monetary transaction from Canada and transferring illicit funds to a U.S. account sufficed); *Bank Julius*, 251 F. Supp. 3d at 92–98 (analyzing sections 1956 and 1957).

This line of caselaw, along with section 1956's plain language, refutes Klimenka's challenge to Count Two. At bottom, Klimenka rests his extraterritoriality claim—like his other claims—on a request that the Court usurp the jury's factfinding role. He would have the Court conduct a minitrial on the strength of the government's case. But that is not how Rule 12 works, and the Court should "deny [Klimenka's] invitation to assume the fact finder's role in evaluating the strength of the government's evidence before trial." *Patel*, 2024 1856409, at *3. Whether the offense charged in Count Two occurred at least in part in the United States "is an issue for the finder of fact to resolve." *Id.*

//

//

//

//

//

//

**CONCLUSION**

1    For all these reasons, Klimenka's motion to dismiss or for a bill of particulars should be denied.

2

3    Dated: October 25, 2024                              Respectfully submitted,

4                                                          ISMAIL J. RAMSEY

5                                                          United States Attorney

6                                                          /s/

7                                                          KATHERINE LLOYD-LOVETT
                                                           Assistant United States Attorney

8                                                          CLAUDIA QUIROZ
                                                           C. ALDEN PELKER

9                                                          JONAS LERMAN
                                                           Trial Attorneys, CCIPS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28