UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALIAKSANDR KLIMENKA, <br><br> Defendant. | Case No. 22-cr-00256-SI-1 <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Re: Dkt. No. 104 |

On June 6, 2025, the Court held a hearing on defendant Aliaksandr Klimenka's motion to dismiss the indictment. For the reasons set forth below, the Court DENIES the motion.

**DISCUSSION**

Klimenka moves to dismiss the indictment on two grounds related to the dismissal of charges against Alexander Vinnik and the subsequent return of Vinnik to Russia pursuant a prisoner swap negotiated by the United States and Russia. In 2016, Vinnik was charged in *United States v. BTC-E et al.*, 16-cr-227 SI, along with BTC-e and several other individuals. The government alleges that Vinnik, Klimenka and others operated BTC-e as an unlicensed money transmitting business and that cybercriminals used BTC-e to launder and liquidate criminal proceeds. In May 2024, Vinnik pleaded guilty to conspiracy to commit money laundering under 18 U.S.C. § 1956(h). His sentencing was continued several times. On February 11, 2025, before Vinnik could be sentenced, his case was dismissed on the United States' motion as part of a prisoner exchange negotiated between the Trump Administration and the Russian government. Pursuant to that exchange, Vinnik returned to Russia, and Russia released Marc Fogel, an American citizen who had been detained by Russia.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2    **I.    Rendering Vinnik Unavailable**

3          First, Klimenka contends that the government has violated his rights by making Vinnik

4    unavailable by sending him to Russia, despite the government's knowledge that Vinnik "had

5    material evidence with apparent exculpatory value."  Mtn. at 5.  "The Compulsory Process Clause

6    and the Due Process Clause both guarantee "'a meaningful opportunity to present a complete

7    defense.'" *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 841 (9th Cir. 2024) (quoting *United*

8    *States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010)).  Klimenka contends that the government has

9    violated his rights under these Clauses and prevented him from presenting a complete defense.

10          Likening Vinnik's prisoner swap to cases in which the government has lost or destroyed

11    exculpatory evidence, Klimenka contends that Vinnik would have provided material exculpatory

12    evidence on his behalf, and that the government knew that before making him unavailable by

13    sending him abroad.  Klimenka cites various statements that Vinnik made in connection with his

14    extradition hearings, the prosecution against him in France, in other discovery produced by the

15    government, and to Russian media after he returned to Russia, in which Vinnik proclaimed his

16    innocence and minimized his role in BTC-e and his knowledge of BTC-e's activities.  Klimenka

17    also argues that Vinnik's acquittal of certain charges in the French prosecution demonstrates that

18    Vinnik possessed evidence exculpatory of Klimenka.

19          The government responds that there is no basis in the record, including the under seal

20    materials, to suggest that Vinnik would have been an exculpatory witness for Klimenka.  The

21    government argues that the French criminal case was vastly different than the U.S. case and instead

22    concerned the Locky ransomware gang and its attacks on French companies.  In the French case,

23    Vinnik was accused of deploying the ransomware and negotiating with victims, and Vinnik claimed

24    that he was not part of the ransomware group but worked at BTC-e and processed transactions on

25    behalf of BTC-e customers.  Vinnik was acquitted of the charges related to the deployment of the

26    Locky ransomware, but convicted of the charge of laundering Locky ransom proceeds through BTC-

27    e.  Thus, the government argues that nothing about the French proceedings is inconsistent with the

28    U.S. case or exculpatory of Klimenka.  The government also disputes Klimenka's suggestion that if

1    Vinnik had taken the stand in Klimenka's case he would have recanted his prior statements and

2    proclaimed his and Klimenka's innocence, despite his U.S. plea agreement and his detailed prior

3    admission of guilt.

4        The government also notes that Vinnik's prior counsel first raised the possibility of a

5    prisoner swap in a May 2023 public filing, and thus Klimenka has been on constructive, if not actual,

6    notice that Vinnik was seeking a prisoner swap and that if he was successful, Vinnik's case would

7    end.  The government states that during this time period, Klimenka's counsel never suggested to the

8    government that such a swap would hinder Klimenka's ability to present his defense or receive a

9    fair trial.  In addition, the government states that during this time period Klimenka's counsel tried

10   to interview Vinnik and Vinnik did not want to speak to them, further undermining any current

11   assertion that Vinnik would have testified as an exculpatory witness for Klimenka.

12       Finally, the government asserts that there are other options for introducing Vinnik's prior

13   statements, including as statements by a co-conspirator under Federal Rule of Evidence 801(2)(2)(E)

14   and/or as statements by an available witness under Federal Rule of Evidence 804(a)(2), (a)(5),

15   (b)(3).[1]

16       The parties disagree about the legal framework under which to analyze Klimenka's motion

17   to dismiss, including whether Klimenka is required to show the government acted in bad faith, and

18   they have cited somewhat analogous cases involving lost or destroyed evidence or deported

19   witnesses.[2]  While none of these cases is directly applicable to the unusual situation presented here,

20   those cases consistently hold that in order for a defendant to obtain dismissal based upon a

21   constitutional violation, the defendant must show that that government is responsible for the loss or

22   unavailability of exculpatory evidence as well as prejudice.  *See United States v. Sivilla*, 714 F.3d

---

[1]  At the hearing, government counsel stated that during the parties' recent discussions about the Rule 15 depositions of foreign witnesses, the defense proposed having these witnesses testify remotely at trial in lieu of depositions, and the government asked the defense if they would similarly agree to Vinnik's live remote testimony for trial.  The defense refused to agree to Vinnik's live remote testimony, asserting Confrontation Clause issues.

