JULIA M. JAYNE (SBN 202753)
JAYNE LAW GROUP, P.C.
803 Hearst Avenue
Berkeley, CA 94710
Phone: (415) 623-3600
E-Mail: julia@jaynelawgroup.com

CARLOS F. ORTIZ (Pro Hac Vice)
BAKER HOSTETLER
45 Rockefeller Plaza
New York, NY 10111-0100
Phone: (212)589-4676
E-Mail: cortiz@bakerlaw.com

PAUL W. VERNER (Pro Hac Vice)
VERNER SIMON
30 Wall Street, 8th Floor
New York, New York 10005
Phone: (212) 502-5500
E-Mail: pwverner@vernerlaw.com

DANIEL OLMOS (SBN 235319)
NOLAN BARTON OLMOS & LUCIANO, LLP
600 University Avenue
Palo Alto, CA 94301
Phone: (650) 326-2980
E-Mail: dolmos@nbo.law

*Attorneys for Defendant*
ALIAKSANDR KLIMENKA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALIAKSANDR KLIMENKA,<br><br>Defendant. | Case No. 3:22-cr-00256-SI<br><br>DEFENDANT'S NOTICE AND MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date:     December 5, 2025<br>Time:     11:00 a.m.<br>Location:  Courtroom 1<br><br>Before the Honorable Susan Illston<br>United States District Judge |

009970.014309\4913-2588-4020.1

## MOTION

Defendant Aliaksandr Klimenka, by and through counsel, respectfully moves for an order compelling the government to produce material discoverable under Federal Rules of Criminal Procedure 5 and 16 and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and also compelling the government to conduct a diligent search for *Brady* material and either to disclose all *Brady* information or assert that after a diligent search the government believes no additional *Brady* material exists.  This motion is based upon the Fifth and Sixth Amendments to the U.S. Constitution and all other applicable statutory and case law.  The motion is also based upon the instant notice of motion and motion, the attached memorandum of points and authorities, the files and records in this case, and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.  The requested discovery is listed in the attached letter dated August 28, 2025, letter from defense counsel to the government, which is attached as an exhibit to this motion.

Respectfully submitted,

DATED: October 31, 2025                NOLAN BARTON OLMOS & LUCIANO, LLP


 */s/ Daniel B. Olmos*
DANIEL B. OLMOS

Attorney for Defendant
Aliaksandr Klimenka

Def's Mot. to Compel Discovery
Case No. 3:22-cr-256-SI

009970.014309\4913-2588-4020.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Indictment in this case alleges that Defendant Aliaksandr Klimenka "controlled" the BTC-e digital currency exchange as part of a conspiracy to commit money laundering.  In a separate investigation in the Southern District of New York which covered the same time period as the investigation in this District, the government similarly suspected that BTC-e was being used to launder proceeds of a bitcoin theft from an exchange called Mt. Gox.  While thoroughly investigating BTC-e's role in laundering those proceeds, the government identified the individuals who ran and controlled BTC-e but did not find any evidence implicating Mr. Klimenka.  Specifically, that investigation from SDNY into who operated and controlled BTC-e and used it to launder money uncovered *nothing about Mr. Klimenka*, a fact that the Klimenka prosecution case team (the "NDCA team") did not tell defense counsel here.  Nor did the NDCA team inform defense counsel that federal investigators in SDNY concluded that BTC-e's "whole operation was ran by" three named people who are <u>not</u> Mr. Klimenka – although one of them was Alexander Vinnik, whom the NDCA team indicted in this District and who pled guilty here before he was sent back to Russia in a prisoner exchange earlier this year – and that BTC-e had "no other real employees."  It further failed to inform defense counsel here about the conclusions of the SDNY investigation into BTC-e and the Mt. Gox hack despite the fact that the NDCA team's own indictment of Mr. Vinnik in this District focused on the very same Mt. Gox hack that was the subject of the SDNY investigation – the Superseding Indictment against Mr. Vinnik in this District mentions Mt. Gox no fewer than 18 times.  Considering the number of references to the focus of the SDNY investigation, it is inconceivable that the NDCA team was somehow unaware of the aspects of that investigation that clearly exculpated Mr. Klimenka.

Only by sheer happenstance did defense counsel here learn that the SDNY had investigated BTC-e and concluded that several individuals—and not Mr. Klimenka—controlled the exchange.  An agent investigating the Mt. Gox hack, IRS Special Agent Gary Alford, knew one of Mr. Klimenka's defense attorneys and shared with him that the Mt. Gox investigation

contained exculpatory evidence with respect to Mr. Klimenka.  In other words, the existence of this information was disclosed to Mr. Klimenka's defense attorneys <u>not</u> by the prosecutors in this case but rather by an investigator in SDNY completely outside of the NDCA team's legal and constitutional discovery obligations.  For this reason, Mr. Klimenka respectfully moves this Court to order the government to produce discovery from the SDNY investigation into who controlled BTC-e, and to produce the materials that led the SDNY investigation to conclude that people *other than Mr. Klimenka* controlled it, contrary to the Indictment's allegations against Mr. Klimenka here.

As required by the Court, the parties attempted to resolve this dispute but have reached an impasse.  The government shared IRS SA Alford's memorandum related to the SDNY investigation – only after defense counsel informed the government that SA Alford had alerted it to the fact that such exculpatory evidence existed – but have since declined to disclose the materials upon which SA Alford relied when forming his conclusions about who controlled BTC-e.  The underlying materials are exculpatory and discoverable and necessary to the defense, especially because the government now expressly declines to agree that SA Alford's conclusions are accurate.

At bottom, the government takes two contradictory positions: (1) that Mr. Klimenka "controlled" BTC-e as part of a conspiracy to commit money laundering, ECF No. 1 at 1:26-28, and, on the other hand, (2) that the government need not share the results of an investigation that did not incriminate Mr. Klimenka at all, and that identified people other than Mr. Klimenka as the people who in fact controlled BTC-e.  The government's refusal to produce the requested materials from the SDNY investigation flies in the face of its obligations under *Brady* and the Federal Rules of Criminal Procedure.  Accordingly, the Court should grant this motion to compel.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 2022, Mr. Klimenka was charged by Indictment with one count of violating 18 U.S.C. § 1960 (operation of an unlicensed money transmitting business) and one count of

violating 18 U.S.C. § 1956(h) (conspiracy to commit money laundering).  *See* ECF No. 1.  The Indictment alleges that Mr. Klimenka "controlled" BTC-e from 2011 to July 2017.  *Id.* at 1 ¶ 4.  The Indictment alleges that BTC-e received criminal proceeds of numerous computer intrusions and hacking incidents.  *Id.* at 2 ¶ 6.  The Indictment further alleges that BTC-e's servers were "one of the primary ways in which BTC-e and its operators effectuated their scheme," and that the servers were leased to and maintained by Mr. Klimenka.  *Id.* at 3 ¶ 13.

