1  CRAIG H. MISSAKIAN (CABN 125202)
   Acting United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  LLOYD FARNHAM (CABN 202231)
   Assistant United States Attorney
5  C. ALDEN PELKER (MD)
   Trial Attorney
6  Computer Crime & Intellectual Property Section
   United States Department of Justice
7
        450 Golden Gate Avenue, Box 36055
8       San Francisco, California 94102-3495
        Telephone: (415) 802-4637
9       loyd.farnham@usdoj.gov
        catherine.pelker@usdoj.gov
10
   Attorneys for United States of America
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 22-00256 SI |
|---|---|
| Plaintiff, | ) |
| | ) UNITED STATES' OPPOSITION TO |
| v. | ) DEFENDANT'S MOTION TO COMPEL |
| | ) DISCOVERY |
| ALIAKSANDR KLIMENKA, | ) |
| | ) |
| Defendant. | ) |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................5

II. RELEVANT BACKGROUND .....................................................................................................5

    A. The NDCA Prosecution of BTC-e ..................................................................................5

    B. The SDNY Investigation of the Mt. Gox Hack ...............................................................6

    C. SA Alford Outreach and SDNY Discovery ....................................................................7

    D. Agent Gambaryan Chat ....................................................................................................8

    E. The SDNY Mt. Gox Hack Charging Memo ....................................................................9

    F. July 14 Defense Demand .................................................................................................9

    G. July 26 and August 1 Government Response .................................................................9

    H. Letter Rogatory Meet-and-Confer .................................................................................10

    I. August 28 Defense Response.........................................................................................10

    J. September 16 Government Response ............................................................................10

    K. Defense Declines to Engage Further..............................................................................11

III. LEGAL STANDARD .................................................................................................................11

    A. Discovery Obligations Generally...................................................................................11

    B. Possession and Access ...................................................................................................13

IV. ARGUMENT ..............................................................................................................................14

    A. Klimenka Fails to Make a *Prima Facie* Showing of Materiality......................................14

    B. Lack of Reference to Klimenka in SDNY Case File is Not *Brady*, and Does Not Warrant Production of Full SDNY Case File ...............................................................15

    C. Gambaryan Chat Does Not Indicate There is Further Discoverable Information in the SDNY Case File...............................................................................16

    D. The Government Has Already Produced Evidence Regarding Verner's Server Access ..............................................................................................................................16

    E. Complying with the Defense's Overbroad Request Would Be Highly Burdensome, Particularly Given Limitations on NDCA's Ability to Access and Search SDNY Case Materials ...........................................................................................17

    F. The Court Should Follow the NDCA Practice of Rejecting Requests for Gratuitous "*Brady*" Orders" ............................................................................................18

V. CONCLUSION............................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1969) ............................................................................................ 11

*Downs v. Hoyt*, 232 F.3d 1031 (9th Cir. 2000) ................................................................................. 11

*Gist v. United States*, No. 16-CR-656-6 (GHW), 2021 U.S. Dist. LEXIS 159850, 2021 WL 3774289 (S.D.N.Y. Aug. 24, 2021) ............................................................................................................. 13

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................................................................. 11

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) .............................................................................. 12, 14

*United States v. Alahmedalabdaloklah*, 94 F.4th 782 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 770, 220 L. Ed. 2d 272 (2024) ............................................................................................................. 12

*United States v. Anderson*, 481 F.2d 685 (4th Cir. 1973) ................................................................ 11

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998) ................................................................... 12

*United States v. Avenatti*, No. 19-CR-374 (JMF), 2022 U.S. Dist. LEXIS 28472 (S.D.N.Y. Feb. 15, 2022) ............................................................................................................................................. 13

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) .............................................................. 11, 12

*United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984) .............................................................. 10, 13

*United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019) ............................................................... 11, 17

*United States v. Cloud*, 102 F.4th 968 (9th Cir. 2024) .................................................................... 12

*United States v. Flores*, No. CR 08-0730 WHA, 2011 U.S. Dist. LEXIS 155061 (N.D. Cal. Mar. 24, 2011) ............................................................................................................................................. 17

*United States v. Jennings*, 960 F.2d 1488 (9th Cir.1992) ................................................................ 18

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) ............................................................... 13, 14

*United States v. Lucas*, 841 F.3d 796 (9th Cir. 2016) .......................................................... 11, 12, 14

