UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALIAKSANDR KLIMENKA,<br><br>Defendant. | Case No. 22-cr-00256-SI-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 157 |

On December 5, 2025, the Court held a hearing on defendant Klimenka's motion to compel. Pursuant to Federal Rules of Criminal Procedure 5 and 16, and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, Klimenka seeks an order compelling the government to produce exculpatory and/or impeachment material, and to produce specific discovery requested in an August 28, 2025 letter from defense counsel to the government. For the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

Defendant Aliaksandr Klimenka is charged with one count of operating, and aiding and abetting the operation of, an unlicensed money services business, in violation of 18 U.S.C. §§ 1960 and 2 ("Count One"); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count Two"). The indictment alleges that Klimenka, a citizen of the Republic of Belarus, "controlled" SOFT-FX, a technology services company; and "controlled" FX OPEN, a financial company. Dkt. No. 1 ¶¶ 1-3.

The indictment further alleges that "[f]rom in or around 2011 to in or around July 2017,

BTC-e was a digital currency exchange controlled by Alexander Vinnik, ALIAKSANR [sic] KLIMENKA, and others." *Id. ¶* 4. "[O]ne of the world's largest digital currency exchanges[,]" BTC-e is alleged to have "processed several billion dollars' worth of transactions and served over one million users worldwide, including numerous customers in the United States and customers in the Northern District of California." *Id.* ¶ 5. The indictment alleges that "BTC-e was one of the primary ways by which cyber criminals around the world transferred, laundered, and stored the criminal proceeds of their illegal activities." *Id.* ¶ 6. "Unlike legitimate payment processors or digital currency exchanges, BTC-e did not require its users to validate their identity information by providing official identification documents[,]" making it easy for users to open accounts anonymously. *Id.* ¶¶ 8-9. Despite doing substantial business in the United States and in contravention of federal law, BTC-e did not register as a money services business with the Treasury Department's Financial Crimes Enforcement Network and had no anti-money laundering and/or "Know-Your-Customer" processes and policies in place. *Id.* ¶ 11. According to the indictment, BTC-e maintained its servers in the United States, and the servers were leased to and maintained by SOFT FX and Klimenka. *Id*. ¶ 13.

On May 2, 2025, defense counsel received an email from IRS Special Agent Gary Alford about a criminal investigation conducted in the Southern District of New York ("SDNY") involving BTC-e and the alleged "Mt. Gox hack."[1]  Def's Reply, Ex. F at 5.  SA Alford informed defense

---

[1] In 2019, a grand jury in SDNY returned an indictment charging Aleksandr Verner and Alexey Bilyuchenko with conspiracy to commit money laundering related to the hack and theft of funds from Mt. Gox, a cryptocurrency exchange. *United States v. Verner and Bilyuchenko*, 19-cr-936 (S.D.N.Y). According to the indictment, "In or about September 2011, ALEKSANDR VERNER AND ALEXEY BILYUCHENKO, the defendants, and their co-conspirators (the 'Hackers') gained and caused others to gain unauthorized access to the Mt. Gox server in Japan" and that between September 2011 through at least May 2014, "the Hackers were able to cause Bitcoins to be transferred at will from Mt. Gox's wallets to Bitcoin addresses controlled by VERNER, BILYUCHENKO, and their co-conspirators." *United States v. Verner and Bilyuchenko*, 19-cr-936 (S.D.N.Y), ECF No. 3 (Indictment). The indictment alleges that during the same time period, Verner, Bilyuchenko and their co-conspirators laundered the bulk of the stolen Mt. Gox Bitcoins through two other online Bitcoin exchanges; one of these exchanges was BTC-e (referred to as "Exchange-1" in the indictment. Verner and Bilyuchenko have not been arrested, and the indictment against them remains pending in SDNY.

Separately, Bilyuchenko was indicted in this district in 2022. *United States v. Bilyuchenko*, Case No. 22-cr-00255 SI. (Another individual, Dmitry Vasilev, was also separately indicted, Case No. 22-cr-000257 SI, and Vasilev was arrested earlier this year.) The government has stated that the Bilyuchenko, Vasilev, and Klimenka cases are related, and the indictments in each case allege

counsel that he was "the lead agent" for the SDNY investigation, and that he had reviewed public court records in Klimenka's case as part of his job duties. *Id*. SA Alford stated, "Based on what has been made public (i.e. indictment and/or other public court records) related to the **separate** case of United States v. Aliaksandr Klimenka, I believe it is my responsibility to inform you I have information that I believe/assess could be deemed exculpatory and/or impeachment evidence." *Id*. In a later email sent the same day, SA Alford stated "Substantially all the relevant records to be potentially provided are in electronic format. As such it will not be a relatively heavy lift to assemble the relevant records." *Id*. at 3.

After the May 2, 2025 emails from SA Alford to Klimenka's defense counsel, Klimenka's lawyers contacted the prosecution's lawyers in this case requesting various materials from the SDNY case. The government states that after it was alerted to Special Agent Alford's statements, it promptly reached out to SDNY to attempt to identify any exculpatory materials that may exist within the SDNY case file. The government states,

> SA Alford provided an initial set of documents to NDCA. Following additional conversations between NDCA and SDNY, the set of documents was further supplemented, including through a search for any references to Klimenka found in the SDNY case file. The bulk of the materials identified by SA Alford were not exculpatory and may be the result of a fundamental misunderstanding by SA Alford of the NDCA case, of which he is not a part and is thus not privy to the scope of evidence obtained or the discovery provided. Nonetheless, the governed turned these materials over to the defense out of an abundance of caution. The produced SDNY materials included, *inter alia*, search warrant affidavits, emails, chat messages, travel records, and search warrant review notes generated by SA Alford in the course of his investigation.