[2]  The government also argues, not without force, that all of those cases are distinguishable from the unusual circumstances of a prisoner swap negotiated by the State Department, not the Department of Justice, and in which the DOJ had no involvement.

United States District Court
Northern District of California

1    1168, 1172 (9th Cir. 2013) (destroyed evidence); *United States v. Leal-Del Carmen*, 697 F.3d 964,

2    970 (9th Cir. 2012) (deported witness).

3    The Court concludes that Klimenka has failed to meet this standard. Klimenka does not

4    articulate how Vinnik's testimony would have been exculpatory of him or how he would be

5    prejudiced by the absence of Vinnik's trial testimony. *See United States v. Valenzuela-Bernal*, 458

6    U.S. 858, 867 (1982) (in order to establish a Sixth Amendment violation based on deportation of

7    witnesses, a defendant "must at least make some plausible showing of how their testimony would

8    have been both material and favorable to his defense"). For all of the reasons stated by the

9    government in its opposition, the Court finds that there is no basis in the record to conclude that

10   Vinnik was a favorable defense witness who would have testified at Klimenka's trial to exculpate

11   him.

13   **II.      Selective Prosecution**

14   Second, Klimenka contends that the government has violated his constitutional right to equal

15   protection by continuing to prosecute him but dismissing all similar charges against Vinnik.

16   Klimenka contends that he is being discriminated against on the basis of his Belarussian nationality,

17   and that Vinnik received different treatment due to his Russian nationality.

18   "In our criminal justice system, the Government retains broad discretion as to whom to

19   prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotations omitted). "One important

20   restriction on prosecutorial discretion, however, is that 'the decision whether to prosecute may not

21   be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'"

22   *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003) (citing *United States v.*

23   *Armstrong*, 517 U.S. 456, 464 (1996)). "To prove a selective prosecution claim, a defendant must

24   show 'discriminatory effect and discriminatory intent.'" *United States v. Rundo*, 108 F.4th 792, 798

25   (9th Cir. 2024) (quoting *Armstrong*, 517 U.S. at 468). "Specifically, the defendant bears the burden

26   to 'demonstrate that (1) other similarly situated individuals have not been prosecuted and (2) his

27   prosecution was based on an impermissible motive.'" *Id.* (quoting *United States v. Sutcliffe*, 505

28   F.3d 944, 954 (9th Cir. 2007)). "The standard for proving [a selective prosecution] claim is

1    particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the

2    presumption that a prosecutor has acted lawfully." *Sutcliffe*, 505 F.3d at 954 (quoting *Reno v.*

3    *American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999)).  The Court "view[s] the

4    evidence in the light most favorable to the government" when reviewing such claims.  *United States*

5    *v. Culliton*, 328 F.3d 1074, 1080-81 (9th Cir. 2003).

6           The Court concludes that Klimenka has not met his high burden to show that the government

7    has engaged in selective prosecution.  As the government notes in its opposition, prosecution

8    remains pending in this District against two Russian nationals regarding BTC-e and related entities.

9    Thus, Klimenka has not shown that other similarly situated individuals have not been prosecuted,

10   only that the case against Vinnik was dismissed pursuant to a highly unusual prisoner exchange

11   between the United States and Russia.

12          In addition, Klimenka has failed to demonstrate that his prosecution is based on an

13   impermissible motive.  "Discriminatory purpose implies more than intent as awareness of

14   consequences.  It implies that the decisionmaker selected or reaffirmed a particular course of action

15   at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."

16   *Wayte*, 470 U.S. at 610 (internal quotations omitted).  Klimenka has not introduced any evidence of

17   impermissible motive.  To the extent that Klimenka relies on the Department of Justice's recent

18   memorandum "Ending Regulation by Prosecution," as evidence of selective prosecution, the Court

19   is unpersuaded.  Vinnik's criminal case was dismissed as part of the prisoner exchange, not pursuant

20   to the memorandum.  In any event, that memorandum states that the government will continue to

21   prosecute cases involving use of digital assets in furtherance of unlawful conduct by transnational

22   criminal organizations, including to fund their operations and launder the proceeds of illicit

23   businesses.  Reply, Ex. A at 2.  The indictment alleges that BTC-e was one of the primary ways by

24   which cyber criminals around the world transferred, laundered, and stored the criminal proceeds of

25   their illegal activities, and thus Klimenka's prosecution is consistent with the DOJ's guidance.[3]

26

27          [3] Further, the memorandum explicitly states that "[t]his guidance is not intended to, does
     not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable
28   at law or in equity by any party against the United States, its departments, agencies, or entities, its
     officers, employees or agents, or any other person.  *Id*. at 1 n.1.

United States District Court
Northern District of California

1

2                                    **CONCLUSION**

3          For the foregoing reasons, the Court DENIES Klimenka's motion to dismiss the indictment.

4

5          **IT IS SO ORDERED**.

6

7    Dated: June 9, 2025          _____

8                                        SUSAN ILLSTON
                                         United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6