Meanwhile, in SDNY, the government in 2019 charged Aleksandr Verner and Alexey Bilyuchenko with a money laundering conspiracy for allegedly laundering stolen bitcoin through BTC-e.  *United States v. Verner, et al.*, SDNY Case No. 1:19-cr-936-PKC.  IRS Special Agent Alford was on the investigation team in SDNY – the investigation covered 2011 through 2014, which entirely overlaps the time period of the government's investigation in this case.  SA Alford has been recognized nationally for his investigative work on the use of cryptocurrency exchanges to facilitate criminal activity.[1]

In May 2025, SA Alford contacted one of Mr. Klimenka's attorneys, whom the agent knew from circumstances not related to this case.  This random connection led to SA Alford alerting counsel to the existence of exculpatory information in the possession of the government related to Mr. Klimenka.  The defense informed the NDCA prosecutors about this exculpatory information on or about May 13, 2025.

On June 30, 2025, the government sent a letter to the defense stating that the NDCA team "obtained a set of materials from the SDNY case file.  We have reviewed those materials pursuant our disclosure obligations."  The NDCA team represented that based upon its review of whatever "set of materials" from the SDNY case it had received that it would make several disclosures based on that review: (1) that the SDNY file included evidence that BTC-e was founded by Verner and Bilyuchenko, and that Alexander Vinnik was involved in BTC-e's financial activity and moving the Mt. Gox funds; (2) that the SDNY file does not contain any evidence of Mr. Klimenka's involvement with BTC-e before 2013; and (3) that the BTC-e

---

[1] See, e.g., https://www.forbes.com/sites/hanktucker/2019/06/13/irs-agent-who-took-down-silk-road-turns-his-attention-to-recreational-bitcoin-investors/.

Def's Mot. to Compel Discovery
Case No. 3:22-cr-256-SI

server infrastructure at Equinix was set up around 2016, and the person who at one point serviced those servers reported on immigration forms that he was doing work for Bilyuchenko. The government also disclosed "several documents" from the SDNY case file, but not the evidence the investigators in SDNY relied upon to conclude that individuals other than Mr. Klimenka were running BTC-e. The government in its letter expressly cautioned that it was not conceding that disclosure was required under *Brady* "or otherwise," or that "any of SA Alford's impressions related to the *Klimenka* case are accurate." *See* Exhibit A (June 30, 2025, Discovery Letter from Government).

Two weeks later, by letter dated July 14, 2025, the defense renewed its request under Rule 16, *Brady/Giglio,* and *Jencks* for discovery. The defense asked the prosecution to search for and disclose records of all Department of Justice investigations pertaining to BTC-e throughout the country. The letter requested all records that formed the basis of the SDNY investigator's conclusions, documented in written messages, that the "whole operation" of BTC-e was ran by three people who are not Mr. Klimenka, and that BTC-e had "no other real employees" and merely outsourced "work here and there." Moreover, the defense requested all records that formed the basis of SA Alford's conclusion that "only VERNER had root access to the BTC-E server[.]" *See* Exhibit B (July 14, 2025, Discovery Letter from Defense).

The government responded by letter dated July 26, 2025, asserting that the SDNY investigation was "a separate . . . open criminal case[.]" The government asserted that other U.S. Attorneys' Offices are not part of the prosecution team in the NDCA matter, and the government asserted that it was aware of no authority that would require it to search for evidence related to BTC-e investigations in other districts. *See* Exhibit C (July 26, 2025, Discovery Letter from Government). Notably, in April 2025, the government disclosed to the defense at least two different documents which referred specifically to SA Alford's investigation into the connection between BTC-e and the Mt. Gox theft.[2]

---

[2] Bates KLIMENKA—00155963 & -00155968.

The government disclosed SA Alford's memorandum to defense counsel on August 1, 2025, and designated the memorandum as Attorneys' Eyes Only, thereby prohibiting defense counsel from showing the memorandum to their client or experts.  The 41-page memorandum summarizing the SDNY investigation into money laundering via BTC-e does not once mention Mr. Klimenka, and enumerates the exculpatory conclusions cited above including *inter alia* the fact that BTC-e was controlled by three individuals who are not Mr. Klimenka, that the exchange had no other employees whatsoever, and that an individual who is not Mr. Klimenka was the only person with root access to the BTC-e server.

The parties met and conferred on August 11, 2025, and the defense followed up by letter dated August 28, 2025.  The letter notes that SA Alford's 41-page memo "refers to information that is materially exculpatory to Mr. Klimenka and the government's allegations against him, as well as other discoverable information."  The defense also requested the "underlying materials referred to in [SA] Alford's memorandum, and upon which he expressly relies in forming the conclusions in the memorandum, including" a list of items specifically mentioned in SA Alford's memorandum. The defense also asked that the government redesignate SA Alford's memorandum so that the defense could share the report with its experts.  *See* Exhibit D (August 28, 2025, Discovery Letter from Defense.)  Because the defense and government were now both aware of relevant, exculpatory information that exists in other investigations, the defense again asked the government to inquire with other government agencies and U.S. Attorney's Offices to determine whether their files contain similar exculpatory evidence.

The government replied by letter on September 16, 2025.  The government did not offer to produce the underlying materials referenced in SA Alford's memorandum, but instead asked the defense to further explain the relevance and discoverability of each requested underlying material from SA Alford's memorandum.  The government suggested that the defense was "more interested in manufacturing discovery disputes than actually obtaining evidence that the defense reasonably believes could actually be used in Mr. Klimenka's defense at trial."  *See* Exhibit E (September 16, 2025, Discovery Letter from Government).  The government also demanded that the defense "specify which records you seek to disclose to which experts, and

explain why you believe their review of the specified material(s) is necessary for Mr. Klimenka's effective defense notwithstanding the significant sensitivities which gave rise to the need for the AEO protections." *Ibid.* To date, the government has failed to produce the requested materials despite their clear relevance and exculpatory value to Mr. Klimenka's case.

## ARGUMENT

**I.**    **The underlying materials from a sweeping investigation that did not reveal any incriminating information about Mr. Klimenka, but did identify incriminating information about others, are clearly material and exculpatory, and therefore discoverable.**

### A.    The governing legal standards in Rule 16 and *Brady*.

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to disclose and let the defense inspect and copy documents within the government's control and that are material to presenting the defense. "Possession" under Rule 16 includes information the prosecution team has knowledge of and can obtain upon request from another government agency. *See, e.g., United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). "Documents held by another executive branch agency are deemed to be 'in the possession of the government' if the prosecutor has 'knowledge of and access to' the documents." *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019). That "possession" rule is the same under Rule 16 and the constitutional discovery obligation in *Brady v. Maryland*, 373 U.S. 83 (1963). *Cano*, 934 at 1023 n.16.