*United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990) ...................................................... 10, 11, 14

*United States v. Mincoff*, 574 F.3d 1186 (9th Cir. 2009) ................................................................ 11

*United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-TEH, 2016 U.S. Dist. LEXIS 75467, (N.D. Cal. June 8, 2016) ........................................................................................................................ 17, 18

*United States v. Salyer*, 271 F.R.D. 148 (E.D. Cal. 2010) .............................................................. 11

*United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995) ................................................................... 10

*United States v. Shetty*, No. 2:23-cr-00084-TL, 2025 LX 284143 (W.D. Wash. Jan. 30, 2025) ............. 14

*United States v. United States Dist. Court*, 717 F.2d 478 (9th Cir. 1983) ....................................... 10

*United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2019 U.S. Dist. LEXIS 115764, (N.D. Cal. July 11, 2019) ............................................................................................................................... 11

*Weatherford v. Bursey*, 429 U.S. 545 (1977) ................................................................................... 10

3
U.S. OPP. TO DEF.'S MOT. TO COMPEL DISCOVERY                                    CR 22-00256 SI

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 10

Fed. R. Crim. P. 16 ............................................................................................................... 10

## I.   INTRODUCTION

Defendant Aliaksandr Klimenka brings a motion to compel the prosecutors in this case to obtain, review, and turn over large amounts of information from the investigative file of a separate case pending in a separate U.S. Attorney's office. The motion should be denied for several reasons. First, Klimenka prematurely moves the Court to compel discovery, after declining to further meet and confer with the government, and even though the government has and would continue to seek any information obtained in the other investigation that is actually in any way material to the defense. Second, Klimenka stretches to the breaking point one text exchange between investigating agents to claim that the investigation in the other district somehow "concluded" that Klimenka had no control over or involvement in BTC-e. Klimenka's motion misconstrues a criminal investigation by the Southern District of New York concerning the hack of the Mt. Gox cryptocurrency exchange—a distinct investigation, separate from the Northern District of California' case against BTC-e and its operators—as an investigation into the identity of all those responsible for the illegal activities of BTC-e. Third, the motion should be denied because even before the government learned of IRS-CI Special Agent Alford's outreach to defense counsel, the government took diligent efforts to identify any potentially discoverable material in the SDNY case file and already produced materials to Klimenka. It is unreasonable for Klimenka to demand what is essentially a production of the entire case file from the SDNY investigation, materials to which the NDCA prosecutors do not have direct and unfettered access. Klimenka does not make an adequate showing on the materiality of the additional materials requested. Klimenka further seeks an order from this Court instructing the government as to its *Brady* obligations. The Court should deny both aspects of Klimenka's motion.

## II.   RELEVANT BACKGROUND

### A.   The NDCA Prosecution of BTC-e

In July 2022, a grand jury in the Northern District of California (NDCA) returned a two-count indictment charging Klimenka with operation of, and aiding and abetting the operation of, an unlicensed money transmitting business under 18 U.S.C. §§ 1960 and 2 (Count One) and conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count Two). ECF No. 1. On the same day, the grand jury also returned an indictment charging Alexei Biluchenko, aka Alexsey Bilyuchenko, with the same

offenses. *See U.S. v. Alexei Biluchenko,* 22-cr-255, ECF No. 1. These indictments followed the 2017 superseding indictment of Alexander Vinnik, another BTC-e operator. *U.S. v. Alexander Vinnik*, 16-cr-227, ECF No. 6. As alleged, between 2011 and July 2017, Klimenka, Bilyuchenko, Vinnik, and others conspired to operate BTC-e, a digital currency exchange that facilitated transactions for cybercriminals worldwide, including hackers, ransomware rings, fraudsters, corrupt public officials, and narcotics-distribution networks. Klimenka was arrested in Latvia in December 2023, extradited to the United States, and is now pending trial in the instant matter.

The NDCA investigation was a multi-year, multi-agency investigation which sought to unmask the individuals who, through the operation of BTC-e, facilitated cyber crime on a massive scale. It was not an investigation into the many underlying hacks, frauds, and drug deals; rather, it sought to hold responsible the people who provided the financial infrastructure that made all of that crime possible. One of the investigators on the NDCA investigation was IRS Special Agent Tigran Gambaryan of the IRS Cyber Crime Unit in Washington, D.C. Unsurprisingly, this investigation resulted in the collection of large amounts of data and information about BTC-e, and the government has produced voluminous discovery to Klimenka.