Gov't Opp'n at 7-8. One of the documents produced by the government is a 41-page "probable cause" memorandum authored by SA Alford.[2] In a letter dated August 28, 2025 (attached as Exhibit D to Def's Motion), the defense requested the production of specific underlying materials referred to in SA Alford's memorandum. The government raised various objections, leading to the present

---

that the three men, along with Alexander Vinnik and other co-conspirators, operated BTC-e from 2011 until it was shut down in law enforcement in July 2017. Bilyuchenko and Vasilev are also alleged to have continued their money laundering activities after BTC-e was shut down through a new entity called Wex. As with the SDNY case, Bilyuchenko has not yet been arrested in connection with the NDCA case.

[2] The government has provided this memo to the Court for *in camera* review.

motion to compel.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that a defendant is entitled to discovery of materials in the possession, custody, or control of the government and that are material to the preparation of the defense. To secure a discovery order under Rule 16, a defendant must make a *prima facie* showing of materiality. *United States v. Little*, 753 F.2d 1420, 1444-45 (9th Cir. 1984). "The proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024) (internal quotation marks and citation omitted).

## DISCUSSION

Klimenka seeks documents and material from the SDNY investigation pursuant to Federal Rules of Criminal Procedure 5[3] and 16, and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Klimenka notes that the SDNY investigation covered the same time period that Klimenka allegedly conspired to commit money laundering through BTC-e. Klimenka asserts that SA Alford concluded that Klimenka was not involved in BTC-e's operations and instead identified other individuals, including Bilyuchenko, Verner and Vinnik, who operated, administered, developed and owned BTC-e dating back to 2011. Klimenka highlights specific statements contained in the SDNY documents produced thus far, including a 2018 communication between former IRS Criminal Investigation Special Agent Tigran Gambaryan and SA Alford in which Gambaryan states that "the whole operation was ran by Admin, Dev, and Vinnik" there are "no other real employees" and "outsources work here and there." Def's Mtn., Ex. B at 2. In addition, Klimenka cites SA Alford's May 11, 2018 "probable cause" memo in which Alford stated that he "has reason to believe only

---

[3] Rule 5 states, "In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." It is not clear from the docket whether such an oral order was issued at Klimenka's arraignment because the minutes are silent on the issue.

4

1  VERNER had root access to the BTC-e server and maintained root access since the creation of BTC-

2  e." *Id*. Klimenka argues that the SDNY material he seeks is not only exculpatory as to his lack of

3  involvement in BTC-e, but also that the materials can be used for impeachment and to show that the

4  NDCA investigation was flawed.

5        The government raises a number of objections. First, the government asserts that

6  Klimenka's motion is premature because the parties are still in the midst of meeting and conferring.

7  Second, the government argues that Klimenka has failed to establish that the information and

8  documents he seeks are material, and the government argues that Klimenka must show materiality

9  for each specific item sought. The government contends that the SDNY investigation did not

10  exonerate Klimenka because the focus of the SDNY investigation was the Mt. Gox hack, and they

11  assert that the SDNY investigation did not seek to exhaustively identify all individuals and entities

12  involved in BTC-e. The government also argues that Klimenka has taken the statements quoted

13  above out of context, and that when the 2018 Gambaryan/Alford chat is read in conjunction with

14  other information, it shows that "this chat was the product of imprecise wording in a casual

15  conversation," that Gambaryan's 2018 observations "were preliminary at best," and that other

16  information does implicate Klimenka as being an operator of BTC-e. Govt's Opp'n at 8. Third, the

17  government asserts that it has already searched for and produced all potentially exculpatory

18  materials to Klimenka, including search warrant affidavits, emails, chat messages, travel records,

19  and SA Alford's search warrant review notes, and that it is unreasonable and burdensome to require

20  the prosecution team to "demand what is essentially a production of the entire case file from the

21  SDNY investigation, materials to which the NDCA prosecutors do not have direct and unfettered

22  access." *Id.* at 5.

23        As an initial matter, the Court finds that the motion to compel is not premature as the record

24  reflects that the parties have been meeting and conferring since May of this year and have not

25  reached an agreement. Substantively, Klimenka has demonstrated the materiality of the materials

26  that he seeks. While the SDNY investigation focused on the Mt. Gox hack, it also examined who

27  developed and operated BTC-e during the same time period that is at issue in this case. "[E]vidence

28  suggesting an alternate perpetrator is 'classic *Brady* material.'" *Williams v. Ryan*, 623 F.3d 1258,

1265 (9th Cir. 2010). While the government disputes Klimenka's characterization of the SDNY investigation and SA Alford's conclusions, in light of the factual overlap between the cases as well as SA Alford's statement in the May 2, 2025 email about the existence of potentially exculpatory and/or impeachment evidence, the Court concludes that Klimenka is entitled to discovery of the evidence underlying SA Alford's probable cause memo. In addition, the defense states that the materials from the SDNY investigation will allow the defense to attack the thoroughness and good faith of the NDCA investigation. *See Kyles v. Whitley*, 514 U.S. 419, 445 (1995) (holding *Brady* violation occurred where government suppressed evidence that "would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even the good faith of the investigation, as well."). Finally, the government's assertions of burden are also not persuasive in light of SA Alford's statement that the materials are in electronic format and that it would "not be a heavy lift" to produce the relevant documents.

## CONCLUSION

For the reasons stated in this order, the Court GRANTS defendant's motion to compel.

In addition, pursuant to Federal Rule of Criminal Procedure 5(f)(1), the Court directs the government to comply with its *Brady* obligations, and notifies the government that the failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances.

**IT IS SO ORDERED**.

Dated: December 9, 2025

SUSAN ILLSTON
United States District Judge