The *Brady* standard is well known and requires the prosecution to disclose favorable evidence to the defense. This duty extends beyond the individual prosecuting office and extends to other government agents and agencies: "Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *United States v. Price*, 566 F.3d 900, 909 (9th Cir. 2009) (italics removed) (quoting *Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (*en banc*)). The *Brady* duty also extends to evidence that would impeach the credibility of a key witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The

Def's Mot. to Compel Discovery
Case No. 3:22-cr-256-SI

prosecution's opinion of the degree to which evidence is favorable or impeaching does not matter; rather, "whether evidence is favorable is a question of substance, not degree, and evidence that has any . . . impeachment value is, by definition, favorable." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015).  The weight of the evidence bears on whether its suppression was prejudicial, but "evidence is favorable to a defendant even if its value is only minimal." *Id.*

The post-trial "materiality" standard typically associated with *Brady* does not apply here, as that standard is for evaluating the strength of evidence after a trial and conviction.  *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024).  In contrast, the proper test for *pretrial* discovery of exculpatory materials is simply whether the evidence is favorable to the defense because it bolsters the defense case or impeaches the government's evidence.  *Id.*

**B.      The requested discovery is exculpatory and discoverable under *Brady* and Rules 5 and 16 of the Federal Rules of Criminal Procedure.**

A sweeping investigation into money laundering through BTC-e identified several suspects affiliated with BTC-e but did not discover anything about Mr. Klimenka.  The absence of any connection to Mr. Klimenka is itself exculpatory, but the investigation also uncovered affirmative exculpatory evidence, such as evidence that three people *other than* Mr. Klimenka ran BTC-e, that the exchange had no other employees, and that "only" someone other than Mr. Klimenka had root access to BTC-e's servers.  Thus, the underlying materials from the SDNY investigation possess apparent exculpatory value.

First, the documents from the SDNY investigation are favorable and exculpatory because the thorough investigation did not reveal anything incriminating about Mr. Klimenka, despite the blatant overlap in the probe into BTC-e.  An investigation that discovers significant evidence of wrongdoing by identified parties into the very issue pending before this Court (i.e., who controlled BTC-e), but fails to find anything about the charged defendant, is favorable to the defendant and impeaches the prosecution's evidence.  To make the point by comparison to a simpler offense, if a thorough forensic investigation of a 7-Eleven robbery finds fingerprints,

DNA, and clothing fibers from one or more suspects, but none from the defendant, that fact is exculpatory and favorable to the defense. The same reasoning holds when the offense is more complicated, such as an alleged conspiracy to commit money laundering through BTC-e.

But the SDNY investigation did not merely fail to find evidence implicating Mr. Klimenka; it found affirmative evidence that three people other than Mr. Klimenka ran BTC-e. One of the SDNY investigators concluded that "*the whole* [BTC-e] *operation* was ran by Admin, Dev, and Vinnik," and clarified that "admin is Alexey" Bilyuchenko. *See* Exhibit B at 2 (emphasis added). Regarding access to the BTC-e servers, IRS SA Alford concluded that "*only* VERNER had root access to the BTC-E server and maintained root access since the creation of BTC-E." *Ibid*. (emphasis added). This evidence directly undermines the Indictment's allegation that Mr. Klimenka "controlled" BTC-e. ECF No. 1 at 1:28. By pointing to other suspects or perpetrators, it is favorable within the meaning of *Brady*. *Williams v. Ryan*, 623 F.3d 1258, 1265 (9th Cir. 2010) (noting that "new evidence suggesting an alternate perpetrator is 'classic *Brady* material'" (quoting *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d. Cir. 2001)); *United States v. Bates*, 677 F. Supp. 3d 1200, 1211 (D. Nev. June 15, 2023) (evidence was exculpatory where it pointed to another person as alternative suspect and showed that investigators treated the other person as a suspect)).

In *United States v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007) (*en banc*), the government had not informed the defendant, charged with bank robbery, that other nearby banks had been robbed after her arrest and detention by a suspect with a similar physical appearance to defendant. *Id.* at 1051. After the defendant's conviction and sentence, she learned of the other robberies and moved for a new trial due to the *Brady* violation. *Id.* at 1053. The government conceded that the evidence pointing to an alternative suspect was "favorable to the accused" under *Brady* and should have been disclosed. *Id.* Put differently, even though the suppressed evidence came from an unrelated investigation into robberies that occurred while Defendant Jernigan was incarcerated, this evidence was favorable to the defendant. So too here.

Second, the requested materials are also discoverable because they can help Mr.
Klimenka attack "the thoroughness and even the good faith of the investigation." *See Kyles v.
Whitley*, 514 U.S. 419, 445 (1995). For instance, if the NDCA investigators had been more
thorough, they would have discovered that the federal government in SDNY had already
investigated money laundering by BTC-e and would have uncovered the favorable evidence
from the SDNY investigation.

The good faith of the NDCA investigation is also at issue because the defense can argue
that investigators operating in good faith would have sought out any related investigations and
inquired about relevant evidence. The dual prosecutions against Defendant Bilyuchenko in this
district and SDNY would only make it more likely that investigators operating in good faith
would have inquired about the SDNY investigation. The SDNY investigation identified
Bilyuchenko, Vinnik, and a "young kid" named Dev as the three people running BTC-e. *See*
Exhibit B at 2. The federal government charged Bilyuchenko in SDNY Case No. 19-cr-936 and
in this district in NDCA Case No. 22-cr-255-SI. The government filed a Local Rule 8-1 notice
of related case for Bilyuchenko's NDCA case and this case against Mr. Klimenka because
"because they involve the same alleged events, occurrences, transactions, and property." ECF
No. 8 at 5:9-10. This acknowledgement that Bilyuchenko's case involves the same events and
occurrences as Mr. Klimenka's undermines the government's claim that the SDNY investigation
is entirely separate from Mr. Klimenka's. Both investigations and cases involve Bilyuchenko,
BTC-e, and alleged money laundering. Thus, the requested discovery is discoverable under
*Kyles* and *Brady* because it will help Mr. Klimenka argue that the NDCA investigation was not
thorough or was not conducted in good faith.

### C.    Disclosure is required even though the other investigation occurred in a different district.

The government cannot avoid its obligations by contending that the U.S. Attorney's
Office for this district does not have possession or control of materials in the case files of U.S.
Attorney's Offices outside of this district. For one thing, all federal prosecutors are part of the

same agency, the United States Department of Justice.  And even if the government views each U.S. Attorney's Office as separate from the rest, the law says that discovery material is within the "possession of the government" if the prosecutor has "knowledge of and access to" the documents.  *Cano*, 934 F.3d at 1023.  Despite that rule, the government here claims that "Other U.S. Attorneys' Offices and law enforcement agencies are not part of the prosecution team in this matter, and their case files are not in our possession."  *See* Exhibit C at 2.  This claim about the "prosecution team" is incongruent with the law.  Here, government knows about the relevant documents and materials from the SDNY investigation.  The government has not claimed any lack of access to the requested materials.  To the contrary, the government has "obtained a set of materials from the SDNY case file," demonstrating their ready access to those materials.  *See* Exhibit A at 1.  Given this level of knowledge and access, the government cannot shrug its shoulders and refuse to produce materially exculpatory evidence.  *See Price*, 566 F.3d at 909 (explaining that "the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf").