B. **The SDNY Investigation of the Mt. Gox Hack**

Separately, the Southern District of New York (SDNY) investigated the hack and theft of funds from Mt. Gox, another cryptocurrency exchange, which began in 2011. As a result of that investigation, in 2019, a grand jury in the Southern District of New York returned an indictment charging Aleksandr Verner and Alexey Bilyuchenko with conspiracy to commit money laundering. *U.S. v. Verner and Bilyuchenko*, 19-cr-936 (S.D.N.Y.). According to the SDNY Indictment, "In or about September 2011, ALEKSANDR VERNER AND ALEXEY BILYUCHENKO, the defendants, and their co-conspirators (the "Hackers") gained and caused others to gain unauthorized access to the Mt. Gox server in Japan." *U.S. v. Verner and Bilyuchenko*, 19-cr-936 (S.D.N.Y.), ECF No. 3 (Indictment) at 3. The indictment explains that "the Hackers were able to cause Bitcoins to be transferred at will from Mt. Gox's wallets to Bitcoin addresses controlled by VERNER, BILYUCHENKO, and their co-conspirators." *Id.* The SDNY indictment further states that between September 2011 through at least May 2014, Verner and Bilyuchenko "conducted numerous financial transactions in furtherance of the scheme to steal Bitcoins

from Mt. Gox." *Id.* at 4. The indictment describes laundering that Verner and Bilyuchenko conducted through two online Bitcoin exchanges, identified as "Exchange-1" and "Exchange-2" in the Indictment, as well as their use of a fraudulent contract with a company in SDNY to conceal and launder the hack proceeds. *Id.* at 4-5. BTC-e is Exchange-1. The SDNY case yielded evidence that Verner and Bilyuchenko created and operated BTC-e, but the investigation did not seek to exhaustively identify all individuals and entities involved in BTC-e.

The Mt. Gox hack and efforts to launder the funds were highly sophisticated. The SDNY investigation spanned years and amassed voluminous complex and technical evidence. The SDNY team included the FBI New York Field Office and the IRS New York Field Office. One of the investigators on the SDNY investigation was IRS Special Agent Gary Alford.

### C.    SA Alford Outreach and SDNY Discovery

In or around spring 2025, IRS Special Agent Gary Alford—a former IRS case agent on the SDNY Mt. Gox matter who was not involved in the NDCA case and does not have access to the NDCA case file—formed an opinion that the SDNY investigative case file contained materials that could be relevant in Mr. Klimenka's case. SA Alford contacted defense counsel as well as the NDCA prosecutors[1] to share this assessment. After being alerted to SA Alford's assertion, the government promptly reached out to SDNY to attempt to identify any exculpatory materials that might exist within the SDNY case file. This process began shortly *before* the government was contacted by defense counsel.

SA Alford provided an initial set of documents to NDCA. Following additional conversations between NDCA and SDNY, the set of documents was further supplemented, including through a search for any references to Klimenka found in the SDNY case file.[2] The bulk of the materials identified by SA Alford were not exculpatory and may be the result of a fundamental misunderstanding by SA Alford of the NDCA case, of which he is not a part and is thus not privy to the scope of evidence obtained or the

---

[1] Herein, "NDCA prosecutors" includes counsel from the Computer Crime & Intellectual Property Section of the U.S. Department of Justice's Criminal Division, who are partnered with the Northern District of California on this matter.

[2] Out of an abundance of caution, the government has provided additional Klimenka identifiers to SDNY and requested that they determine whether there are any additional references in their case file. If discoverable materials are identified and provided to NDCA counsel, the government will produce them to defense counsel.

discovery provided. Nonetheless, the government turned these materials over to defense out of an abundance of caution. The produced SDNY materials included, *inter alia*, search warrant affidavits, emails, chat messages, travel records, and search warrant review notes generated by SA Alford in the course of his part of that investigation.