## CONCLUSION

For the foregoing reasons, Mr. Klimenka respectfully asks the Court to issue an order compelling the government to conduct a diligent search for and disclose all *Brady* material, and to disclose all the materials listed in defense counsel's letter to the government dated August 28, 2025.

Respectfully submitted,

DATED: October 31, 2025             NOLAN BARTON OLMOS & LUCIANO, LLP


 /s/ Daniel B. Olmos
DANIEL B. OLMOS

Attorney for Defendant
Aliaksandr Klimenka

***United States v. Klimenka***
**Case No. 3:22-cr-00256-SI**

**MOTION TO COMPEL DISCOVERY**

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *11ᵗʰ Floor, Federal Building* | *(415)436-7200* |
| *450 Golden Gate Ave., Box 36055* | |
| *San Francisco, CA 94102-3495* | *FAX: (415)436-7234* |

June 30, 2025

**[BY EMAIL]**

Julia Jayne
julia@jaynelawgroup.com

Paul Verner
pwverner@vernerlaw.com

Carlos Ortiz
cortiz@bakerlaw.com

Daniel Olmos
dolmos@nbo.law

Re:   **United States v. Klimenka**
      **CR 22-00256 SI**

      **SDNY Case Disclosure**
      **SENSITIVE**

Dear Defense Counsel:

As you are aware, in 2019, Aleksandr Verner and Alexey Bilyuchenko were charged by indictment in the Southern District of New York (SDNY) with money laundering conspiracy, *United States v. Verner et al.*, S.D.N.Y. 19-cr-936. The indictment, which was unsealed in 2023, pertains to Verner and Bilyuchenko's involvement in a scheme to launder funds from the hack of Mt. Gox.

We are aware that a former member of the Bilyuchenko/Verner case team, IRS Special Agent (SA) Gary Alford, recently contacted you claiming he believed the SDNY case included information that may be relevant to the *Klimenka* case. The *Klimenka* case team has taken steps to inquire as to the nature of any information SA Alford may be aware of that would be subject to disclosure in this case.

In response to our inquiry regarding SA Alford's correspondence, we obtained a set of materials from the SDNY case file. We have reviewed those materials pursuant to our disclosure obligations.

As a result, we make the following disclosures, which are designated as SENSITIVE pursuant to the Protective Order (ECF No. 44):

- The SDNY case file includes evidence that BTC-e was founded by Bilyuchenko and Verner, and Vinnik was involved in the financial activity of BTC-e and the movement of the Mt. Gox funds. Klimenka was not a focus of the SDNY case.

- The SDNY case file does not include any evidence of Klimenka's involvement with BTC-e prior to 2013.

- The BTC-e server infrastructure at Equinix was set up around 2016. Boris Gizbrecht, who at one point was involved with servicing the BTC-e servers in Equinix, reported on immigration forms that he was doing work for Bilyuchenko.

Additionally, please find attached several documents from the SDNY case file.

In providing these to you, we are not conceding the relevance, admissibility, or use of this information at trial. Nor are we conceding that disclosure is required under *Brady* or otherwise, or that any of SA Alford's impressions related to the *Klimenka* case are accurate.

Please do not hesitate to contact us if you have any questions.

Very truly yours,

CRAIG H. MISSAKIAN
United States Attorney


/S/
_____
RYAN ARASH REZAEI
Assistant United States Attorney
CATHERINE A. PELKER
JONAS LERMAN
CLAUDIA QUIROZ
Trial Attorneys
Department of Justice


cc: SDNY

*United States v. Klimenka*
Case No. 3:22-cr-00256-SI

MOTION TO COMPEL DISCOVERY

# EXHIBIT B



July 14, 2025

Claudia Quiroz
Alden Pelker
Jonas Lerman
Ryan Rezaei
Assistant United States Attorneys
Northern District of California
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
*Via email*

      Re:    *United States v. Alex Klimenka*, Case No. 22-256 SI

Dear Counsel:

On behalf of Mr. Klimenka, after reviewing the documents received on July 1, 2025, we are compelled to renew are our request for all discovery under Rule 16 of the Federal Rules of Criminal Procedure, as well as all discoverable materials under other statutes and case law, including *Brady*, *Giglio*, and *Jencks* (18 U.S.C. § 3500). Though we have repeatedly requested *Brady* materials, the documents received on July 1, 2025, described more fully below, appear to contain information materially exculpatory to Mr. Klimenka and the government's allegations against him. We are very concerned that we only received this exculpatory evidence because IRS Agent Gary Alford contacted a member of our defense team, Carlos Ortiz, after learning that Mr. Ortiz was involved in the defense of Mr. Klimenka and brought this information to his attention. Without this random association, our team would not have been aware of the existence of this information.

In light of this disturbing discovery on the eve of trial, and after numerous requests for information of this very nature, we are requesting that the prosecution team, as a member of the United States Department of Justice, which encompasses the entire Department of Justice, conduct an immediate search for and disclose records of all investigations throughout the United States that pertain to BTC-e, whether or not you believe Mr. Klimenka was the subject or target of the investigation. We demand that you inquire with your colleagues in all federal districts throughout the country and produce all materials relating to BTC-e, including any records in the possession of the Department of Justice of foreign investigations into BTC-e. Please provide a response no later than **July 25, 2025**, or we will need to bring the matter to Judge Illston. Indeed, for the same reason that the prosecution team is able to benefit from investigations throughout the nation, they are equally responsible for reviewing the files

of these investigations to determine if there is any information that constitutes *Brady*, *Giglio*, and *Jencks*. What is particularly troubling about this disclosure is that the investigation from which this information was obtained concerned individuals directly implicated in this case and conduct specifically mentioned in Alexander Vinnik's indictment.

This request includes but is not limited to all records of investigations related to BTC-e conducted by former IRS Criminal Investigation Special Agent Tigran Gambaryan and IRS Special Agent Gary Alford, who, according to the discovery that you just produced, engaged in the following exchange on July 2, 2018:

**Tigran Gambaryan [1:49 PM]:**
**BTC-e**
**the whole operation was ran by Admin, Dev, and Vinnik**
**dev is a young kid**
**he was 18 when they started the excahnge**
**no other real employees**
**oursources work here and there**
**admin is Alexey**
**lives in the far easters corner of Russia**
**borders China lol**
**Vinnik is from Kurgan**
**so..."**

Therefore, inclusive in the request in the prior paragraph, please immediately produce all records of investigations related to BTC-e that form the basis of former Special Agent Gambaryan's conclusion that *inter alia* BTC-e was run by only three individuals (who are not Mr. Klimenka), and that the organization had "no other real employees" and outsourced "work here and there."