### D. Agent Gambaryan Chat

One of the items that the government identified and provided to Klimenka was a short July 2018 chat conversation between SA Alford and NDCA case team member SA Tigran Gambaryan discussing the ongoing investigation of Wex, a cryptocurrency exchange that was the continuation of BTC-e. The self-identified CEO of Wex, Dmitri Vasilev, was indicted in NDCA on the same day as Klimenka and Bilyuchenko and currently has a pending criminal matter before this Court. *U.S. v. Vasilev,* 22-cr-257 (N.D. Ca.). At the end of the July 2018 chat, SA Alford asked SA Gambaryan, "Was [Person 1] also a WEX or BTC-E employee or just an associate of [Person 2]?" (Neither Person 1 nor Person 2 are Klimenka.) SA Gambaryan responded that "[Person 2] was not part of BTC-e | they just used his name for the … domain." SA Gambaryan then opined that BTC-e's "was ran [sic] by Admin, Dev, and Vinnik," with "no other real employees" and "oursources [sic] work here and there."

The government believes this chat was a product of imprecise wording in a casual conversation, but turned the chat over to the defense because it contained what could be viewed as a characterization of information SA Gambaryan had learned during his investigation of Wex and BTC-e. The government notes that the chat occurred in 2018, four years prior to Klimenka's indictment and before the government had reviewed the voluminous chats recovered from Alexander Vinnik's devices that show Klimenka extensively engaging with Vinnik, Bilyuchenko, and others regarding the operation of BTC-e—so any observations by SA Gambaryan were preliminary at best. Furthermore, earlier in the chat, SA Gambaryan advised, "this info is based on a high level employee at [Entity 1]," and proceeded to identify that individual's title. That individual was interviewed by the NDCA case team—including Gambaryan—in May 2018. The 302 for that entire interview was previously produced to Klimenka in discovery in October 2024. KLIMENKA-00153698-00153700 (SENSITIVE). The 302 states, "The old team who ran BTC-E included 'ADMIN', 'DEVELOPER', ALEXANDER VINNIK, and KLAMENKO (sp)." KLIMENKA-00153698. ("KLAMENKO" appeared to be a phonetic spelling from the Russian Cyrillic of Klimenka.)

8
U.S. OPP. TO DEF.'S MOT. TO COMPEL DISCOVERY                                   CR 22-00256 SI

The 302 further notes that "[PERSON X] thinks BTC-E only had a few employees." *Id*. In other words, in summarizing what was learned from the high-level employee at Entity 1, Gambaryan appears to have omitted that this witness also identified Klimenka as being someone who "ran" BTC-e.

E. **The SDNY Mt. Gox Hack Charging Memo**

SDNY provided to NDCA prosecutors a so-called "probable cause memo" drafted by SA Alford in May 2018 addressed to the SDNY AUSAs. The memo was titled "Probable Cause: VERNER & BILYUCHENKO" and consists of a 41-page detailed recitation of the evidence available to charge Verner and Bilyuchenko in SDNY's investigation **of the Mt. Gox hack**. The government did not concede the discoverability of the memo or waive any privileges attached to it. However, upon review, the government noted several short passages that included SA Alford's assessments regarding discrete items that the government recognized could be relevant to Klimenka and which might not otherwise be available or apparent through the production of the underlying documents alone. The government excerpted these portions and produced them to the defense. The excerpts produced to defense included sections pertaining to Verner's access to the "dev" account at BTC-e, as well as SA Alford's assessment that "only Verner had root access to the BTC-e server."

F. **July 14 Defense Demand**

On July, 2025, defense counsel sent a further discovery letter to the government. *See* ECF No. 157, Ex. B, at 17. The defense sought, among other things, "the <u>entire</u> internal document drafted by IRS SA Alford," referring to the charging memo. *Id.* at 18. The defense letter also stated, "We demand that you inquire with your colleagues in all federal districts throughout the country and produce all materials relating to BTC-e, including any records in the possession of the Department of Justice of foreign investigations into BTC-e." *Id.* at 17.

G. **July 26 and August 1 Government Response**

On July 26, the government responded to the defense letter. *See* ECF No. 157, Ex. C, at 22. With regard to the memo, the government noted, "we maintain that the full document – which is an internal, deliberative document prepared for the purposes of informing decisions in a separate, sensitive, open criminal case worked by an independent prosecution team in another District – is not subject to discovery

in Mr. Klimenka's matter. However, in the interest of avoiding unnecessary litigation, we are continuing to discuss this with you separately and hope to come to a resolution." *Id.*

In conferring with SDNY, the government had significant concerns regarding the production of a detailed internal case memo, particularly given that two SDNY charged defendants remain fugitives and the proposed dissemination was being made to a sprawling defense team in a separate case in a separate district. However, the government believed that by providing the full memo to defense counsel, defense counsel would be able to see that the memo was not exculpatory as to Klimenka and simply focused on the SDNY investigation into the Mt. Gox hack and preparations to charge Bilyuchenko and Verner. To that end, the government coordinated with SDNY and negotiated an Attorneys' Eyes Only protective order with the defense. The AEO Protective Order was entered on July 31, 2025, and the government provided the full memo the next day, on August 1, 2025.