The following exchange was also included in the most recent production:

**Excerpts from a May 11, 2018 internal document drafted by IRS SA Gary Alford**

**Between 5/4/2014 through 5/7/2014, VERNER received numerous BTC-E "error" notifications originating from the BTC-E servers into the ne0nhs(at)gmail account. *Reader's note: due to these emails, "dev" being Profile #1 in the BTC-E server, and "dev" being the only BTC-E user account linked to the "loopback" IP address 127.0.0.1…the author has reason to believe only VERNER had root access to the BTC-E server and maintained root access since the creation of BTC-E.***

Please produce the <u>entire</u> internal document drafted by IRS SA Gary Alford in addition to all records of investigations related to BTC-e that form the basis of former Special Agent Alford's conclusion that "only Verner had root access to the BTC-e server" and that Verner was an owner or operator of BTC-e who "remove[d] IP addresses" to "avoid being identified."

2

Additionally, the following matters from our prior discovery letters have still not been addressed by your office:

1. You have asserted that Agents Jeong and Chamberlain may testify as fact and expert witnesses. Their disclosure asserts that they will testify about their review of Equinix information and servers, their review of BTC-e servers and their logs, contents, organization and databases, administrative rights, and more, their evaluation of xBTCe, among many other tasks they completed. We do not have a single report prepared by Agent Jeong or Agent Chamberlain. We have no information as to what actual work and review they did. Please produce the underlying reports.

2. You have asserted that Agent Rovenksy may testify as fact and expert witnesses. His disclosure asserts that he will testify about his investigation and into and analysis of BTC-e's flow of funds, financial activity, emails, his calculations, and more. Yet we do not have a single report prepared by Agent Rovensky documenting his investigation. Please produce his underlying reports.

3. You have asserted that Agent Vlahakis investigated whether BTC-e registered with FinCEN and that BTC-e never submitted any reports to FinCen. We have no report documenting his investigation into BTC-e. Please immediately provide it.

4. You have asserted that Agent McGee may testify as both a fact and expert witness. With him as well, we have no reports documenting his fact-based work. His name appears nowhere in the discovery. Please immediately provide his reports.

Previously requested, but not produced (or responded to) include the following and are thus outstanding:

5. Unredacted copies of all redacted discovery (too many Bates numbers to list individually).

6. All of Alexander Vinnik's electronic communications on all devices seized.

7. Translations of all Skype, Signal, Jabber, and emails. Not all produced communications have accompanying translations.

8. All corporate and financial documents of BTC-e, Canton Business Corporation, Always Efficient.

9. With respect to Klimenka-00001732 – need associated report. It is unknown whose handwritten notes these are.

10. "Summary of Facts" referenced in Klimenka-00002286.

11. Results of all pen register/ trap and traces conducted or identification of which results correspond to which pen register authorizations

3

12. All communications, documents, and records between the U.S. government (any agency) and law enforcement, courts, or justice departments in New Zealand pertaining to the transfer of BTC-e and Vinnik's funds.

Also, the following documents are still <u>missing</u>:

- Klimenka-00111221-00111223 – missing

- Klimenka-00002205 – unclear we have results of this trap and trace

- Klimenka-00002286 – summary missing

- Klimenka-00013213 – needs clarity on who wrote this and what it relates to

- Klimenka-00110968 – missing referenced Vinnik native files

- Klimenka-00132342 – missing associated native files

- Klimenka-00136150 – missing associated native file

- Klimenka-00136241 – missing associated native file

- Klimenka-00136242 – missing associated native file

- Klimenka-00138236 – missing email attachment

- Klimenka-00138552 – missing

The additional language from our prior three letters concerning general discovery categories is incorporated herein.  If you have any questions or concerns, please contact us. Thank you for your attention to this matter.

Sincerely,
/jmj/

Julia Mezhinsky Jayne
Paul Verner
Carlos Ortiz
Dan Olmos

4

*United States v. Klimenka*
Case No. 3:22-cr-00256-SI

**MOTION TO COMPEL DISCOVERY**

# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*11ᵗʰ Floor, Federal Building*                    *(415)436-7200*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*                    *FAX: (415)436-7234*

July 26, 2025

**[BY EMAIL]**

Julia Jayne
julia@jaynelawgroup.com

Paul Verner
pwverner@vernerlaw.com

Carlos Ortiz
cortiz@bakerlaw.com

Daniel Olmos
dolmos@nbo.law

    Re:  <u>**United States v. Klimenka**</u>
        **CR 22-00256 SI**

        **RE: DISCOVERY**
        **SENSITIVE**

Dear Defense Counsel:

We are writing in response to your letter dated July 14, 2025.  As a preliminary matter, we strongly dispute your characterization of the information provided pursuant to the government's June 30, 2025 disclosure letter.  In order to continue a productive dialogue and attempt to work collaboratively toward a fair and timely trial, we provide the following:

1. Regarding your request for the "entire internal document drafted by IRS SA Gary Alford," which we understand to be a reference to the May 11, 2018 internal document that was excerpted in the government's June 30, 2025 disclosure, we maintain that the full document – which is an internal, deliberative document prepared for the purposes of informing decisions in a separate, sensitive, open criminal case worked by an independent prosecution team in another District – is not subject to discovery in Mr. Klimenka's matter.  However, in the interest of avoiding unnecessary litigation, we are continuing to discuss this with you separately and hope to come to a resolution.

2. Regarding your self-styled "demand" that the government engage in a fishing expedition of unprecedented scale by polling "colleagues in all federal districts throughout the country" to review untold thousands of case files for any passing references to BTC-e— not even limited to Klimenka, as your letter emphasizes—we are aware of no authority or

precedent for this sort of sweeping and paralyzing discovery demand. Other U.S. Attorneys' Offices and law enforcement agencies are not part of the prosecution team in this matter, and their case files are not in our possession. To be clear, where the government has information indicating that potentially discoverable information exists outside of the instant case file, the government has sought and obtained those records and produced them where appropriate. The discovery produced to date includes such information. This does not extend to every instance where someone happened to use BTC-e.

3. Regarding your request for reports from government witnesses Jeong, Chamberlain, Rovensky, and McGee, we have provided to you detailed witness disclosures and reports. We have also provided voluminous discovery of individual documents and pieces of evidence.

4. Regarding your request for additional work product of Mr. Vlahakis, you have misunderstood Mr. Vlahakis' testimony. Mr. Vlahakis was not a member of the investigative team. During his testimony, the government anticipates seeking to admit certified records from FinCEN that BTC-e was not registered with FinCEN and never submitted a suspicious activity report to FinCEN. We will provide you copies of these certified exhibits in advance of trial.