**H.     Letter Rogatory Meet-and-Confer**

Government and defense counsel had a meet and confer on the Letters Rogatory and foreign depositions on August 11, 2025. At the end of the call, defense *sua sponte* raised in passing the discovery production. The government advised that if the defense had specific requests, it would be helpful for defense to explain what more they were looking for, and the government could take a look and let them know the government's position.

**I.     August 28 Defense Response**

On August 28, 2025, defense sent a letter seeking further discovery from the SDNY case file. *See* ECF No. 157, Ex. D, at 27. Instead of identifying files the defense had a particular interest in and explaining the basis for the request, the letter set out a laundry list of 147 categories of items (46 requests, many with scores of subparts and lists of categories of data), appearing to enumerate every item referenced in the SDNY memo. *Id.* at 28-34. Some of the materials described in the letter, such as records from the BTC-e server, were items that had already been produced in the NDCA discovery. The list also included the records and communications of uncharged third parties who are not related to BTC-e or Klimenka.

**J.     September 16 Government Response**

On September 16, the government responded to the defense August 28 letter. See ECF No. 157, Ex. E, at 37. The government voiced its concern that the latest defense demand "does not appear to be a

good-faith effort to seek out information the defense actually believes to be material to Mr. Klimenka's instant case," and observed that, "Your letter offers no specific explanation for the relevance or discoverability of any of the materials sought." Id. at 38.  The government asked the defense to provide an explanation of the alleged relevance and discoverability of the materials the defense sought, and noted, "we remain open and willing to continue engaging with you on the matter."  ECF No. 157, Ex. E at 38.

### K. Defense Declines to Engage Further

On October 17, defense counsel contacted the government by email and advised that they were finalizing a motion to compel discovery and inquired about a briefing schedule.  The government thanked defense counsel for reaching out to coordinate, but advised, "A briefing schedule seems premature, as I don't believe we have received a response to the government's September 16 letter."  Defense counsel responded on October 21, stating, among other things, "[W]e are not going to respond to your September 16 letter because it seems as if we are only treading water on the exculpatory discovery shortfalls which we identified as a result of the notice Gary Alford provided almost five months ago."

### III. LEGAL STANDARD

### A. Discovery Obligations Generally

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Federal Rule of Criminal Procedure 16 gives criminal defendants the right to inspect certain documents, data, or tangible items that are within the government's "possession, custody, or control"—but only if those documents are "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  This standard differs from the standard for civil discovery, where all non-privileged materials are discoverable as long as they are "relevant."  Fed. R. Civ. P. 26(b); *cf. United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984) (deeming request for "all relevant evidence" to be "inadequate" under Rule 16).

Under Rule 16, Klimenka bears the burden of making a "threshold factual showing of materiality" before he is entitled to discovery. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990); *United States v. United States Dist. Court*, 717 F.2d 478, 480 (9th Cir. 1983) ("Materiality is a necessary prerequisite to discovery."). Klimenka's showing must be based on "specific facts" that go "beyond allegations." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995); *see also Mandel*, 914 F.2d at

1219 ("conclusory allegations of materiality" do not suffice). "Without a factual showing there is no basis upon which the court may exercise its discretion, and for it to ignore the requirement [for defense to make a factual showing] is to abuse its discretion." *Mandel,* 914 F.2d at 1219. "[M]ere speculation about material in the government's files is not sufficient to merit production." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (internal quotation marks and citation omitted). Information is not material simply because the defendant wants it or speculates that it might help his defense. *See United States v. Lucas*, 841 F.3d 796, 808–09 (9th Cir. 2016).