5. Regarding your request for "Unredacted copies of all redacted discovery (too many Bates numbers to list individually)": The government has made appropriate, limited redactions as needed, consistent with the terms of the Protective Order. If you have concerns with specific redactions, we are happy to review them. Demanding the general removal of all redactions is not helpful or productive.

6. Regarding your request for "All of Alexander Vinnik's electronic communications on all devices seized": The government has produced or made available to you Mr. Vinnik's devices.

7. Regarding your request for "Translations of all Skype, Signal, Jabber, and emails": We have produced to you numerous translations, both official and working copies. We anticipate making additional productions of translations prior to trial, consistent with the Court's pretrial scheduling order. Given the extensive volume of Russian language communications contained on the many electronic devices and accounts in this matter, it is not possible to translate every item.

8. Regarding your request for "All corporate and financial documents of BTC-e, Canton Business Corporation, Always Efficient": We have provided documentation to you, and will continue to provide any relevant documents in the government's possession.

9. Regarding your request for "Summary of Facts" referenced in Klimenka-00002286, we are following up on this and will get back to you shortly.

10. Regarding your request for "Results of all pen register/ trap and traces conducted or identification of which results correspond to which pen register authorizations": We are making an additional production to you of PRTT data from the BTC-e server, to supplement the prior productions. The data is saved to a hard drive; please advise whether you would like to have the drive shipped or picked up in San Francisco.

11. Regarding your request for "All communications, documents, and records between the U.S. government (any agency) and law enforcement, courts, or justice departments in New Zealand pertaining to the transfer of BTC-e and Vinnik's funds": The government

has provided in discovery responsive documents that were obtained from New Zealand, but disputes the general discoverability of all communications between the U.S. government and New Zealand authorities. Nonetheless, we have identified several additional messages that we will provide to you.

12. Regarding your request pertaining to Klimenka-00001732: This document was also produced to you, alongside its associated report, as KLIMENKA-00153670 in the April 4, 2025 production.

13. Regarding your request pertaining to Klimenka-00111221-00111223: This document is not discoverable.

14. Regarding your request pertaining to Klimenka-00002205, we are following up on this and will get back to you shortly.

15. Regarding your request pertaining to Klimenka-00013213: Could you please confirm that your question pertains to a file named "ATC-T-T" beginning with the text "ANSWER TO QUESTION"? This file was produced at KLIMENKA-00156356 as part of a small set of documents (KLIMENKA-00156356 to KLIMENKA-00156364) that were sent to a member of the case team in or around December 2018 by a foreign-based individual seeking to provide information to the U.S. government.

16. Regarding your request pertaining to Klimenka-00110968, we are following up on this and will get back to you shortly.

17. Regarding your request pertaining to Klimenka-00132342 and Klimenka-00136150: These were duplicate entries for a document entitled "NETELLER_Merchant_Application_Form_1603". We are re-producing this document to you.

18. Regarding your request pertaining to Klimenka-00136241: This file was produced at Klimenka-00136146.

19. Regarding your request pertaining to Klimenka-00136242: This file was produced at Klimenka-00136149.

20. Regarding your request pertaining to Klimenka-00138236: We have re-pulled this attachment and will provide it to you.

21. Klimenka-00138552: This is the Bates number for the hard drive that was sent to you in the July 31, 2024 discovery letter.

Please do not hesitate to contact us if you have any questions.

Very truly yours,

CRAIG H. MISSAKIAN
United States Attorney

/S/
RYAN ARASH REZAEI
Assistant United States Attorney
CATHERINE A. PELKER
JONAS LERMAN
CLAUDIA QUIROZ
Trial Attorneys
Department of Justice

***United States v. Klimenka***
**Case No. 3:22-cr-00256-SI**

**MOTION TO COMPEL DISCOVERY**

# EXHIBIT D



NOLAN
BARTON
OLMOS &
LUCIANO LLP

August 28, 2025

*SENT VIA EMAIL*

Claudia Quiroz
Alden Pelker
Jonas Lerman
Ryan Rezaei
Assistant United States Attorneys
Northern District of California
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102

     Re:    *United States v. Aliaksandr Klimenka*, Case No. 22-256 SI

Dear Counsel:

On behalf of Mr. Klimenka, this letter responds to our August 11, 2025, meet and confer
concerning the government's July 26, 2025, response to our discovery letter dated July 14, 2025.
We are making this formal request for all discovery under Rule 16 of the Federal Rules of
Criminal Procedure, as well as all discoverable materials under other statutes and case law,
including *Brady*, *Giglio*, and *Jencks* (18 U.S.C. § 3500).

The memorandum prepared by IRS Agent Gary Alford that the government provided to the
defense on August 1, 2025, refers to information that is materially exculpatory to Mr. Klimenka
and the government's allegations against him, as well as other discoverable information.  The
government is now aware of this material – because the defense made it aware on or about May
15, 2025 – and its disclosure obligations under *Brady*, *Giglio*, and Rule 16 plainly extend to it.

The fact that the information was generated in a separate investigation, or by a different agency,
does not relieve the prosecution team of its constitutional and statutory duties to disclose it to the
defense once it has been placed on notice of its existence. The Supreme Court has made clear
that the prosecution's duty to disclose favorable evidence extends to material "known to others
acting on the government's behalf in the case."  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). This
principle encompasses other investigative agencies once the prosecution is on notice of the
material's existence, regardless of whether that agency was part of the original investigation.
*See, e.g.*, *U.S. v. Price*, 566 F.3d 900, 909 (9th Circ. 2009) ("[T]he prosecution has a duty to learn
of any exculpatory evidence known to others acting on the government's behalf.  Because the
prosecution is in a unique position to obtain information known to other agents of the
government, it may not be excused from disclosing what it does not know but could have
learned.").

THOMAS J. NOLAN (1945 - 2021) | DANIEL L. BARTON | DANIEL B. OLMOS | TRISHA D. LUCIANO
HUAN-TING WU | CHRISTOPHER WHELESS | ABBEE COX | EVAN GREENBERG
600 UNIVERSITY AVENUE, PALO ALTO, CALIFORNIA 94301 | 650.326.2980 | WWW.NBO.LAW



Because defense counsel learned of the exculpatory evidence at issue here by sheer coincidence, we request that, now that you are on notice that exculpatory information does exist in other investigations, that at the very least a request be made to other government agencies and U.S. Attorney Offices to determine if their files contain similar exculpatory information. A simple request is not unduly burdensome, and is not a fishing expedition as we now know this information does exist.

Likewise, Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the production of documents and data "within the government's possession, custody, or control" that are material to preparing the defense. "Possession" under Rule 16 includes information the prosecution team has knowledge of and can obtain upon request from another government agency. *See*, *e.g.*, *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).