This district has cited approvingly the Fourth Circuit's holding that that Rule 16 does not authorize "a shotgun fishing expedition for evidence." *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973) (*cited in United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2019 U.S. Dist. LEXIS 115764, at *24-25 (N.D. Cal. July 11, 2019)). *See also United States v. Salyer*, 271 F.R.D. 148, 158 (E.D. Cal. 2010) (denying Rule 16 motion where the defendant "simply desire[d] to look through a potentially massive amount of documents in different categories on the chance that something good might turn up for him in that production") (*cited in Wolfenbarger*, No. 16-CR-00519-LHK-1, at *24-25). "A federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [Rule 16]." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (*quoted in United States v. Cano*, 934 F.3d 1002, 1022-23 (9th Cir. 2019). *See also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy . . . .").

Under *Brady v. Maryland* and its progeny, "the government must disclose information favorable to the accused that 'is material either to guilt or to punishment.'" *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1969)). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). However, *Brady* "does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up." *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000). And the defense must still make a requisite materiality showing, as "*Brady* does not permit a defendant to sift through information held by the government to determine materiality." *Lucas*, 841 F.3d at 807 (*citing*

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987)). Materiality must be evaluated whether the *Brady* issue is raised pre- or post-conviction, though the pertinent considerations in conducting that evaluation may differ depending on the stage of the proceeding. *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024).

### B.     Possession and Access

The government's discovery obligations extend to all information in the government's "possession." In the Ninth Circuit, "[i]nformation is in the prosecutor's 'possession' if it is held by members of the prosecution team, such as investigating agents, or if it is held by other executive branch agencies and the prosecutor has 'knowledge of and access to' the evidence." *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 770, 220 L. Ed. 2d 272 (2024). *See also United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995) (finding that information is within the government's possession if the prosecution "has knowledge of and access to the documents"); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (the scope of the government's discovery obligation "should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case."). Generally, in the Ninth Circuit, "[t]he prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *Bryan*, 868 F.2d at 1036 .

While the Ninth Circuit case law controls this prosecution, the government here notes that the Second Circuit—whose case law controls the Southern District of New York—appears to take a less expansive view of the scope of the government's possession or knowledge when conducting a discovery analysis. That court of appeals has held that "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor," noting that, "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). The Southern District of New York thus would not view the Northern District of California as having open and unfettered access to the entirety of its files. *See, e.g., United States v. Avenatti,* No. 19-CR-374 (JMF), 2022 U.S. Dist. LEXIS 28472, at *27-

30 (S.D.N.Y. Feb. 15, 2022) (declining to extend *Brady* obligations to cover materials in the case file of another U.S. Attorney's Office's investigation); *Gist v. United States*, No. 16-CR-656-6 (GHW), 2021 U.S. Dist. LEXIS 159850, 2021 WL 3774289, at *16 (S.D.N.Y. Aug. 24, 2021) (concluding "the Government did not violate its Brady obligations" where it had not disclosed a report from another Department of Justice agency because it "was not in the possession of an arm of the prosecution").

## IV. ARGUMENT

### A. Klimenka Fails to Make a *Prima Facie* Showing of Materiality

For Klimenka's motion to succeed, the Court must determine that the requested 147 categories of items requested in Klimenka's August 28 letter are material to defending Klimenka in the instant prosecution. Klimenka's letters and motions offer no basis for the Court to make such a finding. To obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *see also United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984). Instead, Klimenka's discovery demand fails to articulate a basis for the Court to assess the alleged materiality of any of the items, much less the voluminous set of items encompassed within the 147 categories Klimenka seeks. Klimenka's arguments here are conclusory and speculative, relying on a mistaken and general assertion from SA Alford that the SDNY case file contains information that is exculpatory or relevant and that is not already part of the NDCA investigative file—an investigation he had no role in.

Indeed, apart from the Gambaryan chat message and the discussion of Verner's server access, which the government addresses further below, the government still does not know what the defense's theory of materiality is. The defense has articulated no factual basis—not in its initial discovery letters, not in its non-existent response to the government's September 16, 2025 letter *specifically inviting the defense to articulate its theory of materiality*, and not in Klimenka's instant motion with the Court. The defense asserted that the SDNY memo "refers to information that is materially exculpatory to Mr. Klimenka," but the defense did not identify what it thought that information was or how it was material or exculpatory. Klimenka repeatedly references two items—the Gambaryan chat message and the discussion of Verner's server access—that have *already been produced in discovery and which are not the subject of dispute.*

Repeatedly invoking the words "exculpatory" and "*Brady*," with no explanation as to how the information is in any way material to the defense claims, is insufficient. That is precisely the sort of "conclusory allegations of materiality" that the Ninth Circuit has repeatedly rejected. *See United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990); *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984). Nor can Klimenka argue in response that he needs to comb through these files to see if anything *might* be material or exculpatory—that would be precisely the sort of "sift[ing] through information held by the government to determine materiality" that the Ninth Circuit explicitly condemned in *Lucas*. *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (*citing Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987)) ("*Brady* does not permit a defendant to sift through information held by the government to determine materiality.").

Klimenka offers only bare conjecture that some information in the SDNY case file is somehow exculpatory, without any explanation of the materiality or exculpatory value of the 147 categories of items requested. Here, "ordering production by the government without any preliminary showing of materiality is inconsistent with Rule 16." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

**B.     Lack of Reference to Klimenka in SDNY Case File is Not *Brady*, and Does Not Warrant Production of Full SDNY Case File**

The defense vaguely suggests that the lack of focus on Klimenka in the SDNY case file in some way exonerates Klimenka or indicates he was not involved in BTC-e. But this is comparing apples to oranges. SDNY investigated the hack of Mt. Gox. The limited references to Klimenka in the case file simply reflect that Klimenka was not a target in SDNY's hack investigation.

Furthermore, to the extent that the fact that Klimenka was not a focus of the SDNY investigation is somehow exculpatory, that fact has already been disclosed to defense. The defense seeks to sift through the full contents of the SDNY case file to confirm that Klimenka is not present—but that would merely confirm what has already been provided to the defense. *See United States v. Shetty,* No. 2:23-cr-00084-TL, 2025 LX 284143, at *12 (W.D. Wash. Jan. 30, 2025) (permitting the government to provide factual summaries in lieu of voluminous underlying documentation where the government had determined that the factual summaries satisfied the government's discovery obligations, noting "the precise method by which the Government chooses to satisfy its Brady obligations is the responsibility of

the prosecutor to determine."). Obtaining SDNY's underlying files will not be helpful to the defense, and the defense has articulated no theory to the contrary.

### C. Gambaryan Chat Does Not Indicate There is Further Discoverable Information in the SDNY Case File

Klimenka's assertion that there might be *Brady* in the SDNY case file centers on a single chat message sent in 2018 from IRS SA Tigran Gambaryan to IRS SA Gary Alford. Klimenka twists this exchange beyond recognition, characterizing it as a finding by the SDNY case team that "no one else ran BTC-e." But SA Gambaryan was a member of the **NDCA** BTC-e case team—a fact that is well-known to Klimenka, as SA Gambaryan's name appears throughout the discovery. So, if there *were* any finding that the BTC-e admin team consisted of only Vinnik, Admin (Bilyuchenko), and Dev, **and no others**, it would be based on the NDCA investigation, which the defense already has access to.

But Klimenka's argument is even further flawed. The portion of the chat quoted in the defense motion is excerpted from a slightly longer chat, which makes clear that Gambaryan is beginning the conversation about *Wex*—the business continuation of BTC-e following Vinnik's arrest in 2017—and is specifically relaying information provided to the NDCA case team by a particular individual involved in Wex. As discussed above, that individual was interviewed by NDCA in May 2018 and identified Klimenka as a member of the BTC-e administrative team, alongside Vinnik, "Admin," and "Developer," and the defense has that 302 in discovery. KLIMENKA-00153698.

The exculpatory material—SA Gambaryan's poorly worded casual chat message four years prior to Klimenka's indictment, which the government does not dispute is exculpatory on its face but which does not reflect the investigation's ultimate findings—has already been produced to the defense.

### D. The Government Has Already Produced Evidence Regarding Verner's Server Access

The second and last concrete item that the defense notes is the discussion of Verner's access to the BTC-e servers. The government notes that "Dev" having root access to the BTC-e servers is entirely consistent with the government's theory of the case and with other discovery produced to Klimenka. The government does not allege that Klimenka is the master coder or programmer behind BTC-e. As described in discovery, "Dev" originally worked with Bilyuchenko and had some responsibility over the servers. See, e.g., KLIMENKA-00154088-89 (SENSITIVE) (identifying "ALEXANDER WERNER" (an

apparent phonetic spelling from the Russian Cyrillic of Verner) as the individual believed to be "the original programmer who built BTC-e," noting that "BILYUCHENKO rented the servers before KLIMENKA started working with them," and observing that "BILYUCHENKO was worried that WERNER had some sort of back door access to the exchange."). Nonetheless, the government recognized that BTC-e server access information would be potentially of interest to Klimenka's defense team, which was why the government produced the information about SA Alford's view of Verner's access in the excerpted memo.

The memo states exactly what SA Alford's assessment was based on—namely, error emails and records from the BTC-e server. The defense already has the records from the BTC-e server in discovery. The government is in the process of acquiring from SDNY and producing the referenced error emails.[3] The government notes that the emails are already summarized in the originally produced memo excerpts, which *can* be shared with the defense experts. (Only the full memo is subject to the Attorneys' Eyes Only protective order.)

### E. Complying with the Defense's Overbroad Request Would Be Highly Burdensome, Particularly Given Limitations on NDCA's Ability to Access and Search SDNY Case Materials

Klimenka's overbroad fishing expedition seeks a large volume of materials, including search warrant returns for numerous accounts. Complying with the defense request would be unduly burdensome, necessitating extensive work by SDNY as well as NDCA and forcing the government to expend significant limited personnel resources to review voluminous materials from the SDNY case file—a case file with which the NDCA prosecutors are not familiar and which the NDCA team is not currently able to directly access and search.

Review efforts would be even further complicated by the present posture of the SDNY case. As noted above, SDNY's prosecution of Verner and Bilyuchenko was the result of a long-running investigation involving multiple law enforcement agencies. Both Verner and Bilyuchenko remain fugitives at large, and no defendant has yet appeared in SDNY. The SDNY discovery therefore has not

---

[3] Prior to the defense's instant motion to compel, the government was not aware that these error messages were of any particular interest to the defense. The messages were not even specifically enumerated in the defense's August 28 letter; rather, they were covered by item 41, subpart n, in a request for the full contents of an email account.

been assembled, redacted, or packaged for production. Rather, it remains in its raw format spread across multiple investigating agencies' files. SDNY has advised NDCA prosecutors that, if necessary, SDNY will assemble materials and make them available to the NDCA prosecution team for inspection. But even assuming the materials are able to be made available for review in a searchable format, a comprehensive review of another district's case file by the NDCA prosecution team would be laborious and impractical. Klimenka's motion has provided no basis to require the government to conduct this sort of sweeping review.

Thus far, SDNY has been willing to turn over materials pursuant to NDCA's requests, Second Circuit case law surrounding the limitations of "access" notwithstanding. *See* Section III.B, *supra*. To date, at the NDCA prosecution team's request, SDNY has voluntarily retrieved specific identified materials from its case file and provided them to NDCA, and has voluntarily offered to permit inspection of additional case file materials by the NDCA prosecution team if requested. However, if SDNY were to decline to produce materials, the government respectfully requests the opportunity to brief the matter of access further, consistent with the Ninth Circuit's recognition in *United States v. Cano* that "the prosecutor should not be held to have 'access' to any information that an agency not involved in the investigation or prosecution of the case refuses to turn over." *United States v. Cano*, 934 F.3d 1002, 1026 (9th Cir. 2019).

### F. The Court Should Follow the NDCA Practice of Rejecting Requests for Gratuitous "*Brady* Orders"

In his motion, Klimenka seeks "an order compelling the government to conduct a diligent search for and disclose all *Brady* material." This sort of order has been expressly rejected by this District. As Judge Alsup observed in *United States v. Flores,* "As has been explained repeatedly, Brady/Giglio is a self-executing responsibility on the part of the prosecutor. It is up to the prosecutor to identify and disclose Brady/Giglio evidence to the defense in time for effective use at trial. In that sense, the motion is denied, for there is no need for a court order to require compliance with Brady/Giglio." *United States v. Flores*, No. CR 08-0730 WHA, 2011 U.S. Dist. LEXIS 155061, at *2-3 (N.D. Cal. Mar. 24, 2011). *See also United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-TEH, 2016 U.S. Dist. LEXIS 75467, at *6 (N.D. Cal. June 8, 2016) (same); *United States v. Jennings*, 960 F.2d 1488, 1491–92 (9th Cir. 1992) (admonishing courts to avoid interfering with executive branch's Brady obligations unless there is "a clear

basis in law or fact to believe that [interference is] necessary....").

## V. CONCLUSION

The Court should deny Klimenka's motion to compel discovery.

Dated: November 21, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
LLOYD FARNHAM
Assistant United States Attorney
C. ALDEN PELKER
Trial Attorneys, CCIPS