Accordingly, we request immediate production of the underlying materials referred to in Gary Alford's memorandum, and upon which he expressly relies in forming the conclusions in the memorandum, including but not limited to:

1. The transcript of the deposition of Jed McCaleb referred to in paragraph 1 of the memorandum.

2. The affidavit of Chris Raggio referred to in paragraph 3 of the memorandum.

3. All communications between Alexey Bilyuchenko and Aleksandr Verner.

4. The Mt. Gox server data referred to in the "Intel" note to paragraph 8 of the memorandum.

5. All records related to the ICQ account for BTC-e (610112128).

6. All records related to the "btc-e.com" and "smallarena" accounts on the Bitcointalk discussion forum.

7. All records related to the Gmail account of Mark Karpeles.

8. The Chainalysis July 2015 report referred to in paragraph 32 of the memorandum.

9. All reports prepared by Kim Nilsson.

10. All records provided by Aleksandr Verner to Mt. Gox.

11. All verification documents provided by WME to Mt. Gox, including passport photos and invoices.



12. All records related to server hosting services provided by Interserver to BTC-e.

13. The passport photos for Dmitri Svetleishi that were sent to Mt. Gox to verify the "btc-e" account.

14. All records related to Charlie Shrem and Bitinstant, including but not limited to Bitinstant's contract with BTC-e, all records related to financial transactions between Bitinstant and BTC-e, and all communications between Charlie Shrem, Aleksandr Verner, and Alexey Bilyuchenko.

15. All records related to Bitcointalk forum posts by BTC-e.

16. All records related to Aleksandr Verner's "ne0shik" social media account on VK.com.

17. All records related to wallet "001d72cc6c".

18. All records related to Eurostyle Advisor Ltd.

19. All records related to Asomar Investments Limited.

20. All records related to Canton Business Corp.

21. All records related to btc.penek.org and the "penek" profile on Bitcointalk.

22. All records related to paxum.com.

23. All records related to the BTC-e customer trading bot feature.

24. All records related to the BTC wallet.dat file stolen or copied from Mt. Gox on September 11, 2011.

25. All records related to BTC-e user ID 16878.

26. The employment contract entered into between Aleksandr Vinnik and Stanislav Golovanov. This document is referred to in paragraph 144 of the memorandum.

27. All records related to Alexey Bilyuchenko's application for a tourism visa to enter the United States, submitted on approximately February 19, 2013.

28. All records related to Tootingstone Consult LLP.

29. All records related to Fairplay Finance Limited.

THOMAS J. NOLAN (1945 - 2021) | DANIEL L. BARTON | DANIEL B. OLMOS | TRISHA D. LUCIANO
HUAN-TING WU | CHRISTOPHER WHELESS | ABBEE COX | EVAN GREENBERG
600 UNIVERSITY AVENUE, PALO ALTO, CALIFORNIA 94301 | 650.326.2980 | WWW.NBO.LAW



30. All records related to the Bitstamp accounts in the name of Stanislav Golovanov and Alexander Buyanov.

31. All Cloudflare records related to BTC-e logins.

32. All records that form the basis for Gary Alford's opinion that Aleksandr Verner "edited the logs to the 'dev' profile (i.e. BTC-E 'logs' and 'chat' logs) to remove IP addresses connected to [Aleksander Verner] to avoid being identified."

33. All records that form the basis for Gary Alford's opinion that, after the BTC-e site was temporarily taken down pursuant to the NDCA investigation, "the BTC-E operators became increasingly wary due to this unusual service interruption."

34. All records that form the basis for Gary Alford's opinion that a review of a Russian language Bitcointalk discussion on 8/25/2017, created by "BTC-E ҮΔURε!" (BTC-E FACTS) enabled him to identify, with other evidence, who really were the owner/operators of BTC-E as opposed to VINNIK.

35. All records related to Aleksandr Verner's Instagram account "ashot_shaitan".

36. All records related to Boris Gizbrekht's travel to New Jersey in July and August of 2016, to help set up the BTC-e server infrastructure in the Equinix datacenter.

37. All records related to Aleksandr Verner's WhatApp account, including any messages sent or received by Aleksandr Verner.

38. All records related to the Bitcointalk discussion thread named "BTC-e Facts".

39. All records related to Aleksandr Verner's German visa, valid from December 22, 2017, to January 22, 2018.

40. All records related to BTC-e accounts referred to in the memorandum, including but not limited to the following accounts:
    a. ac13
    b. admin
    c. bitbuy
    d. bitmarket
    e. btmarket
    f. chilli
    g. coinapult
    h. colorprint



NOLAN
BARTON
OLMOS &
LUCIANO LLP

i.   del

j.   dev

k.   grmbit

l.   guitarist

m.   havamal

n.   integ

o.   intesting

p.   karabo

q.   michs

r.   mrnedano

s.   murasha

t.   penek

u.   prgm2001

v.   prizrak73

w.   petr

x.   rd9000

y.   russian

z.   starbreeze

aa.  starik69

bb.  support

cc.  test

dd.  vamnedam

ee.  wme

ff.  zarovsky

gg.  zopa

41. All records related to the email addresses referred to in the memorandum, including but not limited to the following addresses:

a.   aleksebil@gmail

b.   bitmarket@bitmarke.com

c.   btcexinfo@yandex.ru

d.   btc_e@yahoo.com

e.   btmarket@gmail.ru

f.   casinonsk@gmail

g.   casinonsk@ngs.ru

Thomas J. Nolan (1945 - 2021) | Daniel L. Barton | Daniel B. Olmos | Trisha D. Luciano
Huan-ting Wu | Christopher Wheless | Abbee Cox | Evan Greenberg
600 University Avenue, Palo Alto, California 94301 | 650.326.2980 | www.nbo.law



  h. fit@teamamericany.com

  i. golovanov.stas@gmail

  j. leander55@freemail.hu

  k. mail@regname.biz

  l. mmjpx@mail.ru

  m. ne0n24r@gmail.com

  n. ne0nhs@gmail.com

  o. ne0npro@bk.ru

  p. ne0ntest@bk.ru

  q. partners@btc-e.com

  r. sashan5674@bk.ru

  s. smallarena@gmail

  t. smallarena@ngs.ru

  u. support@btc-e.com

  v. vasiliy.sidorov.msk@gmail

  w. vasyasdrv4@gmail

  x. yuri.karabo@yandex.ru

  y. zopa@nazope.com

42. All records related to IP addresses referred to in the memorandum, including but not limited to the following addresses:

  a. 66.45.247.94

  b. 80.64.175.20

  c. 82.131.255.10

  d. 83.239.187.182

  e. 89.189.191.20

  f. 91.189.181.119

  g. 94.73.239.68

  h. 94.73.247.33

  i. 94.73.249.33

  j. 94.76.213.136

  k. 94.76.213.146

  l. 95.168.210.229

  m. 107.21.240.239

  n. 108.162.200.186



    o.  127.0.0.1

    p.  148.251.75.200

    q.  171.33.251.33

    r.  178.177.128.36

    s.  190.93.248.44

    t.  194.186.7.46

    u.  206.72.206.67

43. All records related to the Skype accounts referred to in the memorandum, including but not limited to the following accounts:

    a.  alex.sokol.ru

    b.  bitmarket

    c.  btc-e.com

    d.  btc-e.support

    e.  cshrem90

    f.  ne0n

44. All records related to Mt. Gox accounts referred to in the memorandum, including but not limited to the following accounts:

    a.  baron

    b.  btc-e

    c.  casinonsk

    d.  gur6qSGgzLSF

    e.  mtgoxrulez

    f.  neoshik

    g.  neoshka

    h.  ne0n

    i.  ne0n24

    j.  ne0shka

    k.  sashan

    l.  sicret_helen

    m.  unplugged

    n.  wme

45. All records related to Liberty Reserve accounts referred to in the memorandum, including but not limited to the following accounts:



      a. U0028265

      b. U1973257

      c. U3045092

      d. U3622618

      e. U3693188

      f. U6238674

      g. U7635043

      h. U8227430

46. Any information suggesting that BTC-e did not require a money transmitter license or that the operators of BTC-e did not believe that it required such a license, including but not limited to communications with the Treasury Department or FinCEN.

We understand that some portions of this discovery have already been disclosed to the defense. This request is limited to the above categories of information only insofar as they have not already been produced.

Finally, we are requesting permission to interview Special Agent Gary Alford regarding his May 11, 2018, memorandum, and his investigation of BTC-e, Aleksandr Verner, and Alexey Bilyuchenko. We anticipate calling SA Alford as a witness at trial, and therefore also request that you ensure that he is available as a defense witness for trial.

Given the nature of the requested information—materially exculpatory and directly relevant to the charges in this case—further delay in its production is unacceptable. The defense should not be forced to litigate for discovery that the law plainly requires the government to provide.

Additionally, to adequately analyze this information to prepare for trial, we request the ability to disclose this information to defense experts and with our client. Of course they have previously signed the protective order and will remind them of their continuing obligations prior to receiving this information.

Please confirm by September 12, 2025, that you will produce the requested materials or, if you believe any portion is exempt from disclosure, identify with specificity the legal basis for withholding it. If we do not receive the materials or a satisfactory response by that date, we will seek appropriate relief from the Court.

//
//
//
//
//





Very truly yours,

NOLAN BARTON OLMOS & LUCIANO LLP

_____
Daniel Olmos


Cc: Christopher Wheless, Paul Verner, Carlos Ortiz, Julia Jayne, and Aleksey Pricinovskis

Thomas J. Nolan (1945 - 2021) | Daniel L. Barton | Daniel B. Olmos | Trisha D. Luciano
Huan-ting Wu | Christopher Wheless | Abbee Cox | Evan Greenberg
600 University Avenue, Palo Alto, California 94301 | 650.326.2980 | www.nbo.law

*United States v. Klimenka*
**Case No. 3:22-cr-00256-SI**

**MOTION TO COMPEL DISCOVERY**

# EXHIBIT E



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

*11th Floor, Federal Building*                    *(415)436-7200*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*                    *FAX: (415)436-7234*


September 16, 2025

**[BY EMAIL]**

Julia Jayne
julia@jaynelawgroup.com

Carlos Ortiz
cortiz@bakerlaw.com

Aleksey Pricinovskis
apricinovskis@bakerlaw.com

Daniel Olmos
dolmos@nbo.law

Chris Wheless
cwheless@nbo.law

Paul Verner
pwverner@vernerlaw.com


      Re:    <u>**United States v. Klimenka**</u>
             **CR 22-00256 SI**

             **RE: Discovery**

Dear Counsel:

      We are writing in response to your letter dated August 28, 2025.  This is the latest in a series of letters and conversations between the parties regarding materials contained in the Southern District of New York's Mt. Gox hack case file.  That matter, of which Mr. Klimenka was not a target, is and always has been separate from the Northern District of California BTC-e case.  We have been and remain committed to engaging with you in good faith to resolve any remaining discovery disputes in advance of trial, including where appropriate by producing information above and beyond that which is required by law or policy.  To that end, over the past months we have coordinated with the U.S. Attorney's Office in the Southern District of New York to obtain and produce materials that you believed might be relevant to your case, though in doing so we did not concede their relevance or discoverability.

However, your latest request—a laundry list of 147 items, which appears by your own description to include any document with a mere passing reference in a comprehensive Southern District of New York case summary memo—goes far beyond materials which could be even arguably discoverable in Mr. Klimenka's matter.  Notably, the list includes the records and communications of uncharged third parties who are not related to BTC-e or Mr. Klimenka.  You are, in essence, asking for full-file discovery of a completely separate criminal case.

Put plainly, your August 28, 2025 request does not appear to be a good-faith effort to seek out information the defense actually believes to be material to Mr. Klimenka's instant case. Your letter offers no specific explanation for the relevance or discoverability of any of the materials sought, other than observing that they are referenced in Special Agent Alford's memorandum, which pertains to a separate criminal case and a separate matter. You have articulated no legal or factual basis for your sweeping demand, as none exists.

The government does not see or concede the relevance or materiality of the information that you are requesting.  As it currently stands, the August 28, 2025 list suggests to the government that the defense is more interested in manufacturing discovery disputes than actually obtaining evidence that the defense reasonably believes could actually be used in Mr. Klimenka's defense at trial.  Please provide an explanation of the alleged relevance and discoverability of *each* of the materials sought in your letter.  So that we can have a productive dialogue, we encourage you to tailor your response to documents that are actually in dispute— i.e., which have not already been produced to you[1]—and for which you can articulate a specific basis for the items' materiality and discoverability.  The government does not concede that the defense can meet even this base threshold showing for any of the additional documents requested in your letter, but we remain open and willing to continue engaging with you on the matter.

Regarding your request to disclose protected information to experts—presumably referring to information currently subject to the Attorneys' Eyes Only (AEO) Protective Order— please specify which records you seek to disclose to which experts, and explain why you believe their review of the specified material(s) is necessary for Mr. Klimenka's effective defense notwithstanding the significant sensitivities which gave rise to the need for the AEO protections.

Regarding your request for testimony from IRS SA Gary Alford, we are working internally to ascertain the appropriate U.S. Government *Touhy* official to which to direct your request.

---

[1] As your letter recognizes, some of the material enumerated in your request was already provided to you in discovery.  Going forward, please endeavor to limit your discovery requests to information that has not already been produced to you, to avoid expending unnecessary resources on both sides discussing items that are not in dispute.

Sincerely,

CRAIG H. MISSAKIAN
United States Attorney

/s/
_____
RYAN ARASH REZAEI
Assistant United States Attorney
CATHERINE A. PELKER
JONAS LERMAN
CLAUDIA QUIROZ
Trial Attorneys
Department of